## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**GUDRUN KRISTOFERSDOTTIR,**

     *Plaintiff,*

v.

**CVS HEALTH CORPORATION; MINUTECLINIC, LLC; MINUTECLINIC DIAGNOSTIC OF FLORIDA, LLC,**

     *Defendants.*

Case No. _____

**COMPLAINT**

JURY DEMANDED

Plaintiff Gudrun Kristofersdottir, by and through counsel, and for her Complaint against Defendants, hereby states as follows:

### INTRODUCTION

1. Ms. Kristofersdottir is a nurse practitioner who, because of her Christian faith, cannot prescribe hormonal contraceptives.

2. For over seven years, Defendants (collectively, "CVS") granted Ms. Kristofersdottir a religious accommodation to not personally prescribe such drugs at the CVS MinuteClinic where she worked. On the rare occasion that a patient would seek such a prescription, she would refer them to another CVS MinuteClinic provider.

3. This arrangement worked well until CVS abruptly announced in August 2021 that it was revoking *all* religious accommodations that allowed providers to not prescribe these drugs. CVS's new policy was to deny all such religious accommodations without considering the particular circumstances of the employee requesting the accommodation, including to determine whether that employee could be accommodated without undue hardship.

1

4.     CVS subsequently revoked Ms. Kristofersdottir's religious accommodation, refusing to consider her particular circumstances or even discuss possible alternative accommodations.

5.     CVS could have accommodated Ms. Kristofersdottir in several ways, including by transferring her to a virtual position, a larger clinic, an education or training position, or a location specializing in COVID-19, or continuing to honor the religious accommodation that worked successfully for years.

6.     It is a violation of Title VII of the Civil Rights Act of 1964 for an employer to "avoid accommodating a religious practice that it could accommodate without undue hardship." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 770 (2015); *see* 42 U.S.C. § 2000e(j). "[A]n employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

7.     Religious accommodation requests must be considered on an individual basis to determine whether the requesting employee can be accommodated. *See id.* at 471–72; *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740 (2020).

8.     An employer cannot sidestep Title VII's requirement to accommodate religious employees by merely labeling a particular function "essential." This label is particularly unconvincing when it concerns a miniscule fraction of the services an employee provides. The relevant inquiry is whether the employee can be accommodated consistent with the employer's statutory duty.

9.     CVS's policy of preemptively denying all such requests regardless of individual circumstances is unlawful and has a disparate impact on its employees on the basis of religion.

10.    In addition to prospectively preempting all requests for religious accommodations, CVS unlawfully refused to consider Ms. Kristofersdottir's request for a religious accommodation, failed to engage with her about possible accommodations, and terminated her because of her religious beliefs.

## JURISDICTION AND VENUE

11.     This civil rights action raises federal claims under Section 706(f)(l), (3), and (g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(l), (3), and (g), as well as state claims under Fla. Stat. § 760.10.

12.     This Court has original jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

13.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

14.     This Court has authority to award the requested monetary relief pursuant to 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981a, 2000e-5(g); the requested equitable relief pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(g); and costs and attorneys' fees under 42 U.S.C. § 2000e-5(k).

15.     The Court also may award monetary and equitable relief and costs and attorneys' fees pursuant to Fla. Stat. § 760.11(5).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the Defendants are deemed to reside in this District and the unlawful employment practices alleged herein occurred in this District.

17.     On September 1, 2022, Ms. Kristofersdottir filed her original charge against CVS with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations, naming Defendants CVS Health Corporation; CVS Health Solutions, LLC; MinuteClinic, LLC; and MinuteClinic Diagnostic of Florida, LLC.

18.     Ms. Kristofersdottir received a Notice of Right to Sue, dated October 25, 2023, from the EEOC. *See* Ex. 1, Kristofersdottir Notice of Right to Sue.

19.     This Complaint is filed within 90 days of receipt of the notice.

## PARTIES

20.     Plaintiff Gudrun Kristofersdottir is a Christian nurse practitioner who worked at a CVS MinuteClinic in Tequesta, Florida, from 2014 to 2022. Ms. Kristofersdottir was at all times material to this action a resident of Jupiter, Florida.

