## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**GUDRUN KRISTOFERSDOTTIR,**

     **Plaintiff,**

**v.**

**CVS HEALTH CORPORATION; MINUTECLINIC, LLC; MINUTECLINIC DIAGNOSTIC OF FLORIDA, LLC,**

     **Defendants.**

**CASE NO. 9:24-CV-80057-RLR**

**DISTRICT JUDGE ROSENBERG**

**MAGISTRATE JUDGE REINHART**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Heather A. Pierce *(Pro Hac Vice)*
RI Bar No. 7345
hpierce@littler.com
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
Telephone:  401.824.2500
Facsimile:  401.454.2969

Allison Williams *(Pro Hac Vice)*
Texas Bar No. 24075108
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Nancy A. Beyer
Florida Bar No. 0059688
nbeyer@littler.com
Nancy Johnson
Florida Bar No. 0597562
njohnson@littler.com
LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, FL  32801-2366
Telephone:  407.393.2900
Facsimile:  407.393.2929

Kimberly R. Miers *(Pro Hac Vice)*
Texas Bar No. 24041482
kmiers@littler.com
Melinda J. Wetzel *(Pro Hac Vice)*
Texas Bar No. 24115637
mwetzel@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:  512.982.7250
Facsimile:  512.982.7248

**ATTORNEYS FOR DEFENDANTS**

## **REQUEST FOR HEARING**

Defendants request that a hearing be scheduled on their Motion for Summary Judgment (the "Motion"). The Motion seeks to dispositively resolve this case, in its entirety.

This matter presents novel issues of law, including the extent to which an employer must exempt an employee from performing an essential function of her job due to conflicts with her religious beliefs. In 2023, the Supreme Court clarified the standard required to constitute an "undue hardship" under Title VII's definition of "religion." *Groff v. DeJoy*, 600 U.S. 447 (2023). This case deviates from more typical situations where an employee's religious beliefs conflict with her schedule or the employer's grooming or dress code requirements. Here, the conflict is with the provision of certain services the employer has committed to providing its customers. Further, the denial of such services has prompted complaints and, due to the nature of the services, could draw negative attention. Accommodating the employee (and others with similar beliefs) would negatively affect the employer's ability to pursue its mission, risk damaging its reputation, and cause a loss of customers and revenue. While it is clear that non-economic costs can result in an undue hardship, this case presents the application of that legal principle to facts in an unusual scenario.

While the material facts are undisputed, oral argument will allow the parties to elaborate on the state of the law and its application to the facts presented in this case. It will also allow the Court to pose any needed questions regarding the legal positions of the parties.

Defendants estimate that it would be helpful for the Court to set aside 30 minutes for oral argument.

## TABLE OF CONTENTS

PAGE(S)

I.    SUMMARY OF THE MOTION ................................................................. 1

II.   ARGUMENTS AND AUTHORITIES ....................................................... 3

    A.    Summary Judgment Standard ....................................................... 3

    B.    CVS Health Corporation and MinuteClinic Diagnostic of Florida, LLC
Are Not Employers within the Meaning of Title VII or the FCRA ..................... 3

    C.    Defendants Are Entitled to Summary Judgment on Plaintiff's Failure-to-
Accommodate Claims ............................................................................. 3

        1.    The Legal Framework of a Reasonable Accommodation Claim ............... 4

        2.    MinuteClinic Could Not Reasonably Accommodate Plaintiff
Without Undue Hardship ............................................................. 4

            a.    Undue Hardship Includes Both Economic and Non-
Economic Costs ............................................................. 5

            b.    Exempting Plaintiff from Providing Pregnancy Prevention
Services Would Have Caused Undue Hardship on
MinuteClinic ................................................................. 6

                (1)    Exempting Plaintiff from Providing Pregnancy
Prevention Services Would Have Adversely Affected
an Essential Mission…………………………………...6

                (2)    Refusing Services Would Inconvenience Patients,
Threaten Reputational Damage, and Cause a Loss
of Business………………………………………………9

                (3)    Referrals are Not Permitted Except in Materially
Different Circumstances and Would Not Mitigate
The Undue Hardship…………………………………10

                (4)    Undue Hardship Results When These Factors Are
Considered Either Individually or Together……………10

            c.    Plaintiff Could Not Be Transferred Because No Positions
Were Available ............................................................. 10

            d.    The Aggregate Effect of Accommodating Other NPs
Aggravated MinuteClinic's Hardship ............................................. 11

## TABLE OF CONTENTS

PAGE(S)

D.    Defendants Are Entitled to Summary Judgment on Plaintiff's Disparate Treatment Claim ........................................................................ 12

    1.    Plaintiff Cannot Identify a Similarly Situated Individual Outside of Her Protected Class Who Was Treated More Favorably ........................ 12

    2.    MinuteClinic Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment ........................................................ 14

    3.    Plaintiff Cannot Establish that MinuteClinic's Reason for Her Termination is Pretext for Discrimination ................................................. 14

E.    Defendants Are Entitled to Summary Judgment on Plaintiff's Disparate Impact Claim ........................................................................................... 15

    1.    Plaintiff Cannot Establish a Case of *Prima Facie* Disparate Impact Discrimination ........................................................................................ 15

        a.    Plaintiff Cannot Identify a Legally Protected Group that Was Disparately Impacted ........................................................... 15

        b.    Plaintiff Cannot Present Statistical Proof Showing that the Company's Practice Had an Adverse Impact on a Protected Group ...................................................................................... 17

    2.    Even if Plaintiff Could Establish a *Prima Facie* Case, Requiring Providers to Perform Essential Functions Is Job-Related and Consistent with a Business Necessity ...................................................... 18

    3.    Plaintiff Cannot Prove that an Alternative, Nondiscriminatory Practice Would Have Served MinuteClinic's Stated Objective Equally Well ....................................................................................... 18

F.    Plaintiff Cannot Prove Any Facts that Would Entitle Her to Punitive Damages .................................................................................................. 19

III.    CONCLUSION ..................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Mass Gen. Brigham Inc.*,
No. cv-21-11686-FDS, 2023 WL 6318821 (D. Mass. Sept. 28, 2023) ....................................5

*Akiyama v. U.S. Judo Inc.*,
181 F.Supp.2d 1179 (W.D. Wash. 2002)................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................................3

*Antredu v. Massachusetts Dep't of Youth Servs.*,
No. cv 22-12016-WGY, 2024 WL 1539725 (D. Mass. Apr. 9, 2024) .....................................9

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)...................................................................................................................3

*Ayers v. Wal-Mart Stores, Inc.*,
941 F. Supp. 1163 (M.D. Fla. 1996) ......................................................................................19

*Bailey v. Metro Ambulance Servs., Inc.*,
992 F.3d 1265 (11th Cir. 2021) ..........................................................................................4, 12

*Baz v. Walters*,
782 F.2d 701 (7th Cir. 1986) ....................................................................................................7

*Beadle v. City of Tampa*,
42 F.3d 633 (11th Cir. 1995) ....................................................................................................5

*Bhuiyan v. PNC Bank*,
No. 19-14265, 2023 WL 2733510 (11th Cir. Mar. 31, 2023)...................................................4

*Brooks v. U.S. Dep't of the Air Force*,
685 F. App'x 783 (11th Cir. 2017) ...................................................................................12, 13

*Brown v. Alaska Airlines, Inc.*,
No. 2:22-cv-668, 2024 WL 2325058 (W.D. Wash. May 22, 2024) .......................................16

*Bushra v. Main Line Health, Inc.*,
709 F. Supp. 3d 164 (E.D. Pa. 2023) ......................................................................................8

