**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**GUDRUN KRISTOFERSDOTTIR**;

*Plaintiff,*

**v.**

**CVS HEALTH CORPORATION;**
**MINUTECLINIC, LLC;**
**MINUTECLINIC DIAGNOSTIC OF**
**FLORIDA, LLC;**

*Defendants.*

**CASE NO. 9:24-CV-80057-RLR**

**DISTRICT JUDGE ROSENBERG**

**MAGISTRATE JUDGE REINHART**

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Rule 56.1, Plaintiff Gudrun Kristofersdottir files this Motion for Partial Summary Judgment as to liability for the reasons discussed below. In further support of this motion, Plaintiff has simultaneously filed a Statement of Material Facts ("SF").

**REQUEST FOR HEARING**

Plaintiff Gudrun Kristofersdottir respectfully requests a hearing on her Motion for Partial Summary Judgment. This case involves a straightforward application of Title VII of the Civil Rights Act of 1964, including the Supreme Court's recent decision in *Groff v. DeJoy*, 600 U.S. 447 (2023), that would resolve all issues of liability in this case, leaving only the extent of damages for trial. Plaintiff estimates that 15 minutes per side would be sufficient.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 2

    A.   Defendants Accommodated Kristofersdottir for Six Years Without Hardship .................................................................................................. 2

    B.   Defendants Revoked Religious Accommodations Related to Contraceptives ........................................................................................ 3

    C.   Defendants Fired Kristofersdottir for Adhering to Her Religious Beliefs ... 4

    D.   Defendants Continued Accommodations for Other Employees ........................ 5

    E.   Defendants Resumed Religious Accommodations Related to Contraceptives ........................................................................................ 5

    F.   EEOC Complaint ..................................................................................... 6

LEGAL STANDARD ............................................................................................. 6

ARGUMENT ........................................................................................................ 6

    I.   DEFENDANTS VIOLATED TITLE VII BY FAILING TO ACCOMMODATE KRISTOFERSDOTTIR ........................................................ 7

        A.   Kristofersdottir Has Established Her Prima Facie Case .................................. 7

        B.   Defendants Cannot Show That Accommodating Kristofersdottir Would Have Caused Undue Hardship ...................................................... 7

        C.   Defendants Violated Their Own Accommodations Policy and Provided Shifting Explanations for Refusing to accommodate Kristofersdottir ........ 14

    II.   DEFENDANTS VIOLATED TITLE VII BY DISCRIMINATING AGAINST KRISTOFERSDOTTIR'S RELIGIOUS BELIEFS ............................................ 15

        A.   Kristofersdottir Has Established Her Prima Facie Case .................................. 15

        B.   Defendants Had No Legitimate, Non-discriminatory Reason for Treating Kristofersdottir Worse Than Other Employees ................................. 17

    III.   DEFENDANTS VIOLATED FCRA FOR THE SAME REASONS AS TITLE VII ....... 17

CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Adeyeye v. Heartland Sweeteners, LLC,*
   721 F.3d 444 (7th Cir. 2013) ..........................................................................10, 12

*Bailey v. Metro Ambulance Servs., Inc.,*
   992 F.3d 1265 (11th Cir. 2021) ................................................................................7

*Bechtel Constr. Co. v. Sec'y of Lab.,*
   50 F.3d 926 (11th Cir. 1995) .................................................................................14

*D'Angelo v. ConAgra Foods, Inc.,*
   422 F.3d 1220 (11th Cir. 2005) .............................................................................13

*EEOC v. Joe's Stone Crab, Inc.,*
   220 F.3d 1263 (11th Cir. 2000) .............................................................................15

*Fitzpatrick v. City of Atlanta,*
   2 F.3d 1112 (11th Cir. 1993) .................................................................................13

*Groff v. DeJoy,*
   600 U.S. 447 (2023) ..........................................................................7, 8, 10, 11, 12

*Harper v. Blockbuster Ent. Corp.,*
   139 F.3d 1385 (11th Cir. 1998) .............................................................................17

*Hebrew v. Tex. Dep't of Crim. Just.,*
   80 F.4th 717 (5th Cir. 2023) .................................................................................10

*Hellinger v. Eckerd Corp.,*
   67 F. Supp. 2d 1359 (S.D. Fla. 1999) ...........................................................8, 9, 11

*Holly v. Clairson Indus., LLC,*
   492 F.3d 1247 (11th Cir. 2007) .............................................................................13

*Lukie v. MetLife Grp., Inc.,*
   No. 22-10967, 2024 WL 4471109 (11th Cir. Oct. 11, 2024) ................................17

*Morrison v. Amway Corp.,*
   323 F.3d 920 (11th Cir. 2003) ................................................................................6

*Smith v. City of Mesa,*
   No. CV-21-01012-PHX-DJH, 2023 WL 8373495 (D. Ariz. Dec. 3, 2023) ..........10

*Staple v. Sch. Bd. of Broward Cnty.,*
   No. 21-11832, 2024 WL 3263357 (11th Cir. 2024) .............................................15

*Troutman v. Teva Pharms. USA, Inc.,*
   No. 6:22-CV-395-JDK, 2024 WL 3635303 (E.D. Tex. June 25, 2024) ...........10, 12

*Virciglio v. Work Train Staffing LLC,*
   674 F. App'x 879 (11th Cir. 2016) ..........................................................................6

*Walker v. St. Joseph's/Candler Health Sys., Inc.,*
   506 F. App'x 886 (11th Cir. 2013) ........................................................................14

*Wellons v. Miami Dade Cnty.*,
    611 F. App'x 535 (11th Cir. 2015) ...................................................................................13

*Woods v. Waste Pro of Fla., Inc.*,
    No. 21-12610, 2022 WL 2288683 (11th Cir. June 24, 2022)...................................17

**Statutes**

42 U.S.C. § 2000e .................................................................................................................6

42 U.S.C. § 2000e-2.............................................................................................................6

42 U.S.C. §§ 2000e to 2000e-17.......................................................................................12

42 U.S.C. § 12111(8) .........................................................................................................12

Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e *et seq.* ...................................2, 17

Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ...........................................2

## INTRODUCTION

Plaintiff Gudrun Kristofersdottir is a devout Roman Catholic whose religious beliefs prevent her from prescribing or administering hormonal contraceptives. She was previously employed as a nurse practitioner by MinuteClinic, LLC, a wholly owned subsidiary of CVS Health Corporation (collectively, "Defendants"), which accommodated those beliefs for six years without difficulty. However, on August 26, 2021, Defendants announced in a Town Hall meeting for all MinuteClinic nurse practitioners that contraceptive services would now be considered an "essential function" of their jobs, and related religious accommodations were being revoked or discontinued. All nurse practitioners would be fired unless they agreed to personally prescribe and administer hormonal contraceptives. Kristofersdottir adhered to her faith and was fired by Defendants on March 31, 2022.

At every step, Defendants displayed a callous disregard—if not outright hostility—toward the legal rights of their religious employees. ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ Defendants concede they made the decision to deny religious accommodations related to contraceptives without considering the number of patients requesting contraceptives or any analysis of the economic costs to their business. They ignored their own established procedures, bypassed their dedicated Reasonable Accommodations Team, shut down the normal interactive process for evaluating accommodation requests on a case-by-case basis, and removed the decision whether to accommodate away from the relevant employee's supervisor who was responsible for that determination. Defendants also ignored the many possible ways to accommodate religious employees without undue hardship, but continued to grant the same or comparable accommodations for secular purposes.

Defendants were already struggling to hire and retain nurse partitioners, and MinuteClinics were already short staffed. Firing Kristofersdottir only made that worse, resulting in more referrals to other locations and even closing her location in Tequesta, Florida, on occasion due to staffing issues. Productivity went down. Patients missed her. But all of that was immaterial to Defendants in their crusade to purge nonconforming religious employees from their ranks, even proactively seeking out those employees for termination when there was no evidence their accommodations were burdening the business.

Then, less than a year after firing Kristofersdottir, Defendants resumed granting religious accommodations related to contraceptives and eventually offered Kristofersdottir her job back, confirming that no undue hardship would have resulted from accommodating her all along. Kristofersdottir's manager actually testified that continuing to accommodate Kristofersdottir would not have burdened MinuteClinic operations, which alone is dispositive.

Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq.*, by failing to accommodate Kristofersdottir's religious beliefs and discriminating against her on the basis of religion. This Court should grant her Motion for Summary Judgment as to Liability, with damages to be determined at trial.

## BACKGROUND

### A.  DEFENDANTS ACCOMMODATED KRISTOFERSDOTTIR FOR SIX YEARS WITHOUT HARDSHIP

Defendants hired Kristofersdottir on August 25, 2014, as a nurse practitioner at the MinuteClinic in Tequesta. SF ¶5. She was a high-performing employee who consistently earned high ratings on performance reviews and performance bonuses. SF ¶6. She was also experienced, having previously served in a NATO field hospital treating soldiers wounded in the Bosnia-Herzegovina conflict, taught at the University of Iceland, and served in the U.S. Air Force Special Forces Medical Group. SF ¶7.

Kristofersdottir is a Roman Catholic who sincerely believes that use of hormonal contraceptives to prevent pregnancy is inconsistent with God's will for humanity. SF ¶15. That belief did not affect her job until January 2016, when MinuteClinic began offering oral (a type of hormonal) contraceptive services. SF ¶16. Kristofersdottir had no objection to providing information and counseling patients about hormonal contraceptives, but felt she could not prescribe or administer them because of her deeply held religious beliefs. SF ¶¶15, 37.

On January 12, 2016, Kristofersdottir followed MinuteClinic's "Conscience Policy" for requesting religious accommodations by completing a request form and emailing it to her direct supervisor, Senior Practice Manager ("SPM") Loraine Hendricksen. SF ¶¶10, 17-18. Kristofersdottir's request explained that she would refer any patient who might request contraceptives to a nearby MinuteClinic location for a same-day appointment or reschedule the patient for a later day when another nurse practitioner was on duty at the Tequesta clinic. SF ¶21. Her email also requested contact information to forward her request to the appropriate Human

Resources ("HR") Business Partner for MinuteClinic. SF ¶18.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

Kristofersdottir fulfilled her job responsibilities consistent with her accommodation request for the next six years. SF ¶23. Defendants never disputed the accommodation throughout that period. ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ Her accommodation never imposed a significant burden on MinuteClinic activities, nor did it interfere with Kristofersdottir's ability to fulfil her day-to-day role as a nurse practitioner. SF ¶¶31-38.

B. **DEFENDANTS REVOKED RELIGIOUS ACCOMMODATIONS RELATED TO CONTRACEPTIVES**

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

On August 26, 2021, Patterson announced in a Town Hall meeting for all MinuteClinic nurse practitioners that prescribing and administering contraceptives was now an "essential function" of their job, even for positions that would not plausibly need to prescribe or administer them. SF ¶51. ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

### C.  DEFENDANTS FIRED KRISTOFERSDOTTIR FOR ADHERING TO HER RELIGIOUS BELIEFS

On February 11, 2022, Kristofersdottir saw news on television that MinuteClinic had fired a nurse practitioner in Texas named JRS because her religious beliefs did not allow her to prescribe or administer contraceptives. SF ¶63. Kristofersdottir informed Hendricksen about JRS later that day and asked whether she (Kristofersdottir) should be concerned about her own religious accommodation. SF ¶64. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████

████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ ███ ███ ███ ███ █████ █████ ██ ███ ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Kristofersdottir received a "High Performance" rating on her year-end performance evaluation for 2021 and a performance-based pay raise the month before she was fired. SF ¶6.

**D.  DEFENDANTS CONTINUED ACCOMMODATIONS FOR OTHER EMPLOYEES**

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

**E.  DEFENDANTS RESUMED RELIGIOUS ACCOMMODATIONS RELATED TO CONTRACEPTIVES**

████████████████████████████████████████████████
██ ████ ██ ████ ██ ██████ █ ██ ████ ████ █
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

On April 28, 2023, after Kristofersdottir had filed a discrimination charge with the EEOC, SF ¶122, Defendants offered to rehire her at the Tequesta clinic with a religious accommodation to refer patients seeking contraceptive services to other MinuteClinic nurse practitioners, just as she had for the six years before Defendants fired her. SF ¶95. Kristofersdottir could not accept that offer because she was uncomfortable returning to a company that had been so hostile to her religious beliefs. SF ¶96.

Finally, in May 2024, MinuteClinic reinstated a similar religious accommodation for JA, a nurse practitioner in Nebraska. SF ¶121. Defendants had previously accommodated JA's religious

beliefs until the change in essential functions in 2021. SF ¶¶118-19. JA had agreed to prescribe and administer contraceptives as part of the policy change, and she provided those services until her accommodation was reinstated. SF ¶120-21.

### F. EEOC COMPLAINT

Kristofersdottir timely filed a complaint with the EEOC and FCRA on August 30, 2022, asserting failure to accommodate and religious discrimination under Title VII and FCRA. SF ¶122. She received a right-to-sue letter from the EEOC on October 25, 2023. SF ¶123. She timely filed this lawsuit on January 18, 2024. SF ¶124.

## LEGAL STANDARD

Summary judgment is appropriate "where the record evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact," and there is not sufficient "evidence upon which a reasonable juror could find for the non-moving party." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

## ARGUMENT

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion" "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Title VII applies to Defendant MinuteClinic, LLC because it was, at all relevant times, an employer of more than 500 employees. SF ¶3; *see* 42 U.S.C. § 2000e(b). CVS Health Corporation is "equally subject to liability" as a parent company of MinuteClinic and part of an "integrated" CVS Enterprise. *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 889 (11th Cir. 2016) (citing *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987)).

Defendants fired Kristofersdottir only because her Catholic faith prevents her from prescribing or administering hormonal contraceptives. Their failure to allow her to continue referring patients to other MinuteClinic providers, or to consider other possible accommodations, violated Title VII by failing to reasonably accommodate Kristofersdottir's religious beliefs. They also violated Title VII by discriminating against her based on her religion. Such conduct violated

FCRA for the same reasons. Kristofersdottir is thus entitled to summary judgment as to liability.

# I. DEFENDANTS VIOLATED TITLE VII BY FAILING TO ACCOMMODATE KRISTOFERSDOTTIR

"To establish a reasonable accommodation claim … a plaintiff must first set forth a prima facie case by showing that "(1) [her] sincere and bona fide religious belief conflicted with an employment requirement, and (2) [her] employer took adverse employment action against [her] because of [her] inability to comply with the employment requirement." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021). This burden "is not onerous." *Id.* (cleaned up). "Once a plaintiff makes out a prima facie case, the burden shifts to the employer to show that … it cannot reasonably accommodate the employee's religious practice without undue hardship on its business." *Id.* Here, Kristofersdottir established her prima facie case, Defendants have not produced triable evidence that accommodating her would impose undue hardship on their business.

## A. KRISTOFERSDOTTIR HAS ESTABLISHED HER PRIMA FACIE CASE

It is undisputed that Kristofersdottir is unable to prescribe and administer hormonal contraceptives because of her sincerely held religious beliefs. *See, e.g.*, SF ¶15. It is also undisputed that Defendants fired Kristofersdottir only because she would not prescribe or administer hormonal contraceptives. SF ¶93. Defendants did not offer her any potential accommodation. These facts state a prima facie case of failure to accommodate an employee's religious belief. *See Bailey*, 992 F.3d at 1275.

## B. DEFENDANTS CANNOT SHOW THAT ACCOMMODATING KRISTOFERSDOTTIR WOULD HAVE CAUSED UNDUE HARDSHIP

"'[U]ndue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). "[A] hardship is," by definition, "more severe than a mere burden.… [A]n employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs." *Id.* at 469. "[A]nd adding the modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Id.* Accordingly, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its

particular business … in light of the nature, size, and operating cost of [the] employer." *Id.* at 470-71 (cleaned up). Defendants here cannot show that accommodating Kristofersdottir would have imposed "excessive," "unjustifiable," or "substantial" costs on their business.

### 1. Accommodating Kristofersdottir Did Not Impose Substantial Increased Costs

Defendants accommodated Kristofersdottir for six years without hardship. SF ¶23. Kristofersdottir consistently received high performance reviews and performance bonuses while her accommodation was in place, including a performance bonus less than one month before she was fired. SF ¶6, 38. ████████████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ These facts alone are enough to resolve liability for failure to accommodate.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That, again, is dispositive.

Accommodating Kristofersdottir would not have burdened her co-workers, either. Her coworkers testified they were fine receiving referrals from Kristofersdottir and that scheduling around the accommodation did not affect MinuteClinic operations. SF ¶35. Coworker Rebecca Gibney said Defendants were "losing their best provider over nothing." SF ¶102. By contrast, another coworker, Ellen Tillet, said that the new hires MinuteClinic used to replace Kristofersdottir created burdens for their fellow coworkers that Kristofersdottir never did. Tillet texted Kristofersdottir that "the new person who took your spot" was "sending me patients that not wanting to care for. I never had that problem when u were there." SF ¶104.

This Court has previously concluded that similar accommodations do not amount to undue hardship. In *Hellinger v. Eckerd Corp.*, 67 F. Supp. 2d 1359 (S.D. Fla. 1999), a pharmacist expressed a religious objection to selling condoms and argued he could refer customers to another

employee, *id.* at 1365. While the employer protested that this accommodation would result in lost "customers, community goodwill, and revenue," this Court denied the employer's motion for summary judgment. *Id.* An employer must "prove more than [a] hypothetical hardship," this Court held, and since the employer never implemented the accommodation, it had no "evidence of actual undue hardship." *Id.* at 1365-66. Here, Defendants are on even shakier ground. They *did* accommodate Kristofersdottir for years, and all the evidence points in the same direction—it caused no undue hardship.

█████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

Firing Kristofersdottir was actually a losing business proposition for Defendants. █

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████

In addition, firing Kristofersdottir resulted in more, not fewer, internal referrals of patients to other MinuteClinics. In October 2022, Tillett conveyed to Kristofersdottir that "the new person who took your spot" was "sending me patients that not wanting to care for. I never had that problem when u were there." SF ¶104. ██████████████████████████████████████

██████████████████████████████████████████████████████████

██ ████ █████ ███ ████ █ ██████ █████ ██ ██ ████ ███████ ███

██████████████████████████████████████████████████████████

███████████████████████████ These increased referrals further demonstrate that

firing Kristofersdottir was not about alleviating "excessive" or "unjustifiable" hardships—it actually increased them.

Defendants then resumed approving other requests from MinuteClinic nurse practitioners for the same accommodation they revoked for Kristofersdottir. ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████ ████ ████ ███ ████ ████ ████ ████ ████████ ████ ██ ████

███████████████ None of these accommodations imposed a substantial hardship on Defendants. In fact, Defendants produced *no* evidence of "excessive," "unjustifiable," or "substantial" costs caused by these or similar accommodations at any point, whether while employing Kristofersdottir, after she was fired, or when Defendants resumed providing accommodations. That, again, is the end of the matter.

### 2. Defendants Failed to Consider Other Accommodations

Defendants also failed to consider other possible accommodations for Kristofersdottir. "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely … assess the reasonableness of a particular possible accommodation or accommodations." *Groff*, 600 U.S. at 473 (citing *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013)). Even if continuing to allow referrals would have imposed an undue burden on Defendants, it "would also be necessary" for Defendants to show they "[c]onsider[ed] … other options" besides firing Kristofersdottir. *Id.*; *see Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 722 (5th Cir. 2023) (employers must engage in "thorough examination of any and all alternatives" before "deny[ing] the employee's request for accommodation" (cleaned up)); *Troutman v. Teva Pharms. USA, Inc.*, No. 6:22-CV-395-JDK, 2024 WL 3635303, at *9 (E.D. Tex. June 25, 2024) ("Employers have an affirmative obligation to engage in a thorough examination of any and all alternatives. Only after thorough consideration of other options may the employer deny the employee's request for accommodation." (cleaned up)); *cf. Adeyeye*, 721 F.3d at 455 (summary judgment for an employer is appropriate only if it can "show, as a matter of law, that any and all accommodations would have imposed an undue hardship").

Defendants cannot make this showing because they never considered numerous possible accommodations. SF ¶¶79, 81-84, 87-91. For example, Defendants did not consider transferring Kristofersdottir to another position in the CVS Enterprise or allowing her to make immediate

referrals of contraceptive requests to MinuteClinic telehealth providers. SF ¶¶81, 83, 87-88. That is fatal. *Smith v. City of Mesa*, No. CV-21-01012-PHX-DJH, 2023 WL 8373495, at *3 (D. Ariz. Dec. 3, 2023) (granting summary judgment to plaintiff because the employer never "demonstrated how any and all other accommodations would have posed an undue hardship to the conduct of its business").

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

Far from considering all potential accommodations, Defendants *prohibited* consideration of accommodations for employees with religious objections to prescribing or administering hormonal contraceptives. ███████████████████████████████████████

███ ██ ██ ████ █████████ ██ ███ ████ ██ ████ █ ██ ███ ███ █

████████████████████████████████████████████████

███████████████████████████████████████████ Failure—indeed, refusal—to consider alternatives violated Title VII. *See Groff*, 600 U.S. at 473.

In addition, because Defendants "offered [Kristofersdottir] no accommodation," the existence of a possible accommodation defeats any claim of undue hardship. *Hellinger*, 67 F. Supp. 2d at 1366. Defendants could easily have accommodated Kristofersdottir in multiple ways. First, Defendants could have assigned Kristofersdottir as a COVID-19 Swab and Send Superdelegate, as they did for EM. *See* SF ¶¶109-112. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Fifth, Kristofersdottir could have called Hendricksen to come treat patient requests for contraceptives, just as she does to deliver supplies when the clinic runs out. SF ¶80. Sixth, Kristofersdottir could have immediately referred a patient seeking contraceptives to a MinuteClinic telehealth provider, and Defendants could have even prioritized such soft handoffs to be seen promptly. SF ¶¶87-88. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Seventh, Defendants could have screened patients during scheduling and intake to prevent appointments for hormonal contraceptives during Kristofersdottir's shift. SF ¶26.

Any of these options—alone or in combination—could have lessened or entirely eliminated any burden related to accommodating Kristofersdottir.

### 3. Defendants Cannot Evade Title VII with Arbitrary "Essential Function" Labels

Defendants absolve themselves from accommodating Kristofersdottir because they labeled contraceptive services an "essential function" of her job. The term "essential function" comes from the Americans with Disabilities Act ("ADA"), which requires that an employee be able to perform the "essential functions of the job" without an accommodation. 42 U.S.C. § 12111(8). No such language or requirement exists for Title VII. *See id.* §§ 2000e to 2000e-17; *Troutman*, 2024 WL 3635303, at *8; *cf. Groff*, 600 U.S. at 471 (rejecting a suggestion to "draw upon decades of ADA caselaw" and instead determining whether a hardship is substantial in a "common-sense manner" (cleaned up)).

Whether accommodating an employee will substantially burden an employer is determined by objective facts, not self-serving labels. *Groff*, 600 U.S. at 468 ("fact-specific inquiry"); *Adeyeye*, 721 F.3d at 455 (asking "whether or not the employer can in fact continue to function absent undue hardship"). The facts here show that accommodating Kristofersdottir would not have caused Defendants undue hardship. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The consequences of a nurse practitioner not personally providing those services are often undetectable. Hendricksen testified that

12

Kristofersdottir's accommodation never interfered with day-to-day operations. SF ¶31. ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

Prescribing and administering contraceptives would not have qualified as an "essential function" of Kristofersdottir's job under the ADA, either, for the same reasons. Whether a task is an "essential function" is evaluated "case-by-case," and the employer's view is not "conclusive." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1257-58 (11th Cir. 2007) (cleaned up). Courts consider the time spent on the job performing the function, the consequences of not performing it, and the current work experience of incumbents in similar jobs. *Id.* This was "at most an occasional function of her job," not an essential one. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1232 (11th Cir. 2005).

Further, the decision to designate "essential functions" was artificially invoked for the purpose of refusing to accommodate employees with religious objections related to hormonal contraceptives. ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*see Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1125 (11th Cir. 1993) (assessing under-inclusiveness as evidence of pretext). ██████████████████████████████████

████████ ████ ████ ████ ████████ ████ ██ ████ ████ ████

███████████████████████████████████████████████████████

███████████████████████████████████████

Invoking an "essential function" label for contraceptive services does nothing to show undue hardship. Allowing employers to arbitrarily do so would render the reasonable accommodation requirements of Title VII meaningless.

## C. DEFENDANTS VIOLATED THEIR OWN ACCOMMODATIONS POLICY AND PROVIDED SHIFTING EXPLANATIONS FOR REFUSING TO ACCOMMODATE KRISTOFERSDOTTIR

"[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." *Wellons v. Miami Dade Cnty.*, 611 F. App'x 535, 540 (11th Cir. 2015) (quoting *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006)). "Pretext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false." *Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013); *see also Bechtel Constr. Co. v. Sec'y of Lab.*, 50 F.3d 926, 935 (11th Cir. 1995). Those indicators are present here.

First, Defendants failed to engage in an interactive process with Kristofersdottir to consider possible accommodations. ███████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████  ██  ███  █████  ███  ████  ███████  ████  ████  ████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████  ████  ██  ██  ████  █████  █  ██  ████  ████  ████
███████████████████████████████████████████████████████████
████████████████
          █████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

 This

constant—and implausible—evolution makes clear Defendants are making up excuses as they go.

Accordingly, this Court should grant summary judgment to Kristofersdottir as to liability on her failure-to-accommodate claim.

## II.    DEFENDANTS VIOLATED TITLE VII BY DISCRIMINATING AGAINST KRISTOFERSDOTTIR'S RELIGIOUS BELIEFS

In addition to a "positive duty to accommodate" religious practices, Title VII imposes a "negative duty not to discriminate because of an individual's religion." *Staple v. Sch. Bd. of Broward Cnty.*, No. 21-11832, 2024 WL 3263357, at *3 (11th Cir. 2024) (cleaned up). A disparate treatment claim requires the plaintiff to show (1) membership in a protected class; (2) an adverse employment action; (3) that the employer treated similarly situated employees more favorably; and (4) that the plaintiff was qualified for the job. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). "Once these elements are established, a defendant has the burden of producing legitimate, non-discriminatory reasons for its employment action. If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.* (cleaned up).

### A.    KRISTOFERSDOTTIR HAS ESTABLISHED HER PRIMA FACIE CASE

Kristofersdottir has established a prima facie disparate treatment claim. No one disputes that she cannot prescribe or administer hormonal contraceptives because of her sincere Catholic faith, SF ¶¶15, 76, or that she was terminated for adhering to this belief, SF ¶93, or that she was well-qualified for her job, SF ¶¶6, 38, 77, 100, 102. Defendants also treated similarly situated employees more favorably.

First, Defendants denied Kristofersdottir an accommodation to not prescribe or administer contraceptives, but granted the same accommodation to others for secular reasons. ▮▮▮▮▮

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████ Each
example is prima facie evidence of disparate treatment.

███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

██████████████████

**B. DEFENDANTS HAD NO LEGITIMATE, NON-DISCRIMINATORY REASON FOR TREATING KRISTOFERSDOTTIR WORSE THAN OTHER EMPLOYEES**

For the same reasons discussed above, *see supra* Parts I.C & I.D, Defendants have not offered any non-discriminatory, non-pretextual reason for treating Kristofersdottir worse than other employees. This Court should thus grant summary judgment to Kristofersdottir as to liability on her disparate-treatment claim.

## III. DEFENDANTS VIOLATED FCRA FOR THE SAME REASONS AS TITLE VII

Finally, **"**FCRA discrimination claims are analyzed using the same analytical framework and burdens of proof as claims under Title VII of the Civil Rights Act of 1964." *Lukie v. MetLife Grp., Inc.*, No. 22-10967, 2024 WL 4471109, at *3 (11th Cir. Oct. 11, 2024); *Woods v. Waste Pro of Fla., Inc.*, No. 21-12610, 2022 WL 2288683, at *2 (11th Cir. June 24, 2022); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Failure to accommodate Kristofersdottir, and firing her because of her religious beliefs, violates FCRA for the same reasons it violates Title VII.

### CONCLUSION

This Court should grant summary judgment to Kristofersdottir as to liability, remanding the remaining issues including damages for trial.

Respectfully submitted this 10th day of December, 2024.

/s/ Jason Gonzalez
Jason Gonzalez
Robert E. Minchin III
LAWSON HUCK GONZALEZ PLLC
215 South Monroe Street, Suite 320
Tallahassee, Florida 32301
(850) 825-4334
jason@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
marsha@lawsonhuckgonzalez.com

David J. Hacker*
Stephanie N. Taub*
Ryan N. Gardner*
Danielle A. Runyan*
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
(972) 941-4444
dhacker@firstliberty.org
staub@firstliberty.org
rgardner@firstliberty.org
drunyan@firstliberty.org

Tabitha M. Harrington*
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue NW, Suite 1410
Washington, DC 20004
(202) 921-4105
tharrington@firstliberty.org

*admitted *pro hac vice*

Douglas Peterson*
KEATING O'GARA NEDVED & PETER
200 S 21 Street, Suite 400
Lincoln, NE 68510
(402) 475-8230
dpeterson@firstliberty.org

Jonathan Berry*
Jared M. Kelson*
Andrew Smith*
BOYDEN GRAY PLLC
800 Connecticut Ave NW, Suite 900
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com
jkelson@boydengray.com
asmith@boydengray.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jason Gonzalez*
Attorney

## SERVICE LIST

Nancy A. Beyer Benton
Fla. Bar No.: 0059688
Nancy A. Johnson
Florida Bar No. 0597562
LITTLER MENDELSON, P.C.
111 N. Orange Avenue, Suite 1750
Orlando, Florida 32801-2366
Telephone: 407.393.2900
Facsimile: 407.393.2929
nbeyer@littler.com
najohnson@littler.com

Heather A. Pierce *(pro hac vice)*
Rhode Island Bar No.: 7345
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2005
Providence, RI 02903
401.824.2506
401.223.6867 (Fax)
hpierce@littler.com

Kimberly R. Miers *(pro hac vice)*
TX Bar No. 24041482
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)
kmiers@littler.com

Allison Williams (pro hac vice)
TX Bar No. 24075108
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951-9400
acwilliams@littler.com

*Counsel for Defendants*