## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

GUDRUN KRISTOFERSDOTTIR,

     Plaintiff,

v.

CVS HEALTH CORPORATION;
MINUTECLINIC, LLC; MINUTECLINIC
DIAGNOSTIC OF FLORIDA, LLC,

     Defendants.

CASE NO. 9:24-CV-80057-RLR

DISTRICT JUDGE ROSENBERG

MAGISTRATE JUDGE REINHART

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Heather A. Pierce *(Pro Hac Vice)*
RI Bar No. 7345
hpierce@littler.com
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
Telephone:  401.824.2500
Facsimile:  401.454.2969

Allison Williams *(Pro Hac Vice)*
Texas Bar No. 24075108
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Nancy A. Beyer
Florida Bar No. 0059688
nbeyer@littler.com
Nancy Johnson
Florida Bar No. 0597562
njohnson@littler.com
LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, FL  32801-2366
Telephone:  407.393.2900
Facsimile:  407.393.2929

Kimberly R. Miers *(Pro Hac Vice)*
Texas Bar No. 24041482
kmiers@littler.com
Melinda J. Wetzel *(Pro Hac Vice)*
Texas Bar No. 24115637
mwetzel@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:  512.982.7250
Facsimile:  512.982.7248

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

**PAGE**

I.     SUMMARY OF RESPONSE ...............................................................................1

II.     SUMMARY OF UNDISPUTED FACTS .........................................................1

     A.     MinuteClinic Introduced Its Patient Care Transformation in 2021. .....................1

     B.     MinuteClinic Determined It Could Not Continue to Exempt NPs From Prescribing and Administering Contraceptives. ....................................................2

     C.     No Other Accommodation Was Available............................................................3

III.     RESPONSE TO PLAINTIFF'S ARGUMENT AND AUTHORITIES...........................4

     A.     Plaintiff Fails to Present Evidence That CVS Health Corporation Was Her Employer. ............................................................................................................4

     B.     MinuteClinic's Evidence Dispositively Establishes That It Could Not Accommodate Plaintiff Without Undue Hardship................................................5

         1.     Undue Hardship Is Not Limited to Economic Costs But Takes into Account Relevant Non-Economic Factors. ...............................................5

         2.     Exempting Plaintiff From Prescribing Contraceptives After the Shift in MinuteClinic's Strategic Plan Would Have Caused Undue Hardship.........................................................................................7

         3.     The Evidence Establishes That Other Accommodations Were Not Available. ................................................................................................8

         4.     Plaintiff Misconstrues the Purported "Prohibition" of Any Accommodations for Employees With Religious Objections to Prescribing Contraceptives. ..................................................................10

         5.     MinuteClinic's Decision Was Consistent With Its Established Procedure ..............................................................................................11

     C.     Plaintiff Focuses on the Wrong Factors in Analyzing Undue Hardship.............13

         1.     Past Operating Costs, Historic Patient Visits, and Past Accommodations Do Not Foreclose Undue Hardship in Light of Changed Strategic Plans. ......................................................................13

         2.     Future Accommodations Are Immaterial. ..............................................14

## TABLE OF CONTENTS
(CONTINUED)

PAGE

       3.    Plaintiff Evaluates Different Factors Than MinuteClinic to Conclude That Her Termination was "a Losing Business Proposition." ........................................................................................16

       4.    Plaintiff's Argument That the Provision of Pregnancy Prevention Services Was Not an Essential Function under the ADA Is an Irrelevant Distraction. ...............................................................................17

  D.    Plaintiff Does Not Establish Her Disparate Treatment Claim.............................17

       1.    Plaintiff Does Not Present Evidence That MinuteClinic Treated Similarly Situated Employees Outside of Her Protected Class More Favorably. ...............................................................................................17

       2.    MinuteClinic Demonstrated Its Legitimate Non-Discriminatory Reason for Plaintiff's Termination, and Plaintiff Cannot Establish Pretext. ..............................................................................................20

IV.    CONCLUSION ............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Austal USA, LLC*,
    No. 1:22-CV-00267-KD-C, 2024 WL 5191361 (S.D. Ala. Dec. 20, 2024)..........................12

*Antredu v. Massachusetts Dep't of Youth Servs.*,
    729 F. Supp. 3d 76 (D. Mass. 2024) ........................................................................................8

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006) .................................................................................................................4

*Bailey v. Metro Ambulance Servs., Inc.*,
    992 F.3d 1265 (11th Cir. 2021)..............................................................................................17

*Baroudi v. Shinseki*,
    No. 8:11-CV-2587-T35-TBM, 2013 WL 11317648 (M.D. Fla. Aug. 16, 2013) ..................19

*Baz v. Walters*,
    782 F.2d 701 (7th Cir. 1986) ...........................................................................................7, 14

*Beadle v. City of Tampa*,
    42 F.3d 633 (11th Cir. 1995) .........................................................................................5, 6, 15

*Bobnar v. Astrazeneca Pharm.*,
    No. 1:22-cv-2258, 2024 WL 4893911 (N.D. Ohio Nov. 26, 2024)........................................15

*Brooks v. U.S. Dep't of the Air Force*,
    685 F. App'x 783 (11th Cir. 2017) ........................................................................................18

*Bushra v. Main Line Health, Inc.*,
    709 F. Supp. 3d 164 (E.D. Pa. 2023)......................................................................................8

*Dean v. Acts Ret. Life Cmtys.*,
    No. CV GLR-23-1221, 2024 WL 964218 (D. Md. Mar. 6, 2024)..........................................8

*EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307 (4th Cir. 2008)....................................7

*Favero v. Huntsville Indep. Sch. Dist.*,
    939 F. Supp. 1281 (S.D. Tex. 1996), *aff'd*, 110 F.3d 793 (5th Cir. 1997) ............................15

*Groff v. DeJoy*,
    600 U.S. 447 (2023) ..........................................................................................5, 7, 12, 14

*Hall v. Sheppard Pratt Health Sys., Inc.*,
    No. 22-cv-3261-ABA, 2024 WL 4264898 (D. Md. Sept. 20, 2024) ...................................5, 8

*Hellinger v. Eckerd*,
    67 F.Supp.2d 1359 (S.D. Fla. 1999)........................................................................6

*Hilliary v. FlightSafety Int'l, Inc.*,
    No. 1:17-CV-00999-AT-WEJ, 2017 WL 11316735 (N.D. Ga. Oct. 20, 2017),
    *report and rec. adopted*, No. 1:17-CV-999-AT, 2017 WL 11316993 (Nov. 14,
    2017)........................................................................................................................4

*Howard v. MHT USA LLC*,
    No. 1:21-CV-4570-CAP/RGV, 2022 WL 2389277 (N.D. Ga. May 2, 2022)
    *report and rec. adopted*, 2022 WL 18777356 (May 18, 2022). ...........................4, 5

*Jones v. City of Seattle*,
    No. 2:22-CV-01668-RAJ, 2024 WL 3226748 (W.D. Wash. June 28, 2024).......................18

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
    732 F. Supp. 3d 943 (S.D. Ind. 2024), *appeal filed* (7th Cir. May 31, 2024)....................6, 14

*Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861 (7th Cir. 2023), *vacated on
    denial of reh'g*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023) ....................14, 15

*Knight v. Connecticut Dep't of Pub. Health*,
    275 F.3d 156 (2d Cir. 2001) ...............................................................................7, 8

*Lavelle-Hayden v. Legacy Health*,
    No. 3:22-cv-01752-IM, 2024 WL 3822712 (D. Or. Aug. 14, 2024) .....................6, 7, 8, 14

*Lewis v. City of Union City, Ga.*,
    918 F.3d 1213 (11th Cir. 2019) (*en banc*)..................................................................17, 18

*Lindsey v. Bridge Rehab, Inc.*,
    369 F. Supp. 3d 1204 (N.D. Ala. 2019) ............................................................7, 17, 20

*Lyes v. City of Rivera Beach, Fla.*, 166 F.3d 1322 (11th Cir. 1999) .............................................4

*Petersen v. Snohomish Reg'l Fire & Rescue*,
    No. C22-1674 TSZ, 2024 WL 278973 (W.D. Wash. Jan. 25, 2024)....................................11

*Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269 (11th Cir. 2008)) ..................................................20

*Sano v. PeaceHealth, Inc.*,
    No. 6:22-cv-01210-MTK, 2024 WL 4979429 (D. Or. Dec. 4, 2024)...................................15

*Schmidt v. Disney Parks, Experiences & Prods., Inc.*,
    No. 6:23-CV-257-ACC-EJK, 2024 WL 1670167 (M.D. Fla. Mar. 12, 2024),
    *appeal filed* (11th Cir. Apr. 15, 2024) ............................................................4, 17

*Speer v. UCOR LLC*,
    No. 3:22-CV-426, 2024 WL 4370773 (E.D. Tenn. Oct. 1, 2024) ................................... 19, 20

*Thompson v. Asante Health Sys.*, No. 1:23-CV-00486-CL, 2023 WL 7348812 (D.
    Or. Sept. 21, 2023), *report & recom. adopted*, No. 1:23-CV-00486-CL, 2023
    WL 7326496 (Nov. 7, 2023).............................................................................................20

*Trans World Airlines, Inc. v. Hardison*,
    432 U.S. 63 (1977) ...................................................................................................... 7, 14

*United States v. Bestfoods*, 524 U.S. 51 (1998)........................................................................4

*Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879 (11th Cir. 2016) ................................4

*Virts v. Consol. Freightways Corp. of Del.*,
    285 F.3d 508 (6th Cir. 2002) ...................................................................................................7

*Willis v. Conopco, Inc.*,
    108 F.3d 282 (11th Cir. 1997) .................................................................................................9

*Wills v. Walmart Assocs., Inc.*,
    592 F. Supp. 3d 1203 (S.D. Fla. 2022)...................................................................................18

*Young v. United Parcel Serv., Inc.*, 1575 U.S. 206 (2015) ......................................................18

**Statutes**

42 U.S.C. § 2000e(j) ............................................................................................................ 5, 11

Americans with Disabilities Act .......................................................................... 12, 16, 17, 19

Florida Civil Rights Act ..........................................................................................................4

Title VII................................................................................................................................passim

## I.      SUMMARY OF RESPONSE

Plaintiff's Motion for Partial Summary Judgment (the "Motion" or "P's MSJ") (ECF No. 73) is fundamentally flawed because Plaintiff fails to even acknowledge the primary basis for MinuteClinic's decision that it could no longer exempt Nurse Practitioners ("NPs"), including Plaintiff, from prescribing and administering hormonal contraceptives without undue hardship to the conduct of its business: the strategic shift in its business plan introduced through its Patient Care Transformation ("PCT"). MinuteClinic provides evidence detailing its thoughtful consideration of accommodating NPs, including Plaintiff, determining that continuing to exempt them from providing services that it considered essential under its new commitment to deliver, on a consistent and equitable basis, an expanded set of services, including in the area of women's health, would cause undue hardship. MinuteClinic further considered accommodating Plaintiff in other ways, such as transfer to other vacant positions, but none were available. Plaintiff cobbles together an assortment of arguments, mostly based on incomplete or speculative facts, which miss the mark due to Plaintiff's insistence in viewing the analysis through her own inflammatory lens. In the end, stripped of the exaggeration of evidence and overstatement, Plaintiff fails to establish, as she must to prevail on her Motion, that MinuteClinic can present no evidence that it would incur an undue hardship had it accommodated Plaintiff's religious beliefs.

Plaintiff also fails to present evidence establishing her disparate treatment claim.  First, she cannot establish her prima facie case of discrimination because she presents no evidence that a similarly situated individual outside of her protected class received more favorable treatment. Moreover, once Defendants establishes the legitimate, non-discriminatory reason for her termination, she fails to meet her burden of showing that reason is pretext for religious discrimination. And despite seeking summary judgment as to "Liability," Plaintiff does not address her Title VII disparate impact claims. Plaintiff's Motion should be denied, in its entirety.

## II.     SUMMARY OF UNDISPUTED FACTS

### A.     MinuteClinic Introduced Its Patient Care Transformation in 2021.

In 2021, MinuteClinic introduced its PCT, committing to deliver an expanded set of primary care enabled services, including in the area of women's health. Defendants' Response to Plaintiff's Statement of Material Facts ("R to SOF") at ¶¶ 143-145; *see* Defendants' Statement of Material Facts In Support of Their Motion for Summary Judgment (ECF No. 70) ("Ds' SOF") at ¶¶ 3-8. As "the future of MinuteClinic," PCT repositioned MinuteClinic to fill an identified gap

in the competitive health care industry and to provide increased access to primary care, including in underserved communities. R to SOF at ¶¶ 143-147; Ds' SOF at ¶¶ 5-9. To ensure that all patients had access to care, including women's health services, and a consistent experience at all MinuteClinic locations, MinuteClinic made the decision to require all NPs to provide contraceptive care, including prescribing hormonal contraceptives and administering contraceptive injections ("Pregnancy Prevention Services"). R to SOF at ¶¶ 149-150; Ds' SOF at ¶¶ 10-12. In August 2021, MinuteClinic updated the essential job functions of its NPs to include the provision of these Pregnancy Prevention Services, reflecting the importance that it placed on those services. R to SOF at ¶¶ 149-150; Ds' SOF at ¶¶ at 11-12, 15. It announced the update at a Town Hall meeting and sent an email the following day. R to SOF at ¶¶ 51, 151; Ds' SOF at ¶¶ 13-14. Even though she understood as of August 2021 that MinuteClinic updated NPs' required functions to include contraceptive care, Plaintiff did not reach out to her supervisor, Hendricksen, about her religious objection until February 2022. R to SOF at ¶¶ 63-64, 164-165.

## B.   MinuteClinic Determined It Could Not Continue to Exempt NPs From Prescribing and Administering Contraceptives.

MinuteClinic was aware that several NPs with religious objections had accommodations exempting them from providing contraceptive services to patients. It therefore considered whether it could continue to exempt NPs in light of the direction of MinuteClinic and PCT. R to SOF at ¶¶ 24-25, 153; Ds' SOF at ¶¶ 16-17. MinuteClinic determined that exempting NPs would compromise its PCT mission, eliminating its ability to provide promised care consistently and uniformly, to every patient at every location. R to SOF at ¶¶ 158-163; Ds' SOF at ¶¶ 10-11, 19-25. Further, such exemptions risked reputational damage, compromising the care of patients who were turned away, and causing business losses. R to SOF at ¶¶ 159-160; Ds' SOF at ¶¶ at 18-20, 24-25.

Contrary to Plaintiff's assertion, her prior accommodation did not, in fact, work well, as MinuteClinic received both public and internal customer complaints and lost customers. R to SOF at ¶¶ 155-157; Ds' SOF at ¶ 18-19, 56-62. Plaintiff's refusal to prescribe and administer contraceptives had already prompted complaints from patients who were denied care and referred to other clinics. R to SOF at ¶¶ 154-157; Ds' SOF at ¶¶ 57-62. In March 2018, a patient wrote a negative review on Yelp, identifying Plaintiff by name as having refused a contraceptive prescription, and stating she would "not be using MinuteClinic's services anymore." R to SOF at ¶ 155; Ds' SOF at ¶ 58. In October 2020, a patient who requested oral contraceptive medication

complained when Plaintiff refused care. Plaintiff offered to schedule the patient at another MinuteClinic and, when the patient declined due to its distance, suggested a non-MinuteClinic provider and direct competitor. R to SOF at ¶ 156; Ds' SOF at ¶¶ 60-61. Plaintiff does not know whether these patients received the requested care, sought treatment at another MinuteClinic location, or ever returned to MinuteClinic again. R to SOF at ¶¶ 155-156; Ds' SOF at ¶¶ 59, 62.

The failure to fulfill MinuteClinic's commitment to consistently provide its offered services, risking a loss of customers, negative publicity, and loss of reputation, whether considered independently or together, impose undue hardship on MinuteClinic. R to SOF at ¶¶ 153-160; Ds' SOF at ¶¶ 18-21, 23-26, 57-62.

**C.     No Other Accommodation Was Available.**

Upon determining it could no longer exempt NPs from providing Pregnancy Prevention Services without undue hardship, MinuteClinic considered whether it could otherwise accommodate NPs. R to SOF at ¶¶ 94, 127, 153. Contrary to Plaintiff's allegations, MinuteClinic did not forbid all accommodations other than exemption. R to SOF at ¶¶ 56, 58, 94, 127; Ds' SOF at ¶ 63. MinuteClinic considered reassignment to "Superdelegate" positions, which were temporary positions that had duties limited to COVID testing oversight and were not required to provide Pregnancy Prevention Services. R to SOF at ¶ 100. As of August 2021, there were four Superdelegate positions in Florida, however, none of these positions were vacant. *Id*. at ¶ 60; Ds' SOF at ¶¶ 67-68. At no point from then until the present were there any vacant Superdelegate positions in Florida to which Plaintiff could have been assigned. R to SOF at ¶ 60; Ds' SOF at ¶ 68. MinuteClinic also could not transfer Plaintiff to a virtual provider position, which requires the provision of Pregnancy Prevention Services. *Id.* at ¶ 58, 127-29; Ds' SOF at ¶ 65.

When Hendricksen contacted Grasso regarding Plaintiff's religious objection, Grasso looked into the availability of other accommodations for Plaintiff, including transfer to other positions, but no such positions were available. R to SOF at ¶ 127; Ds' SOF at ¶¶ 47, 63. Therefore, Plaintiff was given the month of March 2022 to consider her willingness to provide Pregnancy Prevention Services. On March 31, 2022, she replied that, with respect to the requirement of providing "[p]regnancy prevention, education and treatment: I will continue to provide holistic pregnancy prevention care based on a natural family planning method." R to SOF at ¶ 73. As a result of her refusal to provide contraceptive services, Plaintiff's employment was terminated. *Id.* at ¶ 93.

### III.   RESPONSE TO PLAINTIFF'S ARGUMENT AND AUTHORITIES

**A.** **Plaintiff Fails to Present Evidence That CVS Health Corporation Was Her Employer.**

CVS Health Corporation ("CVS Health") is not an employer within the meaning of Title VII or the Florida Civil Rights Act ("FCRA"), therefore Plaintiff's Motion must be denied with respect to CVS Health. Plaintiff bears the burden of establishing that CVS Health was her employer. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). Plaintiff presents no evidence that CVS Health had the requisite employees to be covered by Title VII or the FCRA. *See* Ds' SOF at ¶ 27. Instead, Plaintiff claims—without citing a single piece of evidence—that CVS Health "is 'equally subject to liability' as a parent company of MinuteClinic and part of an 'integrated' CVS Enterprise." P's MSJ at 6 (citing *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 889 (11th Cir. 2016)). Plaintiff's unsupported allegations fail.

First, CVS Health's status as MinuteClinic's ultimate parent is insufficient to establish employer status. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries.'" *Hilliary v. FlightSafety Int'l, Inc.*, No. 1:17-CV-00999-AT-WEJ, 2017 WL 11316735, at *5 (N.D. Ga. Oct. 20, 2017) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotations omitted)), *report and rec. adopted*, No. 1:17-CV-999-AT, 2017 WL 11316993 (Nov. 14, 2017).

Second, Plaintiff presents no evidence establishing that CVS Health and MinuteClinic are part of an undefined "CVS Enterprise" sufficient to impose employer status on CVS Health, nor does she present any evidence establishing an integrated relationship between CVS Health and MinuteClinic. To establish an integrated relationship, the court considers: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Schmidt v. Disney Parks, Experiences & Prods., Inc.*, No. 6:23-CV-257-ACC-EJK, 2024 WL 1670167, at *5 (M.D. Fla. Mar. 12, 2024), *appeal filed*, (11th Cir. Apr. 15, 2024) (quoting *Lyes v. City of Rivera Beach, Fla.*, 166 F.3d 1322, 1342 (11th Cir. 1999)). Plaintiff's Motion is bereft of any evidence relating to these factors.

Plaintiff's Motion should be denied in its entirety with respect to CVS Health. *See Howard v. MHT USA LLC*, No. 1:21-CV-4570-CAP/RGV, 2022 WL 2389277, at *8 (N.D. Ga. May 2, 2022) ("[T]here are no factual allegations that allow the Court to draw a reasonable inference that [the parent] and [the subsidiary] were highly integrated with respect to ownership

and operations[.]") (internal quotation marks and citations omitted), *report and rec. adopted*, 2022 WL 18777356 (May 18, 2022).

**B.**     **MinuteClinic's Evidence Dispositively Establishes That It Could Not Accommodate Plaintiff Without Undue Hardship.**

In arguing that Defendants failed to present proof of undue hardship, Plaintiff fundamentally misunderstands MinuteClinic's decision that it was unable to accommodate her without undue hardship. Plaintiff disregards the significant shift in MinuteClinic's strategic direction introduced by PCT, considered to be "the future of MinuteClinic," including its commitment to providing women's health care and the competitive-based priority it placed on providing consistent, efficient and quality patient care, to every patient at every clinic. *See* R to SOF at ¶¶ 143-149. Contending that MinuteClinic could have accommodated her in a variety of other ways, Plaintiff misstates evidence establishing the absence of vacant positions to which she could be reassigned and the operational inabilities to implement her other proposals. MinuteClinic thoughtfully considered whether it could exempt NPs from prescribing and administering contraceptives, such as by reassignment, and determined that it could not do so without undue hardship. Plaintiff presents no material evidence undermining MinuteClinic's reasonable decision. Plaintiff's Motion should be denied.

**1.**     **Undue Hardship Is Not Limited to Economic Costs But Takes into Account Relevant Non-Economic Factors.**

MinuteClinic was required to reasonably accommodate Plaintiff only if it could do so "without undue hardship on the conduct of [its] business." 42 U.S.C. § 2000e(j). Undue hardship is shown "when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Applying the undue hardship test in a "common-sense manner," courts should "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue, and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470–71 (quotation marks and alterations omitted).

While "an employer must show that the burden of granting an accommodation would result in substantial increased costs," *id.* at 470, "[t]hose costs need not be economic." *Hall v. Sheppard Pratt Health Sys., Inc.*, No. 22-cv-3261-ABA, 2024 WL 4264898, at *8 (D. Md. Sept. 20, 2024) (citations omitted) (explaining that an employer may experience undue hardship due to "increased health and safety risks," "damage to employee morale, compromise of a collective bargaining agreement or seniority system, or unequal treatment of other employees"); *see Beadle*

*v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) (recognizing an employer can incur an undue hardship not only due to "monetary concerns, but also the employer's burden in conducting its business"); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 732 F. Supp. 3d 943, 962 (S.D. Ind. 2024) ("*Kluge (Remand)*"), *appeal filed*, (7th Cir. May 31, 2024) ("Although the Supreme Court removed some costs from consideration, it left others untouched, including non-economic costs.").

Plaintiff cites *Hellinger v. Eckerd*, 67 F.Supp.2d 1359 (S.D. Fla. 1999), to claim that this Court previously found a similar accommodation did not cause undue hardship. *Hellinger* is distinguishable. In that case, Eckerd declined to hire a pharmacy applicant who refused to sell condoms at a pharmacy counter where customers might attempt to purchase non-pharmacy items. *Id.* at 1361. The Court found a fact question as to whether Eckerd could have accommodated the applicant without undue hardship by requiring customers to make their condom purchases at another open register or scheduling him to work when another employee was also working at the pharmacy counter. *Id.* at 1366. Here, in contrast, Plaintiff was the only NP working on her shifts, and no clinics in the region double staffed NPs on a full-time basis. R to P's SOF at ¶¶ 81-82; Ds' SOF at ¶¶ 69-71. Further, Eckerd had no strategic business objective that was impacted by the proposed accommodation, in contrast to MinuteClinic's expansion of primary care enabled services and commitment to provide Pregnancy Prevention Services to every patient. While Eckerd speculated about potential lost customers, community goodwill, and revenue, MinuteClinic has examples of patient complaints about the denial of service that specifically identified Plaintiff, as well as a legitimate business concern about refusing needed care to patients and reputational damage that might undermine its mission to expand its services to fill a market gap. *Hellinger* involved both a different accommodation and different factors relevant to the undue hardship analyses.

Plaintiff also cites *Hellinger* for the proposition that an employer cannot rely on a "hypothetical hardship" to deny a requested accommodation. Here, MinuteClinic's implementation of PCT, embrace of women's health services, and commitment to patient care were not conjecture. Moreover, MinuteClinic previously exempted NPs from prescribing and administering contraceptives, resulting in the denial of service and patient complaints. The law does not require an employer to "'wait until it feels the effects' of the proposed accommodation before determining its reasonableness." *Lavelle-Hayden v. Legacy Health,* No. 3:22-cv-01752-

IM, 2024 WL 3822712, at *16 (D. Or. Aug. 14, 2024) (quoting *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 317 (4th Cir. 2008)); *see Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 519 (6th Cir. 2002) ("[A]n employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable.").

### 2. Exempting Plaintiff From Prescribing Contraceptives After the Shift in MinuteClinic's Strategic Plan Would Have Caused Undue Hardship.

Plaintiff contends that MinuteClinic could have allowed her to refer patients to other MinuteClinic locations or to another provider at the Tequesta clinic who worked alternate shifts. She opines that this arrangement "worked quite well" for years. Ds' SOF at ¶ 41. The result of her proposal, however, would be to compromise MinuteClinic's PCT mission, eliminating its ability to provide Pregnancy Prevention Services consistently and uniformly, as promised, to every patient at every location. R to SOF at ¶¶ 162-163; Ds' SOF at ¶¶ 10-11, 19-25. This proposed accommodation further risked reputational damage and public backlash, compromising the care of patients whom Plaintiff turned away, and causing business losses. R to SOF at ¶¶ 154-160; Ds' SOF at ¶¶ 18-20, 24-25.

### a. Exempting Plaintiff From Providing Pregnancy Prevention Services Would Have Adversely Affected an Essential Mission.

The Supreme Court has recognized that an employer is not required to grant an accommodation that would "adversely affect[] its 'essential' mission." *Groff*, 600 U.S. at 462 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 68, 80 (1977)). In *Hardison*, the Court held that the employer would have suffered an undue hardship had it allowed the plaintiff to take days off, because doing so would have either violated others' seniority rights or adversely affected its essential mission by leaving the employer short-handed. 432 U.S. at 68, 80. Emphasizing an employer's right to establish its own business objectives, courts since have found that "Title VII does not require an employer to retain an employee who harms the employer's mission." *Baz v. Walters*, 782 F.2d 701, 706-07 (7th Cir. 1986) ("The defendants are not required to show that their philosophy of total patient care is objectively better than that espoused by [the plaintiff]; they need only show that it would be a hardship to accommodate his theology in view of their established theory and practice."); *Lindsey v. Bridge Rehab, Inc.*, 369 F. Supp. 3d 1204, 1214 (N.D. Ala. 2019) ("[Defendant] would jeopardize its mission . . . if it permitted [the plaintiff] to forcefully express her religion and disrespect the clients."); *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 168 (2d Cir. 2001) ("Permitting appellants to

evangelize while providing services to clients would jeopardize the state's ability to provide [medical] services in a religion-neutral matter."); *Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 175-76 (E.D. Pa. 2023) ("The ability of [the employer] to continue its mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated [employee] in its midst. In sum, there can be no doubt that [the employer] would have incurred undue hardship in the form of substantial social, if not economic, costs if it had been required to accommodate [an employee's] religious beliefs."); *Lavelle-Hayden*, 2024 WL 3822712, at *14 ("accommodating Plaintiffs . . . would have undermined Defendant's legitimate mission, creating a substantial increased cost and, hence, an undue hardship").

Here, MinuteClinic determined that consistently providing Pregnancy Prevention Services at all locations, at all times (including on a walk-in basis), was essential to its overall mission of becoming a primary care enabled destination and expanding women's health care, particularly to underserved communities. Accommodating Plaintiff by permitting her to refuse to provide contraceptives to patients would adversely affect its essential mission. *See supra* II.A-B.

### b.    Reputational Damage Could Result from Refusing Services.

"Reputational effects on an employer can also impose an undue hardship." *Antredu v. Massachusetts Dep't of Youth Servs.*, 729 F. Supp. 3d 76, 84 (D. Mass. 2024); *see Hall*, 2024 WL 4264898, at *10 ("the appearance that [defendant] was not prioritizing the safety of its patients and staff could have eroded public trust, an essential for any healthcare facility"); *Dean v. Acts Ret. Life Cmtys.*, No. CV GLR-23-1221, 2024 WL 964218, at *6 n.5 (D. Md. Mar. 6, 2024) (noting defendant's "reasonable, albeit fact-based, arguments for undue hardship" - that it would suffer negative reputation and economic effects if it allowed front-line employees at a senior living facility to remain unvaccinated – could be asserted at the summary judgment stage). Plaintiff's refusal to provide contraceptive care had already prompted complaints from patients who were denied care and referred to other clinics when they requested contraceptives from Plaintiff. R to SOF at ¶¶ 154-157. In addition to upsetting patients, these types of complaints damage MinuteClinic's reputation and ability to stay competitive in a highly competitive industry, which contributes to the undue hardship. R to SOF at ¶ 160; Ds' SOF at ¶ 19.

### 3.    The Evidence Establishes That Other Accommodations Were Not Available.

Plaintiff suggests an array of possible accommodations, but each was either unavailable or operationally unviable. Plaintiff claims that she could have been transferred to a Superdelegate

position. However, there were no vacant Superdelegate positions in Florida after August 2021. R to SOF at ¶ 60. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997) ("Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified.").

Plaintiff also suggests that she could have been reassigned to a location that was staffed with two providers per shift (double staffed), or to a float position that worked as a second NP at different clinics on days they were double staffed. But none of the clinics in her region were double staffed with NPs on a full-time basis, and Plaintiff presents no evidence otherwise. R to SOF at ¶¶ 81-82; Ds' SOF at ¶¶ 69-70. Clinics also often double staffed with an NP and an ancillary nurse, who was not licensed to prescribe contraceptives. R to SOF at ¶ 82.

Plaintiff also argues she could have been accommodated through a virtual provider position, suggesting an immediate "soft handoff" to a virtual provider could be arranged when a patient requested contraceptive care. But Plaintiff fails to acknowledge that virtual appointments must be scheduled in advance, and virtual providers see patients who scheduled such appointments in advance. *Id.* at ¶ 88. While it may be possible to queue for an open timeslot, an immediate referral could not be guaranteed without interfering with previously scheduled patient visits. *Id.*

Plaintiff also suggests she could have called patients seeking contraceptives in advance and rescheduled their appointments. However, this was not a reliable solution. While patients select a primary reason for their visit when making an appointment at MinuteClinic, this does not always accurately reflect the services that the patient is hoping to receive or the full spectrum of services they are hoping to receive within the visit. R to SOF at ¶¶ 26, 126. Further, if a patient selected "women's health" as the reason for the visit, this could include a number of different services. *Id*. Similarly, because patients schedule their appointments on-line, in-person intake to clarify the nature of their services did not occur. *Id.* at ¶¶ 26, 126, 131.

Plaintiff also suggests that she could have called her supervisor, Hendricksen, to treat patients with requests for contraceptives. Hendricksen either worked from her home, which was 40 minutes from the Tequesta clinic, or traveled up to two hours between the clinics in her region. *Id.* at ¶¶ 80, 132. Plaintiff's suggestion that appointments could be covered by Hendrickson without undue hardship is absurd. Finally, Plaintiff claims that she could have been transferred to a non-MinuteClinic position within the "CVS Enterprise." P's SOF ¶ 83. However,

the only available NP positions with Defendants between February 1, 2022 and April 30, 2023 were with MinuteClinic. *Id.* at ¶ 130. Thus, no other accommodations were available.

### 4. Plaintiff Misconstrues the Purported "Prohibition" of Any Accommodations for Employees With Religious Objections to Prescribing Contraceptives.

Plaintiff incorrectly alleges that MinuteClinic "prohibited consideration of accommodation for employees with religious objections to prescribing or administering hormonal contraceptives." P's MSJ at 11. In support of her erroneous allegation, Plaintiff relies on the Talking Points that were provided to field leadership as a follow up to the August 2021 Town Hall. *See* P's SOF at ¶¶ 55-56. Prior to the Town Hall, MinuteClinic considered whether it could continue to exempt NPs from providing Pregnancy Prevention Services and determined it could not do so without undue hardship. R to SOF at ¶¶ 153-163. Additionally, it considered whether there were alternative positions available to which NPs with existing accommodations could be transferred. *Id.* at ¶ 94. Virtual providers were also required to provide Pregnancy Prevention Services; no Superdelegate positions were vacant. *Id.* at ¶¶ 58, 60, 128. The Talking Points reflected these two determinations. *Id.* at ¶¶ 56, 58.

First, they stated "we will no longer honor or grant Reasonable Accommodations *asking for exemptions* for either of these essential functions." *Id.* at ¶ 56 (emphasis added). Providing a suggested answer to the anticipated question about transfer, the Talking Points then specifically addressed the Virtual provider role, explaining that it required the provision of Pregnancy Prevention Services, MinuteClinic was "no longer able to honor or grant Reasonable Accommodations around these essential functions" – *i.e.*, exemptions were no longer available, so transfer to a Virtual provision role was not an available accommodation. *Id.* at ¶ 58. The Talking Points do not specifically address a Superdelegate position – but there were no vacant positions in Florida at that time. *Id.* at ¶¶ 58, 60. While Plaintiff claims that MinuteClinic continued to allow transfers to "Area 6" positions for medical disability, the evidence she cites does not support that claim. *Id.* at ¶ 59. No Superdelegate positions were vacant in Florida as of, and after, August 2021. *Id.* at ¶ 60.

When Plaintiff, who had no formal accommodation in place, finally reached out to her supervisor in February 2022 about continuing to refer patients seeking contraceptives, her supervisor elevated the inquiry to her Area Director, Kouts. *Id.* at ¶¶ 63-65. At that time, Kouts reiterated the decision announced in the Town Hall and Talking Points. *Id.* at ¶ 67. However, the evidence demonstrates that, at that time, Grasso considered the availability of other

accommodations for Plaintiff, such as whether any NP positions that did not require providing Pregnancy Prevention Services were vacant. *Id.* at ¶ 60. Far from "prohibiting" accommodations for religious objections, MinuteClinic determined that exemption would cause undue hardship, then considered the availability of other accommodations, finding none were available.

### 5.    MinuteClinic's Decision Was Consistent With Its Established Procedure

Plaintiff claims that MinuteClinic's purported failure to follow its standard reasonable accommodation procedure and its alleged inconsistent statements are proof of pretext. However, pretext is not part of a failure to accommodate claim. *See Petersen v. Snohomish Reg'l Fire & Rescue*, No. C22-1674 TSZ, 2024 WL 278973, at *6 (W.D. Wash. Jan. 25, 2024) ("The 'undue hardship' defense is a complete defense to . . . Title VII failure-to-accommodate claims.") (citing 42 U.S.C. § 2000e(j)). Regardless, neither allegation is factually supported. As Plaintiff fails to understand, the decision that MinuteClinic could no longer exempt NPs from providing Pregnancy Prevention Services arose under atypical circumstances. In anticipation of the implementation of PCT, MinuteClinic identified existing accommodations that would be impacted and considered whether they could continue. Patterson made the determination that exempting NPs from providing Pregnancy Prevention Services would impose an undue hardship on the conduct of MinuteClinic's business. Patterson was the business leader best positioned to understand the relevant factors surrounding exemption as an accommodation.

Plaintiff relies on her supervisor's testimony that she could continue to accommodate Plaintiff "[i]f nothing had changed." R to SOF at ¶ 36. However, the circumstances did change. MinuteClinic implemented PCT and shifted its strategic direction toward primary care enablement and commitment to women's health. Hendricksen was not asked about, and likely did not have visibility to, the strategic factors that went into MinuteClinic's decision that exempting NPs from providing Pregnancy Prevention Services imposed an undue hardship on the conduct of its business, nor was she better positioned than MinuteClinic leadership to make that decision. Accordingly, just as the routine accommodation procedure leaves the decision to the business leadership, here, Plaintiff's ultimate supervisor (Patterson) made the decision that exemption as an accommodation was no longer available.

Further Advice and Counsel sometimes seeks the input of a Human Resources Business Partner ("HRBP") in evaluating options for a requested accommodation. R to SOF at ¶ 125. Here, HRBP Grasso had better visibility as to alternative accommodations, including other NP

positions, and was better positioned to evaluate those options. Thus, while typically Advice and Counsel would shepherd an accommodation request, with input of the HRBP as needed, the same ultimate process occurred here. The business leadership made the determination that exemption was not possible, and HRBP Grasso considered the availability of other accommodations, finding none. Contrary to showing that MinuteClinic's explanation of its decision was pretext for discrimination, the involvement of higher-level employees and consideration of multiple options demonstrates that MinuteClinic made a substantial effort to accommodate NPs with religious objections but was simply unable to do so.

Finally, while the accommodation process typically involves a dialogue with the employee, during which the employee's suggestions as to alternative accommodations are solicited, here MinuteClinic (having been through this procedure when it initially announced the updated job functions), considered available positions to which Plaintiff might be reassigned.

Regardless, an employer's failure to engage in an interactive process – a creature of the Americans with Disabilities Act ("ADA") that Title VII does not require – does not result in liability where no reasonable accommodation was available. One court recently observed that *Groff* does not use the phrase "interactive process," and plaintiffs failed to cite any Eleventh Circuit authority requiring an interactive process. *See Abbott v. Austal USA, LLC*, No. 1:22-CV-00267-KD-C, 2024 WL 5191361, at *4 (S.D. Ala. Dec. 20, 2024) (concluding "the fact that Austal did not communicate with Plaintiffs before it denied their religious accommodation requests does not preclude Austal from proving it faced an undue hardship").

Plaintiff also claims that MinuteClinic's "story constantly changes," from a uniform decision denying all accommodations relating to contraceptives to a case-by-case evaluation. P's MSJ at 14. Once again, Plaintiff misunderstands the decision. MinuteClinic determined that exemption from providing Pregnancy Prevention Services would cause an undue hardship. The Talking Points reflect this decision, stating that "we will no longer honor or grant Reasonable Accommodations _asking for exemptions_ for either of these essential functions." R to SOF at ¶ 56; *see id.* at 153. Then, MinuteClinic considered whether other accommodations were available. *Id.* at ¶ 94. Grasso testified that she considered other options specifically with respect to Plaintiff. *Id.* at ¶ 127. MinuteClinic evaluated accommodations on a case-by-case basis.

C.      **Plaintiff Focuses on the Wrong Factors in Analyzing Undue Hardship.**

        In arguing that MinuteClinic cannot demonstrate undue hardship, Plaintiff first attempts to negate the existence of substantial economic costs associated with accommodating Plaintiff. Next Plaintiff points to similar past or future accommodations, failing to consider that they were granted under different conditions. Plaintiff misunderstands the relevant factors resulting in undue hardship to the conduct of MinuteClinic's business.

        1.      **Past Operating Costs, Historic Patient Visits, and Past Accommodations Do Not Foreclose Undue Hardship in Light of Changed Strategic Plans.**

        Claiming that MinuteClinic would have incurred no undue hardship by accommodating her, Plaintiff focuses on past operating costs and patient visits, wholly ignoring MinuteClinic's updated mission, reflected in PCT. At no point in her SOF or MSJ does Plaintiff even acknowledge PCT – demonstrating her misunderstanding of the legitimate business interests, such as the commitment to the consistent provision of women's health care to every patient in every clinic, on which MinuteClinic's undue hardship conclusion was based. Instead, Plaintiff claims that an accommodation could not have caused "unjustifiable" costs, given the amount of MinuteClinic's annual operating costs (as well as the expenses of its ultimate parent, which are not relevant to the hardship imposed on MinuteClinic). *See* Motion at 8. However, an employer is not limited to showing undue hardship through substantial economic costs, and here, the financial cost of individually accommodating Plaintiff was not the primary basis for its decision. *See supra* at III.B.1-3. Moreover, Plaintiff cites no authority as to the threshold over which a company is too large to refuse any accommodation – the conclusory premise upon which her argument is based.

        To the extent Plaintiff claims that her refusal to treat patients only impacted a minimum number of patients, she misses the point. MinuteClinic's mission was to expand women's health services, to grow the number of patients served and visits received, and to consistently provide those services to every patient at every location. If the Tequesta clinic turned away women seeking contraceptive care, MinuteClinic's objective would be thwarted. Negative public reviews for refusing such care and the attendant damage to its reputation as a provider of Pregnancy Prevention Services, despite its active marketing as committed to providing it, could impact its business mission. And, denying care to even one patient is significant because to MinuteClinic, every patient matters. *See supra* at II.A-B; III.B.2.

A company is not confined to a prior business strategy but can set its own mission. Likewise, past accommodations do not cabin a company's analysis where business considerations have evolved. MinuteClinic's determination of its own mission and legitimate business interests trumps Plaintiff's contrary view. *See Kluge (Remand)*, 732 F. Supp. 3d at 970-71 ("The Court understands that [the parties] have different visions for the [employer's] mission . . . . But between [the parties'] visions for its mission, the law leaves that decision to the [employer].") (*citing Baz*, 782 F.2d at 707 (affirming denial of religious accommodation where employee's "philosophy of care" was "antithetical" to that of the employer)). "As the Supreme Court held in *Groff*, undue hardship is to be viewed within the context of a particular business, not a particular employee. The Court compares the cost to [employer's] mission, not [employee's]." *Kluge (Remand)*, 732 F. Supp. 3d at 971; *see id.* at 964 (explaining that *Groff* "left untouched" existing Seventh Circuit authority "squarely holding that an employer can define its own legitimate mission, and that contradictions to its legitimate mission are relevant to analyzing undue hardship").

Past operating costs, past patient counts, and past accommodations do not foreclose a finding that MinuteClinic would have suffered an undue hardship going forward had it accommodated Plaintiff and others with similar religious objections. *See Hardison*, 432 U.S. at 84 n.15 (holding that employers may consider the aggregate effect of granting an accommodation where other employees may be similarly situated).

## 2. Future Accommodations Are Immaterial.

Plaintiff argues that MinuteClinic's decision to grant accommodations to three employees several months, or years, after Plaintiff's termination shows an absence of undue hardship. However, future accommodations have no impact on whether earlier accommodations would have caused undue hardship. "[I]t is appropriate to confine the analysis to the information available to the employer when it made its undue hardship decision." *Lavelle-Hayden v. Legacy Health*, 3:22-cv-01752-IM, 2024 WL 3822712, at *10 (D. Or. Aug. 14, 2024).

> This approach also comports with common sense. To judge an employer's undue hardship decision based on knowledge and information developed after the fact would hold that employer to an impossible standard. Courts would be tasked with judging an employer's decision with the benefit of hindsight, irrespective of factors like the consensus of reputable organizations, the evolving nature of a situation, and the type and quality of information available at the time. Title VII does not require employers to predict the future.

*Id.* (citing *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 888 (7th Cir. 2023), *vacated on denial of reh'g*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023) ("To suggest that the employer may be held liable for a decision to withdraw an accommodation based on information that did not exist at the time of the decision holds employers to an impossible 'crystal ball' standard.")); *see Sano v. PeaceHealth, Inc.*, No. 6:22-cv-01210-MTK, 2024 WL 4979429, at *6 (D. Or. Dec. 4, 2024) (considering, as part of undue hardship analysis, "the information available at the time the defendant made its accommodation decision"); *Bobnar v. Astrazeneca Pharm.*, No. 1:22-cv-2258, 2024 WL 4893911, at *23 n.38 (N.D. Ohio Nov. 26, 2024) ("[T]he Court recognizes that it should consider, for the purposes of the undue hardship evaluation, only the information and evidence available to [employer] at the time of [employee's] discharge."). As one court explained: "Plaintiffs' emphasis on reviewing the situation in hindsight would allow employers to deny requests only when they were certain in advance that the requested [accommodation] would cause an undue hardship. This is not what Title VII requires." *Favero v. Huntsville Indep. Sch. Dist.*, 939 F. Supp. 1281, 1293 (S.D. Tex. 1996), *aff'd*, 110 F.3d 793 (5th Cir. 1997) (citing *Beadle*, 42 F.3d 633). MinuteClinic submitted evidence substantiating its decision, based on the information it had at the time, that it was unable to accommodate Plaintiff. Decisions made in the future, based on information then available, are irrelevant to that decision.

Moreover, the future accommodations of the three other employees involved different circumstances. Florida NP E.M. was transferred to a Superdelegate position in October or November 2020, which did not require prescribing or administering contraceptives. R to SOF at ¶¶ 107, 110. In August 2022, MinuteClinic approved a religious accommodation for E.M. to not prescribe contraceptives while she was working in the Superdelegate role. *Id.* at ¶ 114. It was not until October 2022 – fourteen months after the Town Hall and seven months after the denial of Plaintiff's accommodation - that MinuteClinic approved a religious accommodation for E.M. to not prescribe contraceptives when she returned to a brick-and-mortar clinic. *Id.* at ¶ 115. Thereafter, on February 24, 2023, almost a year after Plaintiff's termination, MinuteClinic approved a religious accommodation for M.R., another provider in Florida, not to prescribe or administer contraceptives. *Id.* at ¶ 116. In May 2024, over two years after Plaintiff's termination, MinuteClinic approved a religious accommodation for J.A., a provider in Nebraska, not to prescribe or administer contraceptives. *Id.* at ¶ 121.

Each of these three accommodations were evaluated on a case-by-case basis and involved different circumstances than Plaintiff's in early 2022.[1] Notably, none of these employees were managed by the same supervisor as Plaintiff or worked in the same clinic (or even the same region) as Plaintiff, and their accommodations were evaluated by different decisionmakers well after the initial decision not to continue exemptions. In addition, the undue hardship analysis for these subsequent accommodations was impacted by a change in the legal standard for evaluating undue hardship in religious accommodation cases and uncertainty and anticipated changes surrounding Florida conscience law. *Id.* at ¶¶ 139-140. Further, there is no evidence in the record as to the patient demand for contraceptives at J.A.'s clinic in Nebraska and, as such, there is no evidence that her accommodation imposed a similar hardship as Plaintiff's proposed accommodation *See id.* at ¶ 121.

### 3. Plaintiff Evaluates Different Factors Than MinuteClinic to Conclude That Her Termination was "a Losing Business Proposition."

Plaintiff dedicates multiple pages to claiming that "[f]iring Kristofersdottir was actually a losing business proposition for Defendants." Motion at 9-10. Looking back in hindsight at the alleged impacts of Plaintiff's termination on the Tequesta clinic, Plaintiff cites speculative testimony and hearsay from former coworkers, most of whom worked at other clinics in the region (and with whom Plaintiff remained friends) to give heightened emphasis to normal, short-term operating costs attributable to routine staffing turnover. However, the opinions offered by Plaintiff's co-workers are contradicted by more knowledgeable witnesses. While Plaintiff claims MinuteClinic incurred "considerable recruiting and training costs for new hires," Motion at 9, Hendricksen testified they were able to cover her absence with floaters until an existing employee transferred, and Grasso testified it did not cost MinuteClinic anything to replace Plaintiff. R to SOF at ¶¶ 97, 101. Hendricksen does not recall the clinic having to close for days at a time, and Plaintiff's witness's speculation on this point was unreliable. *Id.* at ¶ 98. Because floaters were fully trained, no duties, such as ordering supplies, were neglected. *Id.* at ¶ 99. None of these alleged temporary costs undermine MinuteClinic's undue hardship determination.

---

[1] Plaintiff also cites MinuteClinic's offer of reinstatement made on April 28, 2023 – over a year after her termination and while her EEOC charge was pending. R to SOF at ¶ 95, 122-123. Based on then-available information, this offer does not undermine MinuteClinic's initial undue hardship determination at the center of this case.

### 4. Plaintiff's Argument That the Provision of Pregnancy Prevention Services Was Not an Essential Function under the ADA Is an Irrelevant Distraction.

While acknowledging the ADA's "essential function" analysis is not duplicated in Title VII, Plaintiff proceeds to argue that the provision of Pregnancy Prevention Services was not an essential function under ADA case law and thus cannot be used to show an undue hardship. Plaintiff misunderstands the role of the Pregnancy Prevention Services essential function in this case. Defendants do not argue that Plaintiff failed to establish her *prima facie* case because she could not perform an essential function, with or without an accommodation, akin to the ADA analysis. The importance of Pregnancy Prevention Services, and MinuteClinic's decision that NPs could not be exempted from those services without undue hardship, was expressed in its decision to update the NP job description. Grasso, as HRBP, recommended, as part of announcing PCT, that the job description be updated to add those services as an essential function. P's SOF at ¶ 49. By doing so, MinuteClinic emphasized the significance of the services.

### D. Plaintiff Does Not Establish Her Disparate Treatment Claim.

Plaintiff moves for partial summary judgment on her disparate treatment claim, in which she alleges that MinuteClinic terminated her because of her religious beliefs. However, Plaintiff can neither present evidence establishing her *prima facie* case, nor can she rebut MinuteClinic's well-supported legitimate, non-discriminatory reason for her termination. Her Motion should be denied (and for the same reasons, Defendants' counter motion should be granted).

### 1. Plaintiff Does Not Present Evidence That MinuteClinic Treated Similarly Situated Employees Outside of Her Protected Class More Favorably.

To establish a *prima facie* case of disparate treatment discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class. *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021); *Schmidt*, 721 F. Supp. 3d at 1324; *Lindsey*, 369 F. Supp. 3d at 1210. To establish the fourth prong of her prima facie case, Plaintiff must establish "that she was treated differently from other individuals with whom she was similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1231 (11th Cir. 2019) (*en banc*).

An all-material-respects standard also leaves employers the necessary breathing space to make appropriate business judgments. An employer is well within its rights to accord different treatment to employees who are differently situated in "material respects"—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories.

*Id.* at 1228 (internal citations omitted).

### a. MinuteClinic Did Not Accommodate or Retain Any Non-Religious Clinic-Based NPs Who Refused to Provide Contraceptive Care.

"A plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Lewis*, 918 F.3d at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 1575 U.S. 206, 231 (2015)). "Ordinarily, for instance, a similarly situated comparator—will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28 (internal citations omitted); *see Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203, 1245 (S.D. Fla. 2022); *Brooks v. U.S. Dep't of the Air Force*, 685 F. App'x 783, 784 (11th Cir. 2017) ("A comparator is similarly situated if the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.") (internal quotation marks omitted).

Here, Plaintiff's conduct at issue – her refusal to perform Pregnancy Prevention Services as required in accordance with the updated NP job description - resulted in the disciplinary action about which she complains – the termination of her employment. Plaintiff presents no evidence of any non-religious clinic-based NP who similarly refused to perform Pregnancy Prevention Services and was either granted the same or similar accommodation that she sought or otherwise retained in their position. *See Jones v. City of Seattle*, No. 2:22-CV-01668-RAJ, 2024 WL 3226748, at *6 (W.D. Wash. June 28, 2024) (granting summary judgment where plaintiff "fails to present evidence of a City Light employee in a customer-service facing supervisory role that declined vaccination and was allowed to telework as an accommodation").

Plaintiff claims MinuteClinic granted E.M. the same accommodation that she sought for medical reasons but denied that accommodation to her for religious reasons. Motion at 15. Plaintiff, however, misunderstands the facts. First, the evidence establishes that E.M. was reassigned to a Superdelegate position in October or November 2020, well before Pregnancy Prevention Services were added to the NP job description or Plaintiff sought a similar transfer. R

to SOF at ¶ 107. Second, like Plaintiff, E.M. also had a religious objection to prescribing or administering contraceptives and therefore was not outside of Plaintiff's protected class. Third, Plaintiff was not denied a reassignment to a Superdelegate position for religious reasons. Instead, the evidence establishes that Plaintiff was not reassigned to a Superdelegate position in early 2022 because no positions were vacant. *Id.* at ¶ 60. In the absence of an available position to which she could have been transferred, she and E.M. were not similarly situated.

Because Plaintiff failed to present evidence of an individual outside her protected class who was similarly situated to her in all relevant respects, she cannot establish a *prima facie* case of disparate treatment discrimination. Her Motion should be denied.

> **b.    Plaintiff Fails to Present Evidence of Whether Other Alleged Comparators Were Outside Her Protected Class.**

Plaintiff next implicitly urges the Court to depart from the requirement that she establish that she was treated less favorably than a similarly situated individual outside her protected class.

First, Plaintiff claims that MinuteClinic refused to accommodate her by allowing her the types of accommodations that it allowed "for secular reasons." Motion at 16. She claims that MinuteClinic allowed NPs to make internal referrals when a clinic closed early, ran out of supplies, or had a long wait time; call patients in advance to reschedule; and call Hendrickson to deliver supplies or see patients when clinics were busy. R to SOF at ¶¶ 26, 27, 80. However, Plaintiff identifies no individuals who sought and received these accommodations (whether for engaging in the same conduct as she, or otherwise) – and, *a fortiori,* fails to establish that such individuals were outside of her protected class. *See Baroudi v. Shinseki*, No. 8:11-CV-2587-T35-TBM, 2013 WL 11317648, at *5 (M.D. Fla. Aug. 16, 2013) (granting summary judgment on disparate treatment claim in part because "the record does not establish whether the other employees were within or outside her claimed protected class").

Second, Plaintiff proposes that the Court compare employees, of unspecified religions, who were provided different accommodations, for different reasons, by different decision makers, in entirely different contexts. Plaintiff lists a litany of different accommodations granted to other employees for medical reasons. *See* R to SOF ¶¶ 39-45. However, Plaintiff does not identify whether any of the individuals to whom these other accommodations were granted *were outside of Plaintiff's protected class*. *See Baroudi*, 2013 WL 11317648, at *5. Moreover, employees who were granted accommodations under the ADA are subject to a different legal standard than Plaintiff, and thus are not similarly situated. *See Speer v. UCOR LLC*, No. 3:22-

CV-426, 2024 WL 4370773, at *13 (E.D. Tenn. Oct. 1, 2024) (employees seeking vaccine accommodations for medical, versus religious, reasons were not similarly situated because "[i]t is not disparate treatment to apply different legal standards to different types of accommodation requests.") (citing *Thompson v. Asante Health Sys.*, No. 1:23-CV-00486-CL, 2023 WL 7348812, at *7 (D. Or. Sept. 21, 2023) ("With legally separate and distinct standards by which employers are evaluated for proper accommodation, then, these categories of employees are not 'similarly situated.'"), *report & recom. adopted*, No. 1:23-CV-00486-CL, 2023 WL 7326496 (Nov. 7, 2023).  Plaintiff failed to satisfy her burden of identifying individuals *outside of her protected class* who were similarly situated *in all material respects*. The Court can deny summary judgment, to the extent it relies on these alleged comparators, based on this failure alone.[2]

### 2.   MinuteClinic Demonstrated Its Legitimate Non-Discriminatory Reason for Plaintiff's Termination, and Plaintiff Cannot Establish Pretext.

MinuteClinic terminated Plaintiff's employment because she refused to provide Pregnancy Prevention Services after it determined that it could not accommodate her religious objection without incurring undue hardship to the conduct of its business. *See supra* at III.B. It has accordingly articulated a legitimate non-discriminatory reason for her termination. Once MinuteClinic carries its minimal burden, Plaintiff must raise a genuine issue that its "'proffered reason really is a pretext for unlawful discrimination'" to survive a motion for summary judgment." *Lindsey*, 369 F. Supp. 3d at 1210-11 (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008)). Plaintiff submits no evidence (and makes no attempt to establish) that MinuteClinic's stated reason for her termination is pretext for religious discrimination. For this additional reason, the Motion should be denied.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

---

[2] These other accommodations are materially different than those sought by Plaintiff. There is no evidence that the same conduct precipitated the accommodations, the same rule or procedure was implicated by each, or the same decision maker was involved. The accommodations themselves shared no similarity. For example, none resulted in the denial of service to a patient. R to SOF at ¶¶ 133-138. Break time was built into an NP's schedule so patients could not be scheduled during that time. *Id.* at ¶ 133. J.T. did not perform clinical assessments but engaged in teaching and consulting *Id.* at ¶ 137. Blood pressure and ear irrigation machines were suitable alternatives. *Id.* at ¶ 138. And lifting restrictions were both temporary and often provided to those who worked with another employee. *Id.* at ¶¶ 134-136.

Dated: January 3, 2025

Respectfully submitted,

/s/ Nancy A. Beyer

Heather A. Pierce *(Pro Hac Vice)*
RI Bar No. 7345
hpierce@littler.com
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI  02903
Telephone:  401.824.2500
Facsimile:  401.454.2969

Allison Williams *(Pro Hac Vice)*
Texas Bar No. 24075108
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Nancy A. Beyer
Florida Bar No. 0059688
nbeyer@littler.com
Nancy Johnson
Florida Bar No. 0597562
njohnson@littler.com
LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, FL  32801-2366
Telephone:  407.393.2900
Facsimile:  407.393.2929

Kimberly R. Miers *(Pro Hac Vice)*
Texas Bar No. 24041482
kmiers@littler.com
Melinda J. Wetzel *(Pro Hac Vice)*
Texas Bar No. 24115637
mwetzel@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:  512.982.7250
Facsimile:  512.982.7248

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to the following:

| | |
|---|---|
| Amber Stoner Nunnally<br>Jason Brent Gonzalez<br>Robert E. Minchin, III<br>LAWSON HUCK GONZALEZ PLLC<br>215 South Monroe Street, Suite 320<br>Tallahassee, FL 32301<br>amber@lawsonhuckgonzalez.com<br>jason@lawsonhuckgonzalez.com<br>bob@lawsonhuckgonzalez.com | David J. Hacker<br>Stephanie N. Taub<br>Ryan N. Gardner<br>Danielle A. Runyan<br>FIRST LIBERTY INSTITUTE<br>2001 West Plano Pkwy., Ste. 1600<br>Plano, TX 75075<br>dhacker@firstliberty.org<br>staub@firstliberty.org<br>rgardner@firstliberty.org<br>drunyan@firstliberty.org |
| Jonathan Berry<br>Jared M. Kelson<br>Andrew Smith<br>BOYDEN GRAY PLLC<br>801 17th Street NW, Suite 350<br>Washington, DC 20006<br>jberry@boydengray.com<br>jkelson@boydengray.com<br>asmith@boydengray.com | Tabitha M. Harrington<br>FIRST LIBERTY INSTITUTE<br>1331 Pennsylvania Ave. NW, Suite 1410<br>Washington, DC 20004<br>tharrington@firstliberty.org |
| Douglas J. Peterson<br>KEATING, O'GARA, NEDVED & PETER<br>200 South 21st Street, Suite 400<br>Lincoln, NE 68510<br>dpeterson@keatinglaw.com | |

*/s/ Nancy A. Beyer*_____