21.     CVS Health Corporation is a healthcare and retail company operating more than 9,900 retail locations across 49 states, the District of Columbia, and Puerto Rico.[1] It is the fourth-largest company in the United States.[2]

22.     CVS operates MinuteClinic, a subsidiary of CVS, at more than 1,100 of its locations nationwide.[3]

23.     CVS registered with the State of Florida the names "MinuteClinic, LLC" and "MinuteClinic Diagnostic of Florida, LLC" for its MinuteClinic operations in that state.

24.     CVS MinuteClinics offer both in-person and virtual healthcare services for minor illnesses and injuries, health screenings and monitoring, vaccinations and injections, and camp and sports physicals services, among other services.[4]

25.     At all times relevant to this Complaint, Defendants have continuously been employers engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-5(b), (g), (h).

26.     Defendants are employers under Fla. Stat. § 760.02(7).

27.     At all relevant times, each Defendant had more than 500 employees.

---

[1] *See Our Company at a Glance*, CVS Health, https://perma.cc/2EYK-MBEH.
[2] *See Fortune 500: CVS Health*, Fortune, https://fortune.com/company/cvs-health/fortune500/ (last visited Jan. 5, 2024).
[3] *Id.*
[4] *See Health Care from MinuteClinic*, CVS Health, https://perma.cc/Q9L2-SSAQ .

## FACTUAL BACKGROUND

### I.  Plaintiff's Beliefs and Need for a Religious Accommodation

28.     Ms. Kristofersdottir is a Christian and member of the Roman Catholic church.

29.     Ms. Kristofersdottir believes, in accordance with the teaching of the Roman Catholic church, that the dignity of the human person is rooted in his creation in the image and likeness of God,[5] that human life must be respected and protected absolutely from the moment of conception (fertilization),[6] that God created all humans, and that persons called to be united in marriage should be open to bearing children.[7] She therefore believes that the procreative potential of intercourse may not be subverted by device or procedure.[8] Further, Ms. Kristofersdottir believes that abortion constitutes a moral evil in violation of humanity's obligation to protect life with the utmost care from the moment of conception.[9]

30.     Because of her religious beliefs, Ms. Kristofersdottir cannot participate in any way in facilitating artificial contraceptives, including hormonal contraceptives or drugs that could prevent the implantation of an embryo or otherwise cause an abortion. Indeed, she believes facilitating such conduct would be intrinsically evil.[10]

31.     Ms. Kristofersdottir has a Bachelor of Science in Nursing from the University of Iceland and a Master of Science in Nursing from the University of Nevada. *See* Ex. 2, Kristofersdottir Resume. She has worked for over 20 years as a nurse practitioner. Prior to working for CVS, she worked as a nurse practitioner for both the United States Air Force and Navy as well as for clinics located in Georgia and Oklahoma. *Id.*

### II.  CVS Granted Ms. Kristofersdottir a Religious Accommodation

32.     Ms. Kristofersdottir excelled at her job as a nurse practitioner.

---

[5] Catechism of the Catholic Church (hereinafter "CCC"), No. 1700, https://www.usccb.org/sites/default/files/flipbooks/catechism/426/.
[6] CCC, No. 2270, https://www.usccb.org/sites/default/files/flipbooks/catechism/548/.
[7] CCC, Nos. 2363, 2367, https://www.usccb.org/sites/default/files/flipbooks/catechism/570/.
[8] CCC, No. 2370, https://www.usccb.org/sites/default/files/flipbooks/catechism/572/.
[9] CCC, No. 2271, https://www.usccb.org/sites/default/files/flipbooks/catechism/550/.
[10] CCC, No. 2370, https://www.usccb.org/sites/default/files/flipbooks/catechism/572/.

33.     In 2014, CVS hired Ms. Kristofersdottir for a CVS MinuteClinic nurse practitioner position.

34.     At the beginning of her employment, Ms. Kristofersdottir spoke with her manager, Ms. Lorraine Hendricksen, about obtaining a religious accommodation from prescribing contraceptives. Ms. Hendricksen informed Ms. Kristofersdottir that she could obtain a religious accommodation by completing paperwork that explained her religious objections to prescribing contraceptives along with the accommodation she was seeking.

35.     Ms. Kristofersdottir filled out the appropriate forms and sent a copy to both a CVS human resources manager and Ms. Hendricksen. *See* Ex. 3, Kristofersdottir Religious Accommodation Request.

36.     After filing her paperwork, Ms. Kristofersdottir never received a response or confirmation from CVS regarding her religious accommodation request.

37.     However, Ms. Hendricksen was aware of Ms. Kristofersdottir's religious accommodation request at all times during her employment and never raised any concerns or objections related to the accommodation. Instead, she worked with Ms. Kristofersdottir to develop a plan to accommodate both Ms. Kristofersdottir's religious beliefs and the needs of patients seeking prescriptions for contraceptives.

38.     Ms. Kristofersdottir primarily worked at a CVS MinuteClinic located at 260 S. US Hwy. 1, Tequesta, FL 33469.

39.     CVS's accommodation of Ms. Kristofersdottir's religious beliefs functioned well for over seven years. During that time, Ms. Kristofersdottir encountered approximately five to ten individuals per year who expressed interest in hormonal birth control pills or the Depo-Provera injection, of the approximately 2,000 patients she treated per year.

40.     On those rare occasions, Ms. Kristofersdottir referred the client to the other nurse practitioner with whom she alternated shifts at the same CVS MinuteClinic, or to another nearby CVS MinuteClinic.

41.     Referring CVS MinuteClinic patients to other practitioners is common.

42.     Ms. Kristofersdottir occasionally accepted referrals from other CVS MinuteClinic practitioners for services they were not qualified, not willing, or otherwise not able to provide.

### III.    CVS Denied Religious Accommodation Requests for All Nurse Practitioners Regardless of Individual Circumstances

43.     At the time of Ms. Kristofersdottir's hire in 2014, CVS policy and culture were more favorable toward religious accommodations.

44.     CVS corporate culture changed around 2021. Instead of protecting religious freedom, CVS began to treat religious practice as a source of "privilege."[11]

45.     Indeed, in 2021, CVS's diversity statement notably omitted religion from a list of other classes protected from discrimination.[12]

46.     On August 26, 2021, CVS held a Town Hall meeting in which Angela Patterson, Chief Nursing Officer at CVS Health Corporation, announced that all employee providers and nurses at all CVS MinuteClinic locations would now be required to perform certain functions CVS suddenly deemed essential.

47.     As stated in an email from Ms. Patterson following the meeting, CVS's new policy was that "treatment for pregnancy prevention ... must be offered by every Provider and Nurse, as appropriate to licensure, at MinuteClinic." Ex. 4, Town Hall Summary Email.

48.     CVS made no indication that it was ending all referrals for healthcare services at its MinuteClinics, but it would end referrals for "pregnancy prevention services," which includes prescriptions for hormonal birth control pills and the Depo-Provera injection.

49.     CVS Health Corporation implemented this policy nationwide through its related or subsidiary corporations, including the other named Defendants.

---

[11] Christopher F. Rufo, *CVS Execs Rake in Millions While Lecturing Wage-Workers on Wokeness*, N.Y. Post (Sept. 23, 2021), https://perma.cc/N2E7-UEQS ("The training asked CVS employees to circle their identities—including race, gender, sexuality, and *religion*—and then reflect on their 'privilege' during the discussion.… CVS promises 'swift action against non-inclusive behaviors.'" (emphasis added)).

[12]         *Diversity*,         CVS         Health         (Dec.         5,         2021), https://web.archive.org/web/20211215113841/https://jobs.cvshealth.com/diversity-cvs-health/ ("We are an equal opportunity and affirmative action employer. We do not discriminate in recruiting, hiring or promotion based on race, ethnicity, sex/gender, sexual orientation, gender identity or expression, age, disability or protected veteran status….").

50.     Under the policy, all MinuteClinic nurse practitioners were required to provide these "pregnancy prevention services" without exception.

51.     This policy change directly impacted Ms. Kristofersdottir, who needed to make referrals for those services because of her religious beliefs.

52.     In the months following CVS's announced policy change, Ms. Kristofersdottir continued to utilize her religious accommodation without any negative impact or burden on CVS.

53.     In March 2022, Ms. Kristofersdottir saw a news report regarding a former CVS employee named Robyn Strader who was terminated by CVS after refusing to prescribe similar contraception to those covered by Ms. Kristofersdottir's religious accommodation.

54.     Shortly thereafter, Ms. Kristofersdottir raised the issue of her accommodation with Ms. Hendricksen, who told Ms. Kristofersdottir that she had an accommodation and that Ms. Strader's situation must have been different from Ms. Kristofersdottir's accommodation.

55.     However, two weeks later, Ms. Hendricksen informed Ms. Kristofersdottir that she had spoken to Holly Kouts, CVS's area manager, as well as CVS's human resources department and that CVS would no longer honor Ms. Kristofersdottir's religious accommodation for hormonal contraceptives. Ms. Hendricksen also stated that others who had previously received a comparable religious accommodation had chosen to forego their religious accommodation in order to keep their employment with CVS.

## IV.    CVS Ignored Ms. Kristofersdottir's Requests for a Religious Accommodation and Fired Her

56.     CVS gave Ms. Kristofersdottir two weeks to affirm that she would prescribe all contraceptives available at CVS, or she would be terminated.

57.     During this time period, Ms. Kristofersdottir suggested potential alternatives to Ms. Hendricksen that would allow her religious accommodation to continue, including transferring her to a larger clinic, a virtual clinic, or a COVID-19 clinic where contraceptives would never be requested.

58.     Ms. Hendricksen rejected Ms. Kristofersdottir's suggestions because CVS's policy was that it would grant "no exceptions" to the requirement that nurse practitioners prescribe contraceptives.

59.     Ms. Kristofersdottir informed Ms. Hendricksen via email on March 31, 2022, that she could not prescribe any medications that would be contrary to her religious beliefs.

60.     That same day, Ms. Kristofersdottir received a phone call from Ms. Hendrickson in coordination with CVS's human resources department informing her that her employment with CVS was terminated effective April 1, 2022.

61.     Before firing Ms. Kristofersdottir, CVS never responded in writing to her requests for a religious accommodation related to prescribing hormonal contraceptives.

62.     Ms. Hendricksen told Ms. Kristofersdottir that she was upset that CVS was forcing her to terminate Ms. Kristofersdottir as she had been an excellent employee who excelled at her job and received positive reviews both from her patients and her supervisors.

63.     Indeed, Ms. Kristofersdottir received a performance review rating her as a "High Performer" for CVS around the time she was terminated.

## V.     CVS Did Not Consider Any Alternative Accommodations

64.     CVS never discussed possible accommodation options with Ms. Kristofersdottir even though CVS had numerous ways to provide a reasonable accommodation without undue hardship on the business.

65.     Ms. Kristofersdottir inquired as to whether there were any other jobs she could perform within the MinuteClinic that would not require prescribing contraceptives, such as working in a position focused exclusively on COVID-19 testing. Ms. Hendricksen told her that, according to the Director of Human Resources, no accommodation would be given regardless of whether that employee's job duties entailed prescribing contraceptives.

66.     CVS had many possible alternatives. For example, CVS could have transferred Ms. Kristofersdottir to a position that does not involve prescribing hormonal contraceptives, such as

an education or training position, or to a CVS MinuteClinic that exclusively focuses on COVID-19.[13]

67.     CVS could have transferred Ms. Kristofersdottir to a virtual nurse practitioner position. Because there are several virtual nurse practitioners on duty at one time, a referral to another provider could happen right away. CVS could have similarly transferred Ms. Kristofersdottir to a larger clinic where multiple nurse practitioners would be working simultaneously. Indeed, nearby MinuteClinics in Port St. Lucie and Palm Beach Gardens were both staffed by multiple nurse practitioners.

68.     Ms. Kristofersdottir was well qualified for lateral nurse practitioner positions in CVS's COVID-19 and virtual health clinics, or in education or training.

69.     CVS facilitates similar religious accommodation requests by pharmacists and pharmacy technicians who cannot dispense contraceptives due to their religious beliefs.[14] In those situations, the pharmacist refers the patient to another pharmacist.

70.     Not every CVS MinuteClinic offers the same services. CVS's website allows prospective patients to use its "clinic locater" website to search for MinuteClinics by the services each clinic offers for a geographic area.[15]

71.     Patients can screen each clinic for numerous services. For example, when searching for clinics that offer services for birth control, the clinic locator lists two clinics within 10 miles of Tequesta that offer birth control injections.

72.     CVS could have used its appointment scheduling system to screen patients by service requested to direct them to an appropriate time and location where the desired services would be available. Prospective patients must already inform CVS what category of service they are seeking, such as Women's Health services, before booking an appointment.

---

[13] *See* COVID-19 Testing, CVS.com, https://www.cvs.com/minuteclinic/covid-19-testing (last visited Dec. 27, 2023).
[14] *See* Sarah Edwards, *CVS Pharmacy Has Similar Policy to Walgreens, Allows Pharmacists to Deny Birth Control Prescriptions*, USA Today, July 26, 2022, https://perma.cc/3NR5-F998.
[15] *See Minute Clinic: Clinic Locator*, CVS, https://www.cvs.com/minuteclinic/services/birth-control-injection/in-person-visit (last visited Jan. 5, 2023).

73.     CVS already requires patients to schedule an appointment before any patient can see a nurse practitioner. Even walk-in patients must schedule an appointment at a CVS MinuteClinic kiosk before seeing a nurse practitioner.[16]

74.     Finally, CVS could have continued to honor the religious accommodation that worked successfully for years. CVS could have allowed Ms. Kristofersdottir to continue in her position and refer any incoming patients seeking hormonal contraceptives to another CVS MinuteClinic nurse practitioner, including a virtual CVS MinuteClinic nurse practitioner.

75.     Despite knowing of her need for a religious accommodation, CVS did not consider any of these alternatives.

## VI.    CVS Fired Other Nurse Practitioners Who Sought Religious Accommodations

76.     Ms. Kristofersdottir is aware of CVS Health Corporation and related subsidiaries firing at least three other CVS MinuteClinic nurse practitioners in three other states—Texas, Kansas, and Virginia—because of their sincere religious beliefs against prescribing hormonal contraceptives.

77.     Upon information and belief, CVS previously gave those three nurse practitioners religious accommodations not to prescribe such drugs until it suddenly fired them under its new August 2021 policy to revoke all religious accommodations related to "pregnancy prevention" services.

78.     All three of those nurse practitioners would refer patients seeking hormonal contraceptives to another nearby CVS MinuteClinic or to a nurse practitioner who worked an alternate shift at the same CVS MinuteClinic as the referring nurse practitioner.

79.     At least two of those nurse practitioners asked CVS to transfer them to a virtual or COVID-19 clinic, where they would not need to prescribe hormonal contraceptives or could instantly refer patients to another virtual nurse practitioner, but CVS responded that nurse

---

[16] *See Minute Clinic: Clinic Locator*, CVS, https://www.cvs.com/minuteclinic/services/birth-control-injection/in-person-visit.

practitioners must be willing to prescribe hormonal contraceptives in even the virtual and COVID-19 clinics.

**VII.   CVS Revoked Longstanding Religious Accommodations and Refused to Transfer Nurse Practitioners to Lateral Positions Even Though Numerous Nurse Practitioner Positions Remained Vacant at CVS MinuteClinics Nationwide**

80.      After Ms. Kristofersdottir's termination, she diligently searched for new employment opportunities.

81.      One opportunity Ms. Kristofersdottir applied for shortly after her termination was to work in one of CVS's COVID-19 clinics. However, she never received any response from CVS regarding her application.

82.      Since CVS fired Ms. Kristofersdottir, the CVS MinuteClinic in Tequesta where she worked has repeatedly listed a nurse practitioner position there to be vacant.

83.      In May 2022, Ms. Kristofersdottir accepted a position working as a nurse practitioner for Marathon Health in Palm Beach County, Florida.

**VIII.   CVS Offered to Reinstate Ms. Kristofersdottir While New Legislation Was Pending in Florida**

84.      In March 2023, the Florida Legislature introduced a bill to protect the conscience rights of healthcare workers, known as Senate Bill 1580 ("SB 1580"). Among other things, SB 1580 was designed to protect healthcare workers from suffering any adverse actions from their employer for refusing to provide a particular medical service for a conscience-based reason. *See* Fla. Stat. § 381.00321(2)(c). An employer that violates SB 1580 is subject to an enforcement action by the Florida Attorney General. *Id.* § 381.00321(4).

85.      When passage of SB 1580 became imminent, CVS sent a letter dated April 28, 2023, to Ms. Kristofersdottir offering an "unconditional offer of reinstatement," which included the following: "Upon your application for reasonable accommodation, MinuteClinic will grant your request to not prescribe contraceptives, including injections of Depo-Provera." This provided

compelling evidence that CVS could accommodate Ms. Kristofersdottir's religious beliefs—as it had for over seven years before—without hardship.

86.     Less than two weeks later, Governor DeSantis signed SB 1580 into law, with an effective date of July 1, 2023.

87.     After considering CVS's offer, which was made over a year after she filed her EEOC charge, Ms. Kristofersdottir concluded she was not comfortable accepting that offer to return to a company that had been so hostile to her religious beliefs, especially after accepting a position with a new employer who was willing to accommodate her religious beliefs.

## FIRST CAUSE OF ACTION

### Violation of Title VII: Failure to Accommodate

88.     Plaintiff incorporates and adopts by reference the allegations in paragraphs 1 through 87 of the Complaint as if fully set forth herein.

89.     Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Kristofersdottir's employment.

90.     Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

91.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." *Id.* § 2000e-2(a)(1).

92.     "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

93.     A covered employer must grant a reasonable religious accommodation unless the employer can demonstrate that doing so would cause "substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470.

94.     Ms. Kristofersdottir was an outstanding nurse practitioner and well-qualified for her position.

95.     CVS knew Ms. Kristofersdottir is a Christian with religious objections to prescribing hormonal contraceptives.

96.     CVS was able to reasonably accommodate Ms. Kristofersdottir's religious observance or practice without undue hardship on the conduct of the employer's business.

97.     CVS accommodated Ms. Kristofersdottir's religious beliefs about prescribing hormonal contraceptives for over seven years.

98.     Accommodating Ms. Kristofersdottir did not cause undue hardship to CVS's business.

99.     Accommodating Ms. Kristofersdottir's religious observance or practice would not have caused substantial increased costs on the conduct of CVS's business.

100.    CVS discriminated against Ms. Kristofersdottir because of her religion by revoking her religious accommodation and refusing to discuss any possible alternative religious accommodations.

101.    CVS failed to consider other options to accommodate Ms. Kristofersdottir's religious beliefs or practices.

102.    Out of the thousands of patients Ms. Kristofersdottir saw each year, she encountered only about five to ten requests for hormonal contraceptives. Those patients were referred to another CVS MinuteClinic provider at the same location or another nearby CVS MinuteClinic provider.

103.    CVS could have accommodated Ms. Kristofersdottir in many ways, such as allowing her to refer patients requesting hormonal contraception to other CVS MinuteClinic nurse practitioners, including virtual nurse practitioners, transferring her to a larger clinic or virtual position where multiple nurse practitioners would be working at the same time, or transferring her to an education or a COVID-19 clinic that does not prescribe hormonal contraceptives.

104.    CVS's discriminatory practices described above denied Ms. Kristofersdottir compensation and other benefits of employment to which she is entitled and caused her to suffer emotional distress.

105.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

106.    Defendants are jointly and severally liable.

107.    Plaintiff is entitled to front pay, back pay, restitution, and compensatory damages, including emotional pain and suffering damages. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

108.    CVS's conduct was intentional, and it acted with malice, oppression, or reckless indifference to the protected rights of Ms. Kristofersdottir. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

## SECOND CAUSE OF ACTION

### Violation of Title VII: Disparate Treatment

109.    Plaintiff incorporates and adopts by reference the allegations in paragraphs 1 through 87 of the Complaint as if fully set forth herein.

110.    Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Kristofersdottir's employment.

111.    Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

112.    Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." *Id.* § 2000e-2(a)(1).

113.    CVS knew Ms. Kristofersdottir is a Christian with religious objections to prescribing hormonal contraceptives.

114.     CVS discriminated against Ms. Kristofersdottir because of her religion by allowing CVS MinuteClinic nurse practitioners to refer patients for secular reasons, but not for religious reasons.

115.     CVS created its change in policy out of hostility or intolerance toward practitioners like Ms. Kristofersdottir who hold religious beliefs on these issues.

116.     CVS would not have terminated Ms. Kristofersdottir in the absence of her religion.

117.     In the alternative, Ms. Kristofersdottir's religion was a motivating factor for her termination.

118.     CVS discriminated against and fired Ms. Kristofersdottir because of her religion.

119.     CVS's discriminatory practices described above denied Ms. Kristofersdottir compensation and other benefits of employment to which she is entitled and caused her to suffer emotional distress.

120.     As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

121.     Defendants are jointly and severally liable.

122.     CVS's conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(a) and (m).

123.     Plaintiff is entitled to front pay, back pay, restitution, and compensatory damages, including emotional pain and suffering damages. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

124.     CVS's conduct was intentional, and it acted with malice, oppression, or reckless indifference to the protected rights of Ms. Kristofersdottir. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

### THIRD CAUSE OF ACTION

### Violation of Title VII: Disparate Impact

125.   Plaintiff incorporates and adopts by reference the allegations in paragraphs 1 through 87 of the Complaint as if fully set forth herein.

126.   Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants") acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Kristofersdottir's employment.

127.   Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

128.   Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... religion." *Id.* § 2000e-2(a)(2); *see also id.* § 2000e-2(k)(1).

129.   On or about August 2021, CVS announced its policy or practice that it would now deem "pregnancy prevention" services to be "essential" functions that "must be offered by every Provider and Nurse, as appropriate to licensure, at MinuteClinic."

130.   Under this policy, CVS will not grant any exceptions.

131.   CVS's policy or practice was not consistent with business necessity.

132.   Less discriminatory alternatives, including allowing religious accommodations or allowing exceptions for providers and nurses who work in positions or locations where they are never or rarely asked to provide such services, such as COVID-19 clinics, were available.

133.   This policy has a disparate impact on employees, including Christian employees like Ms. Kristofersdottir, who have religious beliefs inconsistent with providing hormonal contraceptives.

134.   As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

135.    Defendants are jointly and severally liable.

136.    Plaintiff is entitled to front pay, back pay, restitution, and compensatory damages, including emotional pain and suffering damages. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Florida Civil Rights Act: Religious Discrimination

137.    Plaintiff incorporates and adopts by reference the allegations in paragraphs 1 through 87 of the Complaint as if fully set forth herein.

138.    Defendant CVS Health Corporation and the other named Defendants (collectively, "CVS" or "Defendants"), acted jointly to implement the nationwide policy at issue in this lawsuit that impacted Ms. Kristofersdottir's employment.

139.    Defendants are employers within the meaning of Fla. Stat. § 760.02(7) because they have 15 or more employees for each working day in 20 or more calendar weeks.

140.    The Florida Civil Rights Act of 1992 guarantees employees "freedom from discrimination" because of religion. *Id.* § 760.01(2).

141.    It is an unlawful employment practice in Florida to "discharge . . . any individual" or "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" because of religion. *Id.* § 760.10(1)(a).

142.    CVS created its change in policy out of hostility or intolerance toward practitioners like Ms. Kristofersdottir who hold religious beliefs on these issues.

143.    CVS's failure to provide Plaintiff with a reasonable religious accommodation and decision to terminate her employment constituted discrimination on the basis of religion under Fla. Stat. § 760.10(1)(a).

144.    CVS would not have terminated Ms. Kristofersdottir in the absence of her religion.

145.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

146.    Defendants are jointly and severally liable.

147.    CVS's discriminatory practices described above denied Ms. Kristofersdottir compensation and other benefits of employment to which she is entitled. Ms. Kristofersdottir is entitled to front pay, back pay, and compensatory damages, including emotional pain and suffering damages. Additionally, Ms. Kristofersdottir is entitled to the reasonable costs of this lawsuit and her reasonable attorneys' fees.

148.    CVS's conduct was intentional, and it acted with malice or reckless indifference to the protected rights of Ms. Kristofersdottir. Plaintiff is thus entitled to punitive damages in an amount to be determined at trial. Fla. Stat. § 760.11(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a.  Declare that the acts and practices complained of herein are in violation of Title VII and Florida law;

b.  Enjoin and permanently restrain these violations of Title VII and Florida law;

c.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Ms. Kristofersdottir and which eradicate the effects of its past and present unlawful employment practices;

d.  Order Defendants to make Plaintiff whole for all earnings and benefits she would have received but for Defendants' discriminatory treatment, including, but not limited to, wages and benefits, including interest, pre-judgment and post-judgment;

e.  Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of herein, in amounts to be determined at trial;

f.  Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including

emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial;

g.   Order Defendants to pay Plaintiff punitive damages for its malicious, oppressive conduct, in amounts to be determined at trial;

h.   Order Defendants to pay Plaintiff nominal damages;

i.   Award Plaintiff the costs associated with this action and reasonable attorneys' fees against Defendants, as provided by Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k) and Fla. Stat. § 760.11(5).

j.   All other further relief that the Court deems just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted this 18th day of January 2024.

David J. Hacker*
TX Bar No. 24103323
Stephanie N. Taub*
TX Bar No. 24133496
Ryan N. Gardner*
TX Bar No. 24101790
FIRST LIBERTY INSTITUTE
2001 West Plano Pkwy., Ste. 1600
Plano, TX 75075
(972) 941-4444
dhacker@firstliberty.org
staub@firstliberty.org
rgardner@firstliberty.org

Tabitha M. Harrington*
DC Bar No. 1027879
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave. NW, Suite 1410
Washington, DC 20004
(202) 918-1551
tharrington@firstliberty.org

Doug Peterson*
NE Bar No. 18426
KEATING, O'GARA, NEDVED & PETER
200 South 21st Street, Suite 400
Lincoln, NE 68510
(402) 475-8230
dpeterson@firstliberty.org

*Application for
admission *pro hac vice* forthcoming

**Admission to Southern District of Florida
pending

*/s/ Jonathan Berry*
Jonathan Berry*
DC Bar No. 1016352
Jared M. Kelson*
DC Bar No. 241393
Andrew Smith*
Tennessee Bar No. 040117
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com
jkelson@boydengray.com
asmith@boydengray.com

*/s/ Amber Stoner Nunnally*
Amber Stoner Nunnally
Florida Bar No. 109281
Robert E. Minchin III**
Florida Bar No. 1033022
LAWSON HUCK GONZALEZ, PLLC
215 South Monroe Street, Suite 320
Tallahassee, Florida 32301
(850) 825-4334
 amber@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com