*Cardelle v. Miami Beach Fraternal Ord. of Police*,
593 F. App'x 898 (11th Cir. 2014) .........................................................................................17

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   406 F.Supp.3d 1258 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) ........................16

*Cox v. Nw. Reg'l Educ. Serv. Dist.*,
   No. 3:22-cv-01073-HZ, 2024 WL 777598 (D. Or. Feb. 23, 2024) ...................................15, 16

*Davis v. Infinity Ins. Co.*,
   No. 21-11446, 2022 WL 1152612 (11th Cir. Apr. 19, 2022)...........................................15, 18

*Dean v. Acts Ret. Life Cmtys.*,
   No. CV GLR-23-1221, 2024 WL 964218 (D. Md. Mar. 6, 2024) ..........................................9

*Dunbar v. Walt Disney Co.*,
   No. CV 22-1075-DMG (JCX), 2022 WL 18357775 (C.D. Cal. July 25, 2022)...............14, 16

*Earle v. Birmingham Bd. Of Educ.*,
   843 F. App'x 164 (11th Cir. 2021) ........................................................................12

*Favero v. Huntsville Indep. Sch. Dist.*,
   939 F. Supp. 1281 (S.D. Tex. 1996), *aff'd*, 110 F.3d 793 (5th Cir. 1997) ...............................6

*Fernandez v. Hotwire Commc'ns Ltd.*,
   No. 21-cv-60115-RKA, 2022 WL 4598638 (S.D. Fla. Sept. 30, 2022) ...........................13, 17

*EEOC v. Firestone Fibers & Textiles Co.*,
   515 F.3d 307 (4th Cir. 2008) ...............................................................................6

*Garcia v. Unit Dose Servs., LLC*,
   23-cv-61352, 2023 WL 6962827 (S.D. Fla. Oct. 2, 2023) ..................................................4

*Goldsmith v. Bagby Elevator Co., Inc.*,
   513 F.3d 1261 (11th Cir.2008) ............................................................................19

*Groff v. DeJoy*,
   600 U.S. 447 (2023)............................................................................... *passim*

*Hall v. Sheppard Pratt Health Sys., Inc.*,
   No. 22-cv-3261-ABA, 2024 WL 4264898 (D. Md. Sept. 20, 2024).........................5, 6, 9, 11

*Harper v. Blockbuster Ent. Corp.*,
   139 F.3d 1385 (11th Cir. 1998) ...........................................................................4

*Harris v. Dep't of Child. & Fams.*,
   No. 21-11581, 2022 WL 247982 (11th Cir. Jan. 27, 2022)..................................................18

*EEOC v. Joe's Stone Crab, Inc.*,
   220 F.3d 1263 (11th Cir. 2000) .......................................................................15, 18

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
No. 1:19-cv-02462-JMS-KMB, 2024 WL 1885848 (S.D. Ind. Apr. 30, 2024),
*appeal filed* (7th Cir. May 31, 2024) ................................................................5, 7, 8

*Knight v. Connecticut Dep't of Pub. Health*,
275 F.3d 156 (2d Cir. 2001)........................................................................................7

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999)...................................................................................................19

*Krop v. Nicholson*,
506 F. Supp. 2d 1170 (M.D. Fla. 2007).....................................................................17

*Lavelle-Hayden v. Legacy Health*,
No. 3:22-cv-01752-IM, 2024 WL 3822712 (D. Or. Aug. 14, 2024)....................6, 8

*Leigh v. Artis-Naples, Inc.*,
No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) ........4

*Lewis v. City of Union City*,
918 F.3d 1213 (11th Cir. 2019) ................................................................................12

*Lindsey v. Bridge Rehab, Inc.*,
369 F. Supp. 3d 1204 (N.D. Ala. 2019).......................................................7, 12, 14

*Lugo v. Akamai Techs., Inc.*,
No. 23-60153-CIV-SMITH, 2023 U.S. Dist. LEXIS 122538 (S.D. Fla. July
17, 2023) ...................................................................................................................16

*Margolis v. Pub. Health Tr. of Miami-Dade Cnty.*,
89 F. Supp. 3d 1343 (S.D. Fla. 2015) .......................................................................19

*Matthews v. Legacy Health*,
No. 6:24-cv-00592-MC, 2024 WL 3970794 (D. Or. Aug. 26, 2024)......................16

*McDonell-Douglas Corp. v. Green*,
411 U.S. 729 (1973)....................................................................................................4

*Miller v. Kenworth of Dothan, Inc.*,
277 F.3d 1269 (11th Cir.2002) ................................................................................19

*Pitts v. Birmingham-Jefferson Cnty. Transit Auth.*,
No. 2:18-CV-690-KOB, 2019 WL 1238856 (N.D. Ala. Mar. 18, 2019) ...............14

*Powers v. Ala. Dep't of Educ.*,
854 F.2d 1285 (11th Cir. 1988) ...............................................................................17

*Raytheon Co. v. Hernandez,*
   540 U.S. 44 (2003)..................................................................................................15

*Ricci v. DeStefano,*
   557 U.S. 557 (2009)................................................................................................17

*Rioux v. City of Atlanta, Ga.,*
   520 F.3d 1269 (11th Cir. 2008) ..............................................................................14

*Rivers v. Walt Disney World Co.,*
   No. 6:07-cv-1608-Orl-31KRS, 2008 U.S. Dist. LEXIS 9789 (M.D. Fla. Feb.
   11, 2008) ..................................................................................................................19

*Schmidt v. Disney Parks, Experiences, and Products, Inc.,*
   721 F. Supp. 3d 1314 (M.D. Fla. 2024)......................................................... *passim*

*Spa v. Aiken/Barnwell Counties Cmty. Action Agency, Inc.,*
   No. 1:24-31-JDA-SVH, 2024 WL 2848492 (D.S.C. Mar. 1, 2024)........................13

*Trans World Airlines, Inc. v. Hardison,*
   432 U.S. 63 (1977)...........................................................................................2, 7, 11

*Virts v. Consol. Freightways Corp. of Del.,*
   285 F.3d 508 (6th Cir. 2002) ....................................................................................6

*U.S. EEOC v. W&O, Inc.,*
   213 F.3d 600 (11th Cir. 2000) ................................................................................19

*Walden v. Ctrs. for Disease Control & Prevention,*
   669 F.3d 1277 (11th Cir. 2012) ................................................................................4

*Wills v. Walmart Assocs., Inc.,*
   592 F. Supp. 3d 1203 (S.D. Fla. 2022) ...................................................................12

**Statutes**

42 U.S.C.A. § 1981a(b)(1)..............................................................................................19

42 U.S.C. §2000e-2(a) .....................................................................................................3

42 U.S.C. § 2000e(b) ........................................................................................................3

42 U.S.C. § 2000e(j)..........................................................................................................5

Title VII of the Civil Rights Act of 1964........................................................... passim

Fla. Stat. § 760.02(7) (2024)............................................................................................3

Florida Civil Rights Act..............................................................................1, 3, 4. 19

**Other Authorities**

FED. R. CIV. P. 56(a) ................................................................................................................3

## I.     <u>SUMMARY OF THE MOTION</u>

In 2021, MinuteClinic introduced its Patient Care Transformation ("PCT") initiative, committing to deliver an expanded set of primary care enabled services, including in the area of women's health. Defendants' Statement of Material Facts ("SOF") at § A. As the future of MinuteClinic, PCT repositioned MinuteClinic to fill an identified gap in the competitive health care industry and to provide increased access to primary care, including in underserved communities. To ensure that all patients have access to care, including women's health services, and have a consistent experience at all MinuteClinic locations, MinuteClinic made the decision to require all Nurse Practitioners and Physician Assistants to provide treatment for pregnancy prevention, including prescribing hormonal contraceptives and administering contraceptive injections. *Id.* at §§ B & C. In August 2021, MinuteClinic updated the essential job functions of its patient-facing providers to include the provision of these Pregnancy Prevention Services.

Plaintiff Gudrun Kristofersdottir worked as a nurse practitioner ("NP") in MinuteClinic's Tequesta, Florida location, a clinic that was staffed by one provider per shift. *Id.* at § D. Plaintiff, a Roman Catholic, had a religious objection to prescribing or administering hormonal contraceptives. *Id.* at § E. After MinuteClinic updated the essential functions of her job, she refused to provide Pregnancy Prevention Services. *Id.* at § F. Because MinuteClinic could not accommodate her religious beliefs without undue hardship, it terminated her employment. *Id.* at §§ F-H.

Plaintiff asserts failure to accommodate, disparate treatment, and disparate impact claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"), claiming that Defendants are liable for refusing to accommodate her religious beliefs, terminating her employment, and adopting an essential job function that disproportionately impacted individuals with religious beliefs opposing contraception. Defendants are entitled to summary judgment on each of these claims.

First, as a threshold matter, Defendants CVS Health Corporation and MinuteClinic Diagnostic of Florida, LLC are entitled to summary judgment because they did not have any employees during the relevant time frame. Because both Title VII and the FCRA apply only to entities with 15 or more employees, they are not "employers" within the meaning of these statutes.

Second, MinuteClinic could not reasonably accommodate Plaintiff's religious beliefs that conflicted with the essential function of providing Pregnancy Prevention Services without undue

hardship. In connection with updating the NP essential job functions, MinuteClinic was aware that NPs in various locations were exempted from prescribing contraceptives due to their religious-based objections. MinuteClinic considered whether it could continue to provide such exemptions and determined that doing so would "adversely affect[] its 'essential mission'" to provide, on a consistent, convenient basis, the Pregnancy Prevention Services that it publicly committed to providing. *Groff v. DeJoy*, 600 U.S. 447, 462 (2023) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 68, 80 (1977)). Allowing providers with religious objections to refuse care to patients would inconvenience patients, compromise their care, risk patient complaints and reputational damage, and threaten customer losses. MinuteClinic also considered whether it could transfer NPs to other positions that did not require the provision of Pregnancy Prevention Services as an essential function, but no such positions were available. Accordingly, accommodating NPs' religious objections to providing Pregnancy Prevention Services constituted an undue hardship to MinuteClinic in conducting its business, and Defendants are entitled to summary judgment on Plaintiff's failure to accommodate claim.

Third, Plaintiff cannot establish a *prima facie* case of disparate treatment discrimination. She cannot identify a similarly situated individual outside her protected group who was allowed to continue employment despite refusing to perform Pregnancy Prevention Services after MinuteClinic updated the essential functions of its provider role in 2021. Moreover, MinuteClinic had a legitimate, non-discriminatory reason for Plaintiff's employment termination – her refusal to perform an essential job function. Plaintiff cannot establish through competent evidence that MinuteClinic's justification was pretext for religious discrimination.

Fourth, Plaintiff cannot establish a *prima facie* claim of disparate impact discrimination because she is unable to identify a legally protected group that was disparately impacted. She asserts that those with religious objections to providing contraceptives were negatively affected, but courts do not recognize individuals who share a common belief as a legally protected group. Additionally, Plaintiff cannot present statistical evidence to show that updating the essential job functions of NPs had a disparate impact on a legally protected group.

Finally, Defendants are entitled to summary judgment on Plaintiff's claim for punitive damages. Plaintiff cannot present evidence demonstrating that MinuteClinic acted with an intent to harm or with serious disregard to whether its actions would violate Plaintiff's federally protected

rights when it determined that MinuteClinic could not continue to exempt NPs from providing essential services or otherwise accommodate them.

Defendants request that the Court grant summary judgment in their favor and dismiss Plaintiff's claims with prejudice.

## II.    ARGUMENTS AND AUTHORITIES

**A.    Summary Judgment Standard.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**B.    CVS Health Corporation and MinuteClinic Diagnostic of Florida, LLC Are Not Employers within the Meaning of Title VII or the FCRA.**

Title VII prevents "employers" from engaging in unlawful employment practices. 42 U.S.C. §2000e-2(a). To be a covered "employer" under Title VII, an entity must have "fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Absent the requisite 15 employees, Title VII does not apply. Similarly, the FCRA limits its application to "employers" with 15 or more employees, over the same time frame. Fla. Stat. § 760.02(7) (2024).

The Supreme Court has held that the threshold number of employees for Title VII's coverage "is an element of a plaintiff's claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). Plaintiff cannot present evidence that either CVS Health Corporation or MinuteClinic Diagnostic of Florida, LLC meets the minimum employee requirement for coverage because neither entity had any employees during the relevant time frame. SOF at ¶ 27. Accordingly, both entities are entitled to summary judgment on all of Plaintiff's claims.

**C.    Defendants Are Entitled to Summary Judgment on Plaintiff's Failure-to-Accommodate Claims.**

In her First and Fourth Causes of Action, Plaintiff asserts a disparate treatment claim based on religion, asserting that Defendants failed to accommodate her religious beliefs under Title VII

and the FCRA.[1] Defendants are entitled to summary judgment because MinuteClinic could not reasonably accommodate Plaintiff's religious beliefs without undue hardship on its business.

1.      **The Legal Framework of a Reasonable Accommodation Claim.**

In religious accommodation cases, courts apply a burden shifting framework similar to that in *McDonell-Douglas Corp. v. Green*, 411 U.S. 729 (1973). *See Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012). To establish a *prima facie* case of failure to accommodate a religious belief, Plaintiff must show that (1) she held a sincere religious belief that conflicted with an employment requirement and (2) her employer took adverse action against her because of her failure to comply with the employment requirement. *Id.*; *see Bhuiyan v. PNC Bank*, No. 19-14265, 2023 WL 2733510 at *4 (11th Cir. Mar. 31, 2023); *Schmidt v. Disney Parks, Experiences, and Products, Inc.*, 721 F. Supp. 3d 1314 (M.D. Fla. 2024). "Once a plaintiff makes out a prima facie case, the burden shifts to the employer to show that it either offered a reasonable accommodation or that it cannot reasonably accommodate the employee's religious practice without undue hardship on its business." *Bailey*, 992 F.3d at 1275; *see Leigh*, 2022 WL 18027780, at * 4.

FCRA claims are governed by "the same requirements of proof and the same analytical framework." *Schmidt*, 721 F. Supp. 3d at 1323 n. 7. Moreover, "decisions construing Title VII are applicable when considering claims brought under [FCRA], because the Florida act was patterned after Title VII." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Garcia v. Unit Dose Servs.*, *LLC,* 23-cv-61352, 2023 WL 6962827, at *2 (S.D. Fla. Oct. 2, 2023) (report and recommendation adopted).

2.      **MinuteClinic Could Not Reasonably Accommodate Plaintiff Without Undue Hardship.**

Plaintiff contends that her religious beliefs prevented her from providing Pregnancy Prevention Services,[2] including prescribing hormonal contraceptives and administering contraceptive injections. ECF 1 at ¶ 1. Plaintiff contends that MinuteClinic could have

---

[1] Title VII does not create an independent cause of action for "failure to accommodate." *Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780, at *4 (M.D. Fla. Dec. 30, 2022). Instead, such a claim is a species of a disparate treatment claim. *See Bailey v. Metro Ambulance Servs., Inc*., 992 F.3d 1265, 1272 (11th Cir. 2021) (noting two separate disparate-treatment theories under Title VII of traditional disparate treatment claims and failure to reasonably accommodate disparate treatment claims).

[2] All capitalized terms not otherwise defined herein shall have the meaning stated in the SOF.

accommodated her beliefs by: (1) excusing her from performing the essential job function of providing Pregnancy Prevention Services and allowing her to refer or reschedule patients to another time or location; or (2) transferring her to another position. ECF 1 at ¶ 5.

When MinuteClinic adopted its PCT and updated the essential functions of the Nurse Practitioner ("NP") position, it considered whether a reasonable accommodation, including both of those proposed by Plaintiff, could be provided to NPs with religious objections to providing Pregnancy Prevention Services. SOF at ¶¶ 16-25, 63-72. Each of these proposals, however, would have caused an undue hardship on the conduct of MinuteClinic's business.

### a.      Undue Hardship Includes Both Economic and Non-Economic Costs.

Even if Plaintiff could establish a *prima facie* case of failure to accommodate, Defendants will prevail on summary judgment because MinuteClinic could not reasonably accommodate Plaintiff "without undue hardship on the conduct of [its] business." 42 U.S.C. § 2000e(j). Undue hardship is shown "when a burden is substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. In analyzing an undue hardship defense, courts must consider "all relevant factors in the case at hand, including the particular accommodations at issue, and their practical impact in light of the nature, size and operating cost of an employer." *Id*. at 470–71 (quotation marks and alterations omitted). "Those costs need not be economic." *Hall v. Sheppard Pratt Health Sys.*, *Inc.*, No. 22-cv-3261-ABA, 2024 WL 4264898, at *8 (D. Md. Sept. 20, 2024) (citations omitted); *see Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) (recognizing an employer can incur an undue hardship "not only due to monetary concerns, but also the employer's burden in conducting its business."); *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 1:19-cv-02462-JMS-KMB, 2024 WL 1885848, at *15 (S.D. Ind. Apr. 30, 2024), *appeal filed*, (7th Cir. May 31, 2024) ("Although the Supreme Court removed some costs from consideration, it left others untouched, including non-economic costs.").

For example, an employer may experience undue hardship due to "increased health and safety risks," "damage to employee morale, compromise of a collective bargaining agreement or seniority system, or unequal treatment of other employees." *Hall*, 2024 WL 4264898, at *8 (citations omitted); *see Adams v. Mass Gen. Brigham Inc*., No. cv-21-11686-FDS, 2023 WL 6318821, at *5 (D. Mass. Sept. 28, 2023) (recognizing indirect costs "related to health and safety" must be considered). Rather than considering only the financial cost of an accommodation, courts

must make a "holistic assessment of a possible accommodation's effect on the conduct of the employer's business." *Hall*, 2024 WL 4264898, at *8.

Additionally, Title VII case law is clear that "an employer is not required 'to wait until it feels the effects' of the proposed accommodation before determining its reasonableness." *Lavelle-Hayden v. Legacy Health,* No. 3:22-cv-01752-IM, 2024 WL 3822712, at *16 (D. Or. Aug. 14, 2024) (quoting *EEOC v. Firestone Fibers & Textiles Co*., 515 F.3d 307, 317 (4th Cir. 2008)); *see Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 519 (6th Cir. 2002) ("[A]n employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable."); *Favero v. Huntsville Indep. Sch. Dist*., 939 F. Supp. 1281, 1293 (S.D. Tex. 1996) ("Plaintiffs' emphasis on reviewing the situation in hindsight would allow employers to deny requests only when they were certain in advance that the [accommodation] would cause an undue hardship. This is not what Title VII requires."), *aff'd*, 110 F.3d 793 (5th Cir. 1997).

> **b.    Exempting Plaintiff from Providing Pregnancy Prevention Services Would Have Caused Undue Hardship on MinuteClinic.**

Plaintiff contends that MinuteClinic could have accommodated her request not to provide Pregnancy Prevention Services by allowing her to refer patients seeking contraceptives to other MinuteClinic locations or to another provider at the Tequesta clinic who worked alternate shifts. She opines that this arrangement had "worked quite well" for years. SOF at ¶ 41.

The result of her proposal, however, would be to compromise MinuteClinic's PCT mission, eliminating its ability to provide Pregnancy Prevention Services consistently and uniformly, as promised, to every patient at every location. *Id*. at ¶¶ 10-11, 19-25. This proposed accommodation further risked reputational damage and potential public backlash, compromising the care of patients whom Plaintiff turned away, and causing business losses. *Id*. at ¶¶ 18-20, 24-25.

Permitting Plaintiff to refer patients to other locations would not have mitigated the hardship imposed on MinuteClinic, because the result – refusing requested services and turning patients away – would be the same. Notwithstanding Plaintiff's assertions, the proposed accommodation did not, in fact, work well, as MinuteClinic received both public and internal customer complaints and lost customers. *Id*. at ¶ 18-19, 56-62. The multi-faceted impacts resulting from Plaintiff's proposed accommodation, whether considered independently or together, impose undue hardship on MinuteClinic.

> **(1)    Exempting Plaintiff From Providing Pregnancy Prevention Services Would Have Adversely Affected an Essential Mission.**

6

The Supreme Court recognizes that an employer is not required to grant an accommodation that would "adversely affect[] its 'essential' mission." *Groff* 600 U.S. at 462 (citing *Hardison*, 432 U.S. at 68, 80). In *Hardison*, the Court held that the employer would have suffered an undue hardship had it been forced to allow the plaintiff to take days off, because it would have been required to either violate others' seniority rights or adversely affect its essential mission by "leaving the Stores Department short-handed." *Hardison*, 432 U.S. at 68, 80. Courts have found that "Title VII does not require an employer to retain an employee who harms the employer's mission." *Baz v. Walters*, 782 F.2d 701, 706-07 (7th Cir. 1986).

For example, several courts have held that allowing employees to express their religious views to customers in a manner inconsistent with the employer's mission of providing religion-neutral services constituted an undue hardship. In *Baz*, a chaplain, assigned to a VA hospital's psychiatric population, was an evangelical Christian whose religious practices including proselytizing to patients in a manner inconsistent with the hospital's approach to patient care. 782 F.2d at 704. Affirming summary judgment in favor of the hospital, the Seventh Circuit explained: "The defendants are not required to show that their philosophy of total patient care is objectively better than that espoused by [the plaintiff]; they need only show that it would be a hardship to accommodate his theology in view of their established theory and practice." *Id*. at 706; *see also Lindsey v. Bridge Rehab, Inc*., 369 F. Supp. 3d 1204, 1214 (N.D. Ala. 2019) ("[Defendant] would jeopardize its mission to provide substance abuse and behavioral treatment to vulnerable adolescents if it permitted [the plaintiff] to forcefully express her religion and disrespect the clients."); *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 168 (2d Cir. 2001) ("Permitting appellants to evangelize while providing services to clients would jeopardize the state's ability to provide [medical] services in a religion-neutral matter.").

Likewise, in *Kluge*, 2024 WL 1885848, a public school was not required to accommodate a teacher's refusal to call transgender students by their preferred names and pronouns as listed in their school records. Examining whether an undue hardship resulted from the accommodation in the context of the school's business, as directed by *Groff*, and not in the context of the particular employee, the court recognized that the parties "have different visions for the school's mission," but "the law leaves that decision to the school." *Id*. at *22; *see id.* at *17 ("Even as the Supreme Court undid the *de minimis* standard, it left untouched the long line of Seventh Circuit authority squarely holding that an employer can define its own legitimate mission, and that contradictions

to its legitimate mission are relevant to analyzing undue hardship."). Finding the accommodation an undue burden as a matter of law, the court held that "the law of Title VII does not require [the employer] to continue an accommodation that actually resulted in substantial student harm, and an unreasonable risk of liability, each sharply contradicting the school's legally entitled mission to foster a supportive environment for all." *Id.* at *22.

Allowing unvaccinated employees to continue to work in health care facilities has also been deemed an undue burden on health care employers' missions, post-*Groff. See Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 175-76 (E.D. Pa. 2023) ("The ability of [employer] to continue its mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated [employee] in its midst. In sum, there can be no doubt that [employer] would have incurred undue hardship in the form of substantial social, if not economic, costs if it had been required to accommodate [employee's] religious beliefs."); *Lavelle-Hayden*, 2024 WL 3822712, at *14 ("Defendant has established that accommodating Plaintiffs—by allowing them to continue working at Defendant's facilities while unvaccinated—would have undermined Defendant's legitimate mission, creating a substantial increased cost and, hence, an undue hardship.").

Here, MinuteClinic determined that consistently providing Pregnancy Prevention Services at all clinic locations, at all times (including on a walk-in basis), was essential to its overall mission of becoming a primary care enabled destination and expanding women's health care, particularly to underserved communities lacking access to primary care providers. SOF at ¶¶ 4-10. Accommodating Plaintiff by permitting her to refuse to provide Pregnancy Prevention Services to patients requesting them undermines that mission. *Id.* at ¶¶ 11-12, 16-25, 52, 56-62.

Plaintiff contends that allowing her to refer patients to other clinics or providers had worked for years and could continue to work. ECF 1 at ¶ 103. However, this contention ignores the shift in MinuteClinic's business objectives that it determined were necessary for it to maintain its competitiveness and expand its services. SOF at ¶¶ 4-9. A past accommodation (that notably, did not "work" in light of complaints received from patients she turned away) is not guaranteed to continue indefinitely, particularly here where the objectives of the business changed.

Similarly, to the extent Plaintiff claims that her refusal to treat patients only impacted a minimum number of patients, she misses the point. MinuteClinic's objective was to expand the women's health services it provided and consistently provide those services to every patient at

every location. If the Tequesta clinic turned away women seeking Pregnancy Prevention Services, that objective would be thwarted. SOF ¶¶ 20-23. As further discussed below, MinuteClinic's reputation for refusing such care, despite its actively marketing itself as providing it, could impact its ability to achieve its mission. *Id.* at ¶ 19. And, denying care to even one patient is significant because to MinuteClinic, every single patient matters. *Id.*at ¶¶ 20-21.

> ### (2) Refusing Services Would Inconvenience Patients, Threaten Reputational Damage, and Cause a Loss of Business.

"Reputational effects on an employer can also impose an undue hardship." *Antredu v. Massachusetts Dep't of Youth Servs*., No. cv 22-12016-WGY, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024); *see Hall*, 2024 WL 4264898, at *10 (explaining "the appearance that [defendant] was not prioritizing the safety of its patients and staff could have eroded public trust, an essential for any healthcare facility"); *Dean v. Acts Ret. Life Cmtys.*, No. CV GLR-23-1221, 2024 WL 964218, at *6 n.5 (D. Md. Mar. 6, 2024) (noting defendant's "reasonable, albeit fact-based arguments for undue hardship" - that it would suffer negative reputation and economic effects if it allowed front-line employees at a senior living facility to remain unvaccinated – could be asserted at the summary judgment stage).

Plaintiff's refusal to prescribe and administer contraceptives had already prompted complaints from patients who were denied care and referred to other clinics when they requested contraceptives from Plaintiff. SOF at ¶¶ 57-62. In March 2018, a patient wrote a negative review on Yelp, detailing her experience in attempting to obtain a contraceptive prescription, identifying Plaintiff by name as having refused care because doing so was against her religious beliefs, and stating she would "not be using MinuteClinic's services anymore." *Id.* at ¶ 58. Plaintiff does not know whether this patient sought treatment at another MinuteClinic location or ever returned to MinuteClinic again. *Id.* at ¶ 59.

Similarly, in October 2020, Plaintiff advised her supervisor of a complaint involving a patient who had requested oral contraceptive medication. *Id.* at ¶¶ 60. Plaintiff offered to schedule the patient at another MinuteClinic and, when the patient declined due to its distance, suggested a non-MinuteClinic provider and direct competitor. *Id.* at ¶ 61. Plaintiff does not know if this patient received the requested care, sought treatment at another MinuteClinic location, or ever returned to the Tequesta MinuteClinic. *Id.* at ¶ 62.

In addition to inconveniencing and upsetting these patients, who were denied care, these types of complaints damage MinuteClinic's reputation and ability to stay competitive in a highly

competitive industry, which contributes to the undue hardship. *Id.* at ¶ 19. This is especially true for complaints made on public sites, like Yelp. *Id.*

Further, MinuteClinic experiences the loss of patients who are influenced by their negative experiences and often additional customers – such as family members for whom the patient directs health care spending and friends though word of mouth – who are swayed by that denial. *Id.* at ¶ 25. That lost business also contributes to MinuteClinic's undue hardship.

> **(3)    Referrals are Not Permitted Except in Materially Different Circumstances and Would Not Mitigate the Undue Hardship.**

Permitting referrals does not eliminate the hardship caused by exempting Plaintiff from providing Pregnancy Prevention Services. At a minimum, the patient would be inconvenienced and experience a delay in care; at worse, the patient would be denied care. *See id.* at ¶¶ 20-21, 23-25. Permitting referrals results in a failure to fulfill MinuteClinic's commitment to consistently provide its offered services, risking a loss of customers, negative publicity, and loss of reputation. *Id.* at ¶¶ 18, 19, 23-26, 57-62.

> **(4)    Undue Hardship Results When These Factors Are Considered Either Individually or Together.**

Each of the impacts above individually imposes substantial negative costs on MinuteClinic. Combined, those costs are multiplied. The Supreme Court directed that "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Groff*, 600 U.S. at 470–71 (internal quotations omitted). Accordingly, this Court should not look at any impact in isolation but should consider the overall burden resulting from the accommodation.

> **c.    Plaintiff Could Not Be Transferred Because No Positions Were Available.**

Plaintiff suggests that she could have been transferred to a position providing only COVID-19 related services, a position in a double staffed clinic, or a virtual provider position. ECF 1 at ¶ 57, 67. She also suggests she could have been transferred to an education or training position if any had been open. *Id.* at ¶ 66. MinuteClinic explored whether other positions were available for Plaintiff. SOF at ¶ 63. No such positions were available. *Id.* at ¶¶ 64-72.

The only position identified by Plaintiff that did not require prescribing or administering contraceptives – a COVID-19 testing position – had no vacant employee positions. *Id.* at ¶ 67-68.

COVID-19 specific positions were primarily filled by contingent workers. *Id.* at ¶ 67. Only an oversight position, called a Swab and Send Superdelegate, was filled by a few MinuteClinic employees. *Id.* There were no Superdelegate positions in Florida available from August 2021 to present. *Id.* at ¶ 68. As such, MinuteClinic was unable to accommodate Plaintiff by transferring her into a COVID position.

Transfer to a double staffed clinic was not possible because none of the clinics in her Region were double staffed all of the time. *Id.* at ¶¶ 69-70. Requiring the Company to double staff a clinic to accommodate Plaintiff would have doubled the staffing costs at the clinic—the clinic's highest operating expense—and clearly impose an undue hardship on MinuteClinic. *Id.* ¶ 71. For example, had MinuteClinic double staffed the Tequesta clinic to accommodate Plaintiff, adding the cost of Plaintiff's compensation and other employment to the expenses of the clinic, the clinic would have, in 2021, turned the clinic's profits into a loss and, in 2022 and 2023, deepened losses the clinic experienced. *See id.*

Virtual providers worked directly with patients and were required to provide Pregnancy Prevention Services as an essential function. *Id.* at ¶ 65. The other positions identified by Plaintiff—Regional Quality Lead education positions, Senior Practice Managers, and clinical trial positions—also worked shifts in MinuteClinic clinic locations and were therefore required to perform Pregnancy Prevision Services as an essential job function. *Id.* at ¶ 66.

### d. The Aggregate Effect of Accommodating Other NPs Aggravated MinuteClinic's Hardship.

In *Hardison*, the Supreme Court recognized that the likelihood that TWA would have to give other employees Saturdays or Sundays off for religious observance if it accommodated Hardison added to TWA's hardship. 432 U.S. at 84 n. 15 (holding that employers may properly consider the aggregate effect of granting an accommodation where other employees may be similarly situated). "Although these [accommodation] requests were evaluated on a case-by-case basis, it was within [the employer's] discretion and responsibility to consider the aggregate impact of granting multiple employees the same accommodation." *Hall*, 2024 WL 4264898, at *11; *see also Groff*, 600 U.S. at 468 (requiring employers to consider hardship in "the overall context of an employer's business"); *id.* at 476 (Sotomayor, J., concurring) ("[F]or many businesses, labor is more important to the conduct of the business than any other factor."). Here, MinuteClinic appropriately evaluated the aggregate effect of granting accommodations to all NPs with religious accommodations. SOF at ¶¶ 16-17.

**D.      Defendants Are Entitled to Summary Judgment on Plaintiff's Disparate Treatment Claim.**

In her Second and Fourth Causes of Action, Plaintiff asserts a traditional disparate treatment claim, separate from her failure-to-accommodate claim. She claims that MinuteClinic discriminated against her when it revised the essential functions of her position to include Pregnancy Prevention Services "out of hostility or intolerance towards practitioners like Ms. Kristofersdottir who hold religious beliefs on these issues." ECF 1 at ¶ 115. According to Plaintiff, MinuteClinic did not allow her to refer patients to other clinics or providers for religious reasons but allowed other NPs to refer patients for secular reasons. *Id.* at ¶ 114. Defendants are entitled to summary judgment because (1) Plaintiff cannot establish that MinuteClinic treated similarly situated employees outside her class more favorably than her; (2) MinuteClinic had a legitimate non-discriminatory reason for terminating her employment; and (3) Plaintiff cannot present evidence raising a genuine issue of material fact that MinuteClinic's reason for her termination is pretext for discrimination.

**1.      Plaintiff Cannot Identify a Similarly Situated Individual Outside of Her Protected Class Who Was Treated More Favorably.**

To establish a *prima facie* case of disparate treatment discrimination under a traditional theory, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside the plaintiff's protected class. *See Bailey*, 992 F.3d at 1273 n.1; *Schmidt*, 721 F. Supp. 3d at 1324; *Lindsey*, 369 F. Supp. 3d at 1210.

To meet the fourth element of the *prima facie* case, Plaintiff "must show that she and her comparators are "similarly situated in all material respects" *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (internal quotations omitted). "A similarly-situated comparator 'will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history.'" *Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203, 1245 (S.D. Fla. 2022) (quoting *Earle v. Birmingham Bd. Of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021); see *Brooks v. U.S. Dep't of the Air Force*, 685 F. App'x 783, 784 (11th Cir. 2017) ("A comparator is similarly situated if the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.") (internal quotation marks omitted).

Plaintiff cannot identify a single similarly situated comparator. She cannot name any clinic-based NP who (1) practiced a religion other than Roman Catholic/Christian (or no religion), (2) refused to perform the essential function of providing Pregnancy Prevention Services, and (3) was retained in their clinic position or transferred to another position. It is undisputed that, when the NP/PA essential job functions were updated, all clinic-based NPs were required to provide Pregnancy Prevention Services. Plaintiff cannot present evidence of any other employee who was outside her protected class and engaged in the same behavior as she yet was not terminated. *See Spa v. Aiken/Barnwell Counties Cmty. Action Agency*, *Inc.*, No. 1:24-31-JDA-SVH, 2024 WL 2848492, at \*8 (D.S.C. Mar. 1, 2024) (holding plaintiff did not state *a prima facie* case because her employer treated all employees who violated the vaccine mandate the same); *Fernandez v. Hotwire Commc'ns Ltd.*, No. 21-cv-60115-RKA, 2022 WL 4598638, at \*13 (S.D. Fla. Sept. 30, 2022) (finding plaintiff failed to show she was similarly situated to alleged comparator when she did not claim the comparator was accused of the same improprieties or had the same performance issues); *Brooks*, 685 F. App'x at \*784 (rejecting proposed comparators who "were neither involved in, nor accused of, nearly identical misconduct").

Trying to divert the Court from this flaw in her case, Plaintiff focuses not on her conduct that prompted the adverse employment action but on her requested accommodation, arguing that MinuteClinic allowed NPs to refer patients to other clinics for "secular reasons," but not for religious reasons. ECF 1 at ¶ 114. However, whether an employee was permitted to provide a referral is not the relevant inquiry for establishing whether the individual is similarly situated here. Instead, the analysis must focus on whether the proposed comparator was engaged in the same conduct that prompted the employment action. Plaintiff was not terminated for referring patients to other locations; she was terminated for refusing to perform an essential job function. SOF at ¶¶ 52-55.

Moreover, Plaintiff's argument is factually false. MinuteClinic does not allow providers to refer patients to other MinuteClinic locations or providers for secular reasons. SOF at ¶ 73. At her deposition, Plaintiff testified that other providers referred patients to her on a handful of occasions, specifically (1) for a Department of Transportation ("DOT") physical exam, though Plaintiff could not recall if the referral was due to the provider not being certified to perform the DOT exam or

because there were no available appointments at that providers' clinics;[3] (2) for PPD skin test readings, but only because her clinic location was more convenient for the patients; and (3) because a clinic was out of stock of a certain vaccine or experiencing an equipment malfunction. SOF at ¶¶ 74-77. None of these referrals support her claim that secular-based referrals were permitted while religious-based referrals were not. The fact that providers may have sometimes referred patients to other clinics for patient convenience or business necessity (such as appointment availability or inventory and equipment issues) does not establish that MinuteClinic treated "secular" referrals more favorably.

### 2. MinuteClinic Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment.

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Lindsey*, 369 F. Supp. 3d at 1210. Here, MinuteClinic terminated Plaintiff's employment because she refused to perform an essential function of her position—the provision of Pregnancy Prevention Services. SOF at ¶ 55. Defendants met their burden of providing a legitimate, non-discriminatory reason for its action. *See Pitts v. Birmingham-Jefferson Cnty. Transit Auth.*, No. 2:18-CV-690-KOB, 2019 WL 1238856, at *6 (N.D. Ala. Mar. 18, 2019) ("even if [plaintiff] could show with circumstantial evidence that [her employer] fired her because of her disability, [the employer]'s stated rationale of firing her for unwillingness or an inability to carry out essential functions of her position constitutes a legitimate non-discriminatory reason").

### 3. Plaintiff Cannot Establish that MinuteClinic's Reason for Her Termination is Pretext for Discrimination.

Once the defendant carries its minimal burden, the plaintiff must raise a genuine issue that the defendant's "proffered reason really is a pretext for unlawful discrimination" to survive a motion for summary judgment." *Lindsey*, 369 F. Supp. 3d at 1210-11 (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008)). Plaintiff can submit no evidence that creates a fact issue as to whether MinuteClinic's stated reason for her termination – her refusal to provide

---

[3] Being DOT certified is a requirement of the MinuteClinic NP position, as Plaintiff concedes. SOF at ¶ 75. Even if a provider referred a patient for a DOT exam, however, this does not establish a fact issue as Plaintiff does not claim, nor can she prove, that MinuteClinic granted exemptions to the DOT certification job requirement that allowed NPs to refer all DOT certification appointments. Plaintiff cannot identify a single NP who was granted an exemption from that job duty.

Pregnancy Prevention Services – is pretext for religious discrimination. For this additional reason, Defendants are entitled to summary judgment on Plaintiff's disparate treatment claim.

**E.    Defendants Are Entitled to Summary Judgment on Plaintiff's Disparate Impact Claim.**

In her Third Cause of Action, Plaintiff asserts that Defendants engaged in unlawful disparate impact discrimination in violation of Title VII. She contends that MinuteClinic's "policy or practice that it would now deem 'pregnancy prevention' services to be 'essential' functions that 'must be offered by every Provider and Nurse, as appropriate to licensure, at MinuteClinic" adversely impacted "employees, including Christian employees like Ms. Kristofersdottir, who have religious beliefs inconsistent with providing hormonal contraceptives." ECF 1 at ¶¶ 129, 133.

**1.    Plaintiff Cannot Establish a Case of *Prima Facie* Disparate Impact Discrimination.**

**a.    Plaintiff Cannot Identify a Legally Protected Group That Was Disparately Impacted.**

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). To establish a *prima facie* case of disparate impact discrimination, a plaintiff must (1) identify a specific and facially neutral employment practice that caused a disparate impact based on religion and (2) demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination. *Davis v. Infinity Ins. Co.*, No. 21-11446, 2022 WL 1152612, at *6 (11th Cir. Apr. 19, 2022) (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274-75 (11th Cir. 2000)); *see Schmidt*, 721 F. Supp. 3d at 1325.

"[C]ourts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable subgroups, but not all those who share a single common belief." *Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-cv-01073-HZ, 2024 WL 777598, at *13 (D. Or. Feb. 23, 2024). "[P]arties cannot establish a prima facie disparate impact claim by defining the group as comprised of religious individuals holding a particular belief they attribute to their religion even if other members of that individual's faith or religious group believe otherwise." *Id.* at * 14 (citing *Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCX), 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022)).

For example, in *Brown v. Alaska Airlines, Inc.*, the plaintiff alleged that the defendant's policies disparately impacted "Christians . . . and other employees who hold traditional religious beliefs . . .." No. 2:22-cv-668, 2024 WL 2325058, at *17 (W.D. Wash. May 22, 2024). Granting summary judgment for the employer, the court concluded that, "to the extent that Plaintiffs intend their claim to relate to a custom-tailored subgroup of Christians based upon beliefs . . . they have failed to define the kind of group that a Title VII disparate impact claim is designed to protect." *Id.* (rejecting group defined "not by a protected status, but by the substantive content of the individuals' subjective beliefs, which are undoubtedly held by some Christians, but not by other Christians").

Recent cases addressing challenges to employers' COVID-19 vaccine mandates have rejected claims alleging a disparate impact to a group comprised of those who hold religious beliefs opposing the COVID-19 vaccine. *See Schmidt*, 721 F. Supp. 3d at 1326 ("[plaintiff's] framing of his protected class also stands on precarious ground" where it "appears not to be based on a particular faith or subgroup, but rather a specific religious belief – namely, the opposition to the COVID-19 vaccine"); *Cox*, 2024 WL 777598, at *14 (finding no facts to support a disparate impact "[b]ecause Plaintiffs have not identified a protected group, but rather simply the subgroup of religious individuals affected by the vaccine mandates"); *Matthews v. Legacy Health*, No. 6:24-cv-00592-MC, 2024 WL 3970794, at *3 (D. Or. Aug. 26, 2024) ("Opposition to a vaccine, even when labeled as a religious belief, is not enough to establish a protected class."); *Lugo v. Akamai Techs., Inc.*, No. 23-60153-CIV-SMITH, 2023 U.S. Dist. LEXIS 122538, at *9 (S.D. Fla. July 17, 2023) ("in a religious discrimination case, the protected class is comprised of persons of Plaintiff's religion, not someone who requested a religious accommodation"); *Dunbar*, 2022 WL 18357775, at *3 (rejecting plaintiff's claim of disparate impact on group defined as including "all those who share a religious belief against vaccinations").  As one court explained:

> If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach. This is because any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class.

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F.Supp.3d 1258, 1305 n.36 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021); *cf. Akiyama v. U.S. Judo Inc.*, 181 F.Supp.2d 1179, 1186 (W.D. Wash. 2002) (explaining that whether the relevant group was defined as

Christians, Lutherans, or Christian Lutherans holding beliefs that preclude bowing to inanimate objects, would be dispositive of claim that a judo competition's bowing regulation had a disparate impact).

Plaintiff cannot meet her burden of establishing a *prima facie* case, because she does not define a legally protected group that was disparately impacted. In 2021, as part of the PCT, MinuteClinic updated the job description for a NP to include Pregnancy Prevention Services as an essential function. SOF at ¶¶ 11-12. This essential function is the facially neutral "policy or practice" about which Plaintiff complains. *See* ECF 1 at ¶ 129.

Plaintiff "is a Christian and a member of the Roman Catholic church," and alleges that, "because of her Christian faith, [she] cannot prescribe hormonal contraceptives." *Id*. at ¶¶ 1, 28. However, she does not claim that MinuteClinic's updated job requirement disproportionately impacted Christians or Roman Catholics. Instead, she alleges the requirement disparately impacted employees "who have religious beliefs inconsistent with providing hormonal contraceptives." *Id.* at ¶ 133. Such a group is not legally protected because, rather than being an articulable religious group or subgroup, it is based on individuals holding a particular belief – namely, the opposition to prescribing contraceptives. Accordingly, Defendants are entitled to summary judgment on Plaintiff's disparate impact claim.

> **b.    Plaintiff Cannot Present Statistical Proof Showing that the Company's Practice Had An Adverse Impact on a Protected Group.**

To establish *a prima facie* case, Plaintiff must also "offer statistical evidence sufficient to show that the challenged practice resulted in prohibited discrimination." *Schmidt*, 721 F. Supp. 3d at 1326 (alternation omitted) (quoting *Krop v. Nicholson*, 506 F. Supp. 2d 1170, 1176 (M.D. Fla. 2007)); *see also Ricci v. DeStefano*, 557 U.S. 557, 587 (2009) (explaining that "a prima facie case of disparate-impact liability [is] essentially[] a threshold showing of a significant statistical disparity and nothing more") (internal citation omitted); *Powers v. Ala. Dep't of Educ*., 854 F.2d 1285, 1293 (11th Cir. 1988) (explaining that a *prima facie* case requires plaintiffs to show a "statistically significant disparity" between promotions of black people and similarly situated whites"). "[T]he law is clear that, 'without statistical proof, disparate impact is not established.'" *Fernandez,* 2022 WL 4598638, at *18 (*quoting *Cardelle v. Miami Beach Fraternal Ord. of Police*, 593 F. App'x 898, 902 (11th Cir. 2014)).

Plaintiff cannot offer any statistical evidence to show that MinuteClinic's Pregnancy Prevention Services essential job function had a disparate impact on any legally protected group.

Because Plaintiff cannot meet this requirement of establishing her *prima facie* case, Defendants are entitled to summary judgment on Plaintiff's disparate impact claim. *See Harris v. Dep't of Child. & Fams.*, No. 21-11581, 2022 WL 247982, at *2 (11th Cir. Jan. 27, 2022) (affirming summary judgment where plaintiff "failed to support her disparate impact claim with any statistical evidence").

      **2.**      **Even if Plaintiff Could Establish a *Prima Facie* Case, Requiring Providers to Perform Essential Functions Is Job-Related and Consistent with a Business Necessity.**

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that the challenged employment practice serves a legitimate, nondiscriminatory business objective. *Infinity Ins.*, 2022 WL 1152612, at *3 (citing *Joe's Stone Crab, Inc.*, 220 F.3d at 1275). As detailed above, in implementing its PCT, MinuteClinic determined that it was necessary for all clinic NPs to provide all offered services, including Pregnancy Prevention Services, on a consistent basis to every patient in every location. SOF at ¶¶ 4-12, 17-25. The failure to follow through with the promised care could threaten MinuteClinic's ability to perform on its commitment to its patients and result in patients not receiving the care they needed in a timely manner, patient inconvenience and complaints, lost business, reputational damage, and a loss of competitiveness. *Id.* at ¶¶ 19-25.

      **3.**      **Plaintiff Cannot Prove that an Alternative, Nondiscriminatory Practice Would Have Served MinuteClinic's Stated Objective Equally Well.**

Once a defendant meets its burden, the plaintiff must prove that an alternative, nondiscriminatory practice would have served the defendant's stated objective equally well. *Infinity Ins.*, 2022 WL 1152612, at *3 (citing *Joe's Stone Crab, Inc.*, 220 F.3d at 1275). Plaintiff alleges that "[l]ess discriminatory alternatives, including allowing religious accommodations or allowing exceptions for providers and nurses who work in positions or locations where they are never or rarely asked to provide such services, such as COVID-19 clinics, were available."  ECF 1 at ¶ 132. As previously established, such alleged alternatives were either not available or would not have served MinuteClinic's objective of providing Pregnancy Prevention Services, consistently and without delay or referral, to every patient at every clinic. MinuteClinic considered whether positions that did not require providing Pregnancy Prevention Services, such as positions limited to providing COVID-19 services, were available as a reasonable accommodation for those with religious objections to providing Pregnancy Prevention Services, but none were available. SOF at ¶¶ 47, 63-71. Moreover, exempting providers undermined the PCT's objectives. *Id.* at ¶¶

17-25. Plaintiff cannot put forth evidence establishing a genuine issue of material fact as to whether an alternative practice would have equally met MinuteClinic's objectives. For this additional reason, Defendants are entitled to summary judgment on Plaintiff's disparate impact claim.

**F.    Plaintiff Cannot Prove Any Facts That Would Entitle Her to Punitive Damages.**

Plaintiff seeks punitive damages in connection with her Title VII and FCRA disparate treatment claims.[4] A plaintiff may recover punitive damages under Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1). "Malice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." *Margolis v. Pub. Health Tr. of Miami-Dade Cnty.*, 89 F. Supp. 3d 1343, 1355 (S.D. Fla. 2015) (quoting *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1281 (11th Cir.2008)) (alteration omitted). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1280 (11th Cir.2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). "However, mere negligence as to the civil rights of employees is not enough to justify punitive damages." *U.S. EEOC v. W&O, Inc*., 213 F.3d 600, 611 (11th Cir. 2000). "The issue of the sufficiency of evidence for punitive damages may be resolved at the summary judgment stage." *Ayers v. Wal-Mart Stores, Inc*., 941 F. Supp. 1163, 1169 (M.D. Fla. 1996).

Plaintiff cannot present evidence that Defendants acted with an intent to harm or a serious disregard to whether MinuteClinic's actions would violate Plaintiff's federally protected rights. MinuteClinic specifically considered whether an accommodation could be made for those NPs who had religious objections to providing Pregnancy Prevention Services. SOF at ¶¶ 17-18, 66-73. It first determined that it could not continue exempting NPs from providing the essential services and allow them to refer requesting patients elsewhere. *Id.* at ¶¶ 16-25. It then considered whether such individuals could be transferred to other positions that did not require prescribing contraceptives. *Id.* at ¶¶ 63-71. While Plaintiff may dispute MinuteClinic's conclusion that continuing to accommodate her religious objections would cause it undue hardship, she cannot

---

[4] Punitive damages are not available as a remedy for a disparate impact violation under Title VII. *Rivers v. Walt Disney World Co*., No. 6:07-cv-1608-Orl-31KRS, 2008 U.S. Dist. LEXIS 9789, at *1 (M.D. Fla. Feb. 11, 2008).

present evidence that MinuteClinic acted with an intent to harm or with a reckless indifference to her rights.

### III.  **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants request that the Court grant summary judgment in its favor and dismiss all of Plaintiff's claims with prejudice.

Dated: December 10, 2024

Respectfully submitted,

_/s/ Nancy A. Beyer_

Heather A. Pierce *(Pro Hac Vice)*
RI Bar No. 7345
hpierce@littler.com
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
Telephone:  401.824.2500
Facsimile:  401.454.2969

Allison Williams *(Pro Hac Vice)*
Texas Bar No. 24075108
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Nancy A. Beyer
Florida Bar No. 0059688
nbeyer@littler.com
Nancy Johnson
Florida Bar No. 0597562
njohnson@littler.com
LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, FL  32801-2366
Telephone:  407.393.2900
Facsimile:  407.393.2929

Kimberly R. Miers *(Pro Hac Vice)*
Texas Bar No. 24041482
kmiers@littler.com
Melinda J. Wetzel *(Pro Hac Vice)*
Texas Bar No. 24115637
mwetzel@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:  512.982.7250
Facsimile:  512.982.7248

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to the following:

| | |
|---|---|
| Amber Stoner Nunnally<br>Jason Brent Gonzalez<br>Robert E. Minchin, III<br>LAWSON HUCK GONZALEZ PLLC<br>215 South Monroe Street, Suite 320<br>Tallahassee, FL 32301<br>amber@lawsonhuckgonzalez.com<br>jason@lawsonhuckgonzalez.com<br>bob@lawsonhuckgonzalez.com | David J. Hacker<br>Stephanie N. Taub<br>Ryan N. Gardner<br>Danielle A. Runyan<br>FIRST LIBERTY INSTITUTE<br>2001 West Plano Pkwy., Ste. 1600<br>Plano, TX 75075<br>dhacker@firstliberty.org<br>staub@firstliberty.org<br>rgardner@firstliberty.org<br>drunyan@firstliberty.org |
| Jonathan Berry<br>Jared M. Kelson<br>Andrew Smith<br>BOYDEN GRAY PLLC<br>801 17th Street NW, Suite 350<br>Washington, DC 20006<br>jberry@boydengray.com<br>jkelson@boydengray.com<br>asmith@boydengray.com | Tabitha M. Harrington<br>FIRST LIBERTY INSTITUTE<br>1331 Pennsylvania Ave. NW, Suite 1410<br>Washington, DC 20004<br>tharrington@firstliberty.org |
| Douglas J. Peterson<br>KEATING, O'GARA, NEDVED & PETER<br>200 South 21st Street, Suite 400<br>Lincoln, NE 68510<br>dpeterson@keatinglaw.com | |

*/s/ Nancy A. Beyer*

4896-3008-9476.6 / 090142-1467

22