**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**GUDRUN KRISTOFERSDOTTIR**;

        *Plaintiff,*

**v.**

**CVS HEALTH CORPORATION;**
**MINUTECLINIC, LLC;**
**MINUTECLINIC DIAGNOSTIC OF**
**FLORIDA, LLC;**

        *Defendants.*

**CASE NO. 9:24-CV-80057-**
**ROSENBERG/REINHART**

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

   I.   DEFENDANTS ARE JOINTLY LIABLE AS AN INTEGRATED ENTERPRISE ...........1

   II.   CONCLUSIVE EVIDENCE ESTABLISHES KRISTOFERSDOTTIR'S FAILURE
       TO ACCOMMODATE CLAIM ........................................................................................2

     A.   DEFENDANTS COULD HAVE ACCOMMODATED KRISTOFERSDOTTIR WITHOUT HARDSHIP 2

     B.   DEFENDANTS' "ESSENTIAL" MISSION ARGUMENT IS FUNDAMENTALLY FLAWED ............ 4

     C.   ALTERNATIVE ACCOMMODATIONS WERE AVAILABLE ...................................................... 7

     D.   DEFENDANTS VIOLATED ESTABLISHED PROCEDURES AND CONTINUE OFFERING
        INCONSISTENT, SHIFTING EXPLANATIONS .......................................................................... 8

   III.   CONCLUSIVE EVIDENCE SHOWS DISPARATE TREATMENT ............................... 9

CONCLUSION............................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**                                                           **Page(s)**

*Adeyeye v. Heartland Sweeteners, LLC*,
   721 F.3d 444 (7th Cir. 2013) ...............................................................5, 7

*Ansonia Bd. of Educ. v. Philbrook*,
   479 U.S. 60 (1986)...............................................................................10

*Brown v. Gen. Motors Corp.*,
   601 F.2d 956 (8th Cir. 1979) .................................................................4

*Cassell v. Skywest, Inc.*,
   2022 WL 375855 (D. Utah Feb 8, 2022) ...............................................4

*Diaz v. Pan Am. World Airways, Inc.*,
   442 F.2d 385 (5th Cir. 1971) .................................................................3

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
   575 U.S. 768 (2015)...............................................................................9

*EEOC v. Firestone Fibers & Textiles Co.*,
   515 F.3d 307 (4th Cir. 2008) .................................................................4

*EEOC v. Ilona of Hungary, Inc.*,
   108 F.3d 1569 (7th Cir. 1997) ...............................................................6

*EEOC v. Kroger Ltd. P'ship I*,
   608 F. Supp. 3d 757 (E.D. Ark. 2022)...................................................4

*Fike v. Gold Kist, Inc.*,
   514 F. Supp. 722 (N.D. Ala. 1981) ....................................................1, 2

*FTC v. Alcoholism Cure Corp.*,
   2011 WL 13137951 (M.D. Fla. Sept. 16, 2011) ...................................3

*Groff v. DeJoy*,
   600 U.S. 447 (2023)........................................................................3, 5, 7

*Hebrew v. Tex. Dep't of Crim. Just.*,
   80 F.4th 717 (5th Cir. 2023) .................................................................7

*Hellinger v. Eckerd Corp.*,
   67 F. Supp. 2d 1359 (S.D. Fl. 1999) ..................................................3, 4

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
   439 F.3d 1286 (11th Cir. 2006) ...........................................................10

*Kim v. PGA Tour*,
   2024 WL 280297 (M.D. Fla. Jan. 25, 2024).......................................10

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
   732 F. Supp. 3d 943 (S.D. Ind. 2024)...................................................6

*Latimer v. Roaring Toyz*,
   601 F.3d 1224 (11th Cir. 2010) .............................................................7

*Lewis v. City of Union City*,
   918 F.3d 1213 (11th Cir. 2019) ........................................................................9

*Lyes v. City of Riviera Beach*,
   166 F.3d 1332 (11th Cir. 1999) ........................................................................1

*Martinolich v. Golden Leaf Mgmt., Inc.*,
   786 So. 2d 613 (Fla. Dist. Ct. App. 2001) ......................................................1

*Mathew Enter., Inc. v. Chrysler Grp. LLC*,
   2016 WL 11432038 (N.D. Cal. Sept. 21, 2016) ..............................................3

*Staple v. Sch. Bd. of Broward Cnty.*,
   2024 WL 3263357 (11th Cir. 2024) ................................................................9

*Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*,
   736 F.2d 656 (11th Cir. 1984) ........................................................................7

*Vega v. Invesco Grp., Ltd.*,
   432 F. App'x 867 (11th Cir. 2011) ..................................................................9

*Villa v. AT&T Corp.*,
   2014 WL 12537153 (S.D. Fla. Oct. 2, 2014).................................................2

*Virciglio v. Work Train Staffing LLC*,
   674 F. App'x 879 (11th Cir. 2016) ..................................................................1

*Walker v. St. Joseph's/Candler Health Sys., Inc.*,
   506 F. App'x 886 (11th Cir. 2013) ................................................................10

**STATUTES**

Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e *et seq.* ...................................1

Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ......................................1

## INTRODUCTION

In her motion for partial summary judgment, Plaintiff Gudrun Kristofersdottir presented conclusive evidence that Defendants CVS Health Corporation ("CVS Health") and MinuteClinic, LLC ("MinuteClinic") (collectively, "Defendants") are liable under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq.*, for failing to accommodate and firing her because of her religious beliefs. Defendants respond that continuing to accommodate her would have caused their business undue hardship, but they never identify evidence of substantial costs—economic or otherwise—that arose from accommodating her for six years. Defendants then insist that their Patient Care Transformation ("PCT") and shift in "essential" mission in 2021 turned Kristofersdottir's accommodation into a burden, but the evidence says otherwise. Defendants also manufacture a liability standard so meaningless it would swallow Title VII and FCRA whole, allowing employers to circumvent those laws and religious accommodations by labeling any aspect of their mission—no matter how small—essential.

In any event, Defendants failed to consider all other options and accommodated other employees in analogous circumstances, even after the asserted PCT. Defendants rest entirely on self-serving declarations that are conclusively refuted by other evidence and fail to establish any questions of material fact. This Court should grant the motion for partial summary judgment.

## ARGUMENT

## I.   DEFENDANTS ARE JOINTLY LIABLE AS AN INTEGRATED ENTERPRISE

Defendants do not dispute that MinuteClinic is subject to Title VII and FCRA, but argue CVS Health was not Kristofersdottir's employer and subject to those statutes. Defs. Resp. to Pls. MSJ ("Defs. Resp.") 4-5, ECF No. 119. CVS Health and MinuteClinic are an "integrated enterprise" and "equally subject to liability." *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 889 (11th Cir. 2016); *see Martinolich v. Golden Leaf Mgmt., Inc.*, 786 So. 2d 613, 614-15 (Fla. Dist. Ct. App. 2001). Courts weigh four factors to determine an integrated enterprise, *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 & n.5 (11th Cir. 1999), all of which confirm that conclusion here. *See also* Pls. Resp. to Defs. MSJ ("Pls. Resp.") 2-4, ECF No. 117.

First, Defendants have "interrelate[ed] of operations." *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726-27 (N.D. Ala. 1981). MinuteClinics are located inside CVS Health pharmacies. Pls. Resp. to Defs. SOF in Support of MSJ ("Resp. SOF") ¶1, ECF No. 116. CVS Health manages and

administers payroll and benefits for MinuteClinic employees. Resp. SOF ¶80. MinuteClinic officers and managers use @cvshealth.com email extensions. Resp. SOF ¶81. Defendants use the same CVS Health logos. *Id.* Defendants all share Human Resources ("HR"), an Advice and Counsel Office, and a Reasonable Accommodation Team, which report to the Chief People Officer of CVS Health and serve all CVS Health subsidiaries ("CVS Enterprise"). Resp. SOF ¶82. And Virginia Grasso, who fired Kristofersdottir rather than accommodate her, was an HR Business Partner, not a MinuteClinic employee. Pls. SF in Support of MSJ ("SF") ¶75, ECF No. 88-2.

Second, CVS Health's centralized control of labor relations "extend[ed] into the area of personnel." *Fike*, 514 F. Supp. at 727. CVS Health created accommodation policies applicable to MinuteClinic employees and administered them through the Advice and Counsel Office and Reasonable Accommodations Team in HR. Resp. SOF ¶82. It is also "significant" that a non-MinuteClinic employee, Grasso, decided to fire rather than accommodate Kristofersdottir. *Villa v. AT&T Corp.*, 2014 WL 12537153, at *3 (S.D. Fla. Oct. 2, 2014); *see* Resp. SOF ¶83.

Third, Defendants have "common directors and officers." *Fike*, 514 F. Supp. at 727. MinuteClinic President Sharon Vitti was a Senior Vice President of CVS Health, and MinuteClinic Chief Nursing Officer Angela Patterson was a Vice President of CVS Health. Resp. SOF ¶84. It was also Patterson who emphasized MinuteClinic's "need to prioritize" making contraceptive services an essential function and "remove the [accommodation] pathway for future colleagues (if that is possible!)," SF ¶48, and who announced the change on August 26, 2021, SF ¶51. The Chief People Officer with authority over HR likewise served the entire CVS Enterprise. Resp. SOF ¶82.

Fourth, CVS Health wholly owns MinuteClinic as its ultimate parent. Defs. Resp. to Pls. SF ("R. to SF") ¶1, ECF No. 120; Resp. SOF ¶78. Defendants are thus an integrated enterprise.

## II. CONCLUSIVELY EVIDENCE ESTABLISHES KRISTOFERSDOTTIR'S FAILURE TO ACCOMMODATE CLAIM

Defendants failed to accommodate Kristofersdottir, in violation of Title VII and FCRA. *See* Pls. MSJ 7-15, ECF No. 73; Pls. Resp. 4-15. Defendants do not challenge Kristofersdottir's prima facie case, only whether it would have been an undue burden to accommodate her. Defs. Resp. 5. Their focus on speculation or conjecture about undue hardship, and their asserted shift in "essential" mission, are unpersuasive. *See* Defs. Resp. 6-8, 14-15.

### A. DEFENDANTS COULD HAVE ACCOMMODATED KRISTOFERSDOTTIR WITHOUT HARDSHIP

Defendants argue that continuing to accommodate Kristofersdottir would have caused undue hardship in the form of unspecified potential revenue loss from turning away patients and

reputational harm. Defs. Resp. 5-8. But Defendants fired Kristofersdottir without doing "any analysis as to the cost" to their business of continuing accommodations, or even checking the number of contraceptive requests, whether nationwide or at the Tequesta location. Resp. SOF ¶90. Their attempt to retroactively justify those decisions with anecdotal evidence of complaints only confirms the lack of "excessive" or "unjustifiable" costs. *Groff v. DeJoy*, 600 U.S. 447, 469 (2023).

Contrary to Defendants' characterization, Kristofersdottir did not turn patients away when she referred them to other MinuteClinic providers. SF ¶¶21, 23. MinuteClinic allowed referrals for multiple reasons. R. to SF ¶10. Defendants also identify only *two* complaints about Kristofersdottir's accommodation across the six years it was in place, SF ¶33; R. to SF ¶¶155-56, neither of which played any role in the decision to fire her, SF ¶78. One of these complaints, a Yelp! review, is inadmissible hearsay if submitted for the truth of the matter asserted, namely that the reviewer had a negative experience and did not return to MinuteClinic. *See, e.g.*, *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 11432038, at *2 (N.D. Cal. Sept. 21, 2016); *FTC v. Alcoholism Cure Corp.*, 2011 WL 13137951, at *30 (M.D. Fla. Sept. 16, 2011). Defendants found only *one* other complaint across all MinuteClinic locations, SF ¶34; R. to SF ¶34, and identify no other evidence of inconvenience to patients, reputational harm, or lost business.

Kristofersdottir saw between 10 and 20 patients each day, and worked about three days per week, Resp. SOF ¶91, which totals roughly 9,000 to 18,000 patient interactions with her accommodation. The two identified complaints account for 0.01% and 0.02% of those visits. That number is not "substantial," especially "in light of" the "nature, size, and operating cost" of Defendants. *Groff*, 600 U.S. at 470-71 (cleaned up). Nor is the 0.4% of patient visits at the Tequesta clinic requesting contraceptives. SF ¶32. Defendants found one additional complaint across their entire business of 600 nurse practitioners and operating costs that exceeded $377 million in 2022. Resp. SOF ¶¶18, 85. This becomes even less substantial compared to CVS Health's operating expenses, which exceeded $300 billion. SF ¶¶2-4; R. to SF ¶¶2-4.

In addition, "customer preference may be taken into account only when it is based on the company's inability to perform the primary function or service it offers." *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir. 1971); *see Groff*, 600 U.S. at 472. Because contraceptives comprise only a tiny fraction of Defendants' business, these few complaints are immaterial.

Defendants try unsuccessfully to distinguish *Hellinger v. Eckerd Corp.*, 67 F. Supp. 2d 1359 (S.D. Fl. 1999), which involved a pharmacy employee with a religious objection to selling

3

condoms. Defendants argue the accommodation there did not implicate the employer's "strategic business objective," Defs. Resp. 6, but the employer specifically argued that "to send a customer to another register" was "against [the pharmacy's] customer service policy," and it "could potentially lose customers, community goodwill, and revenue" if it made an exception, *Hellinger*, 67 F. Supp. 2d at 1365. The employer could not rely on those objectives because it "failed to provide the Court with any evidence of actual undue hardship." *Id.* at 1366. So too, here.

Defendants continue that an employer need not "'wait until it feels the effects' of the proposed accommodation before determining its reasonableness." Defs. Resp. 6-7 (citation omitted). But employers also cannot rely on "mere speculation or conjecture." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 317 (4th Cir. 2008). They must demonstrate, at minimum, the "accommodation's predictable consequences." *Id.*

The predictable consequences here were obvious because Defendants accommodated Kristofersdottir for six years, as was their practice for many years, SF ¶26; Resp. SOF ¶¶88, 123, 125, and any business effects were far from "substantial," *see supra*. Kristofersdottir's coworkers and supervisor, Senior Practice Manager Lorriane Hendricksen, confirmed the lack of hardship. SF ¶31; Pls. MSJ 8. "If an employer stands on weak ground when advancing hypothetical hardships in a factual vacuum, then surely his footing is even more precarious when the proposed accommodation has been tried and the postulated hardship did not arise." *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 960 (8th Cir. 1979); *see also EEOC v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 785 n.163 (E.D. Ark. 2022); *Cassell v. Skywest, Inc.*, 2022 WL 375855, at *9 (D. Utah Feb 8, 2022). Defendants add that employers are not required to "predict the future" when considering accommodations, Defs. Resp. 14-15, but they also cannot ignore the past or wildly speculate.

Defendants also cannot discount their approval of contraceptive-related accommodations for multiple employees shortly after firing Kristofersdottir, and then offering to rehire her with her old accommodation. Pls. MSJ 10; Resp. SOF ¶¶102-04. Defendants insist these involved "different decisionmakers" and different clinics that may not have faced "a similar hardship." Def. Br. 16. But there is no evidence of substantial hardship at *any* clinic, let alone the clinic in Tequesta where contraceptives accounted for 0.4% of patient visits and Hendriksen testified it would not have been a burden to continue accommodating Kristofersdottir. SF ¶¶31-32.

**B.  DEFENDANTS' "ESSENTIAL" MISSION ARGUMENT IS FUNDAMENTALLY FLAWED**

Defendants insist accommodating Kristofersdottir became an undue burden because the

PCT changed their "essential" mission to include "consistently providing Pregnancy Prevention Services at all locations, at all times (including on a walk-in basis)." Defs. Resp. 8. This argument is betrayed by the record, *see* Resp. SOF ¶¶7, 10-11, and suffers from a fundamental flaw—Defendants cannot use labels and advertising to circumvent Title VII and FCRA.

Defendants identify *no* hardship in the seven months after the alleged change during which they continued to accommodate Kristofersdottir. Resp. SOF ¶18. Defendants sought out nonconforming employees to fire, not because of *any* difficulty accommodating them, but, as Grasso said, "to do another sweep through our colleague population to ensure that we're buttoned up." Resp. SOF ¶121. Hendricksen also confirmed the absence of hardship. Resp. SOF ¶98. Defendants try to dodge this dispositive evidence because Hendricksen testified she could have continued accommodating Kristofersdottir "[i]f nothing had changed," and Defendants say their "essential" mission did change. Defs. Resp. 11. But Defendants ignore that Hendricksen was already accommodating Kristofersdottir *after* the change, and she knew of no reason she could not have continued to do so. SF ¶31. Eventually even Defendants implicitly conceded the lack of hardship when they resumed approving accommodations for contraceptives and offered to reinstate Kristofersdottir. *See* Resp. SOF ¶103-04.

Notably, there is no evidence MinuteClinic advertised its PCT to retail patients in a manner that would have changed their expectations about contraceptives. Defendants' website never mentions the PCT, does not promise that MinuteClinic will provide pregnancy prevention services at all locations by all providers, and lists "birth control consultations" as one service among many—which Kristofersdottir would readily provide. Resp. SOF ¶19.

Defendants also misread *Groff* as holding that an employer would experience "undue hardship" if an accommodation would "adversely affect its essential mission," however defined by the employer. *See* Defs. Resp. 7-8. That would nullify Title VII and allow employers to arbitrarily define their "essential" mission to exclude undesirable accommodations, regardless of the actual needs of any job. That is exactly what Patterson wanted to do. *See* Resp. SOF ¶86.

Providing contraceptive services was not "essential" to MinuteClinic operations under any meaning of that term. Whether a religious accommodation would substantially burden an employer or impede an "essential" mission or function is determined by objective facts, not self-serving labels. *See, e.g., Groff*, 600 U.S. at 468; *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013). Again, Defendants produced no evidence of advertising this "essential" mission to

customers, and only 0.4% of patient visits at the Tequesta location were for contraceptive services. Resp. SOF ¶89. Contraceptives arose much less frequently than using stethoscopes or conducting physical exams, core responsibilities of nurse practitioners that Defendants did not define as "essential." SF ¶53; Resp. SOF ¶¶89, 116. Also, while she had her accommodation, Kristofersdottir consistently received high performance reviews and performance bonuses, Resp. SOF ¶93, reflecting Defendants' judgment that she was indeed advancing their "essential" mission.

Further still, Defendants demonstrated that revoking Kristofersdottir's accommodation was not necessary to achieving their "essential" mission as even they understood it. Defendants turned a blind eye upon learning that EM refused to provide contraceptives, and they resumed granting such accommodations to others shortly after firing Kristofersdottir. Pls. MSJ 9-10; SF ¶¶111-17, 121; Resp. SOF ¶¶101-02, 104. Defendants also allowed referrals when nurse practitioners failed to order enough vaccines and supplies, Resp. SOF ¶10 even though providing vaccines also became an "essential" function in 2021 and "took the front stage" over everything else, Resp. SOF ¶115. All of this demonstrates that Defendants defined "essential" untethered from hardship in order to fire employees seeking undesirable accommodations. *See infra* Part III.

Defendants rely heavily on *Kluge v. Brownsburg Community School Corp.*, which involved a teacher who refused to call students by certain names and pronouns. But Kristofersdottir did not "disrupt[] the … environment" at MinuteClinic, nor did her accommodation create "an unreasonable risk of liability" for her employer. 732 F. Supp. 3d 943, 964-65, 968 (S.D. Ind. 2024); *see* Resp. SOF ¶98. Defendants also cite *Kluge* to assert that "*Groff* 'left untouched' existing Seventh Circuit authority 'squarely holding that an employer can define its own legitimate mission, and that contradictions to its legitimate mission are relevant to analyzing undue hardship.'" Defs. Resp. 14 (quoting 732 F. Supp. 3d at 964). But removing employees who seek accommodations related to 0.4% of their job is not a "legitimate" business goal. SF ¶32; R. to SF ¶32.

As the Seventh Circuit explained, "[w]hether or not legitimate business reasons justified the decision, however, is but a variation on the argument … that accommodating the employees' religious requests would have caused undue hardship to [the employer's] business." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). The court then affirmed the employer's lack of undue hardship by referencing the insignificant "financial hardship" and minimal operational disruption of "reschedul[ing] previously-booked appointments." *Id.* at 1576. Defendants identify no case that requires blind deference to an employer's own determination of its "essential" mission,

no matter how small a part of its business. *See* Defs. Resp. 7-8. In every cited case, the court identified actual costs of disruption to the employer's business environment, legal liability for the employer, and/or the threat of infecting colleagues and patients with COVID-19.

## C. ALTERNATIVE ACCOMMODATIONS WERE AVAILABLE

In any event, Defendants failed to consider the many ways to accommodate Kristofersdottir and still provide contraceptive services. *See* Pls. MSJ 10-12; Pls. Resp. 14-15. Employers must consider *all* such possible accommodations. *Adeyeye*, 721 F.3d at 455. A reasonable jury could not conclude that Defendants considered all other options for Kristofersdottir, which alone is fatal. *Groff*, 600 U.S. at 473; *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 722 (5th Cir. 2023). Defendants also fail to refute the evidence that multiple accommodations were available.

Defendants rely on a self-serving declaration from Grasso, executed eleven months after this case began, which says she considered alternatives for Kristofersdottir and none were available. Defs. Resp. 12 (citing R. to SF ¶¶94, 127 (citing Grasso Decl., ECF No. 70-5)). That cannot create a triable fact because it contradicts Grasso's own deposition testimony. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *Latimer v. Roaring Toyz*, 601 F.3d 1224, 1237 (11th Cir. 2010). Grasso could not recall *any* consideration of *any* options besides firing Kristofersdottir. Resp. SOF ¶112. She did not consider patient demand for contraceptives in Tequesta. SF ¶¶84-85; R. to SF ¶¶84-85. Nor did she ask Hendricksen whether accommodating Kristofersdottir was feasible, Resp. SOF ¶109, in direct violation of CVS policy, Resp. SOF ¶111. Her declaration is further refuted by clear evidence that at least four COVID-19 Swab & Send Superdelegate positions *were* available in August 2021, at least three of which were never filled. Resp. SOF ¶105. And Grasso actually testified these positions *were* open, but then insisted they required prescribing contraceptives. SF ¶¶60, 109-10.

Defendants even issued Talking Points that foreclosed accommodations related to contraceptives. Resp. SOF ¶17. Defendants say those Talking Points reflect consideration of "other options," which were unavailable, Defs. Resp. 10, 12 (citing R. to SF ¶94), but the Talking Points clearly state that transfer to an Area 6 "Swab and Send Superdelegate" position was not allowed for the circular reason that such transfers required an accommodation, which was not allowed for contraceptive services. Resp. SOF ¶17. There is no evidence that exempting employees from contraceptive services would impose substantial costs, anyway. *See supra* Part II.A.

Defendants are also wrong that no alternative accommodations were available. First, as

discussed, four Swab & Send Superdelegate positions were available in Florida in August 2021, SF ¶60, at least three of which were never filled, Resp. SOF ¶68. Moreover, *any* other position in a COVID-19 clinic would have accommodated Kristofersdottir's religious beliefs. *Id.* Even if those other positions were temporary, that is a better alternative than being fired. Second, Defendants deny the possibility of assigning Kristofersdottir to a "float" position, Resp. SOF ¶106, because no single clinic in the region was always double-staffed, Defs. Resp. 9. That is not what the accommodation would have required because a "float" rotates between clinics, and Kristofersdottir only worked about three days per week. SF ¶81; Resp. SOF ¶91. Defendants even sought to double-staff at least two clinics in the area at the same time they fired Kristofersdottir but struggled to retain sufficient nurse practitioners. Resp. SOF ¶70. Third, Defendants dismiss a "soft handoff" of patients to a virtual provider because "immediate referral could not be guaranteed." Defs. Resp. 9. Defendants could have prioritized such handoffs to be seen promptly. Fourth, Defendants dismiss proactively rescheduling patients requesting contraceptives because, although Defendants required patients to identify the reason for their appointment, Defendants did not specifically ask whether it was for contraceptives. *Id.* But Defendants never argue it would have been undue hardship to ask that question during scheduling or otherwise triage contraceptive appointments to other providers in advance, such as through a more detailed intake or scheduling system. Resp. SOF ¶63. Fifth, Defendants claim the possibility "that appointments could [have been] covered by Hendricksen without undue hardship is absurd," Defs. Resp. 9, but they do not dispute that she made the drive to the Tequesta clinic to deliver supplies when the clinic ran out, SF ¶80; R. to SF ¶80. And sixth, Defendants say transfer to a position elsewhere in the CVS Enterprise was impossible because there were no non-MinuteClinic nurse practitioner positions available in Florida during the three months surrounding the firing. Defs. Resp. 9-10. That says nothing about transfer to a similar-paying, non-nurse practitioner position she was qualified for. Grasso was previously admonished of the need to consider such transfers by the Senior Manager of the Reasonable Accommodations Team, Linda Knight, Resp. SOF ¶107, but failed to do so. No reasonable juror could find that Defendants considered, let alone appropriately rejected, all possible accommodations for Kristofersdottir.

### D. DEFENDANTS VIOLATED ESTABLISHED PROCEDURES AND CONTINUE OFFERING INCONSISTENT, SHIFTING EXPLANATIONS

Although Kristofersdottir need not show pretext to prevail on her reasonable accommodation claim, departure from established procedures and shifting explanations undermine

Defendants' assertion of undue burden and are further evidence she was fired for discriminatory reasons. Defendants contend they followed their policies and their story has remained consistent ever since. That is clearly wrong. Pls. MSJ 13-15. Even their response to this motion offers shifting explanations, first arguing that Patterson made a blanket determination to revoke all contraceptive-related accommodations, Defs. Resp. 11, then that "MinuteClinic evaluated accommodations on a case-by-case basis," Defs. Resp. 12. Both cannot be true, and both contradict other evidence. *See* Pls. MSJ 13-15. Defendants even introduce new evidence in response to this motion than one of their employees in an educational role (Field Educator JT) could be accommodated by excusing her from clinical duties, R. to SF ¶137, despite submitting an earlier declaration that all Field Educators—without exception—require clinical duties, Defs. SOF in Support of MSJ ¶66, ECF No. 70. Such policy violations and shifting explanations confirm that religious discrimination, not "undue hardship" explains their decision.

## III.   CONCLUSIVE EVIDENCE SHOWS DISPARATE TREATMENT

Title VII also imposes a "negative duty not to discriminate because of an individual's religion." *Staple v. Sch. Bd. of Broward Cnty.*, 2024 WL 3263357, at *3 (11th Cir. 2024) (cleaned up). Defendants contend only that Kristofersdottir failed to identify similarly situated employees who received more favorable treatment. Defs. Resp. 17-20. But comparators need only be similarly situated in "material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1231 (11th Cir. 2019). Defendants refused Kristofersdottir's religious accommodation because all nurse practitioners were required to prescribe contraceptives, SF ¶¶61, 67-68, so non-religious accommodations for a nurse practitioner to that same policy are appropriate comparators. Defendants also refused Kristofersdottir's religious accommodation because contraceptive services were an "essential" function of her job, so non-religious accommodations for "essential" functions also become appropriate comparators. And even if some comparators were not perfectly analogous, direct evidence of disparate treatment is sufficient. *See, e.g.*, *Vega v. Invesco Grp., Ltd.*, 432 F. App'x 867, 870 (11th Cir. 2011). An "employer violates Title VII" if an employee "requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision" to fire the employee. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-74 (2015). Patterson had that desire. Resp. SOF ¶86.

Defendants allowed EM and others to not prescribe or administer contraceptives by working as Swab & Send Superdelegates for health reasons. Resp. SOF ¶100. Defendants

continued accommodating EM knowing she would not provide contraceptive services, even though that was still an "essential function" of her job. Resp. SOF ¶¶99-101. Defendants could have accommodated Kristofersdottir the same way. *See supra* Part II.A; Resp. SOF ¶105.

Defendants retreat to their alleged essential mission and denial of open Swab & Send Superdelegate positions, which is unavailing. *See supra* Part II.B, C. They also argue EM is not a valid comparator because she eventually received a religious accommodation, Defs. Resp. 19; SF ¶¶113-15; R. to SF ¶¶113-15, but Defendants were accommodating her for non-religious reasons when they refused Kristofersdottir the same accommodation for religious reasons.

Defendants similarly argue that the individuals exempted from other so-called "essential" functions for medical reasons, or who made internal referrals for any other reason, are not appropriate comparators. Defs. Resp. 19. This argument fails for the same reason—it is black letter law that employers may not deny religion-based requests for the same accommodation allowed for other, non-religious reasons. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71 (1986).

Defendants also claim that medical comparators are not appropriate because they sought accommodations under the ADA. Defs. Resp. 19-20. Defendants provided no evidence those were ADA claims. They also ignore that a plaintiff "describes disparate treatment" under Title VII when she alleges "different treatment of [accommodation] requests depending on whether the request was for a religious reason or a medical reason." *Kim v. PGA Tour*, 2024 WL 280297, at *4 (M.D. Fla. Jan. 25, 2024).

Finally, Defendants say Kristofersdottir submitted no evidence of pretext. Defs. Resp. 20. They are wrong because departure from existing procedures and shifting explanations are evidence of pretext. *See supra* Part II.D; Pls. MSJ 16; Pls. Resp. 16-17; *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006); *Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013). Defendants intended, as Patterson stated, to "remove the [accommodation] pathway for future colleagues (if that is possible!)" when it came to contraceptives. SF ¶48.

## CONCLUSION

This Court should grant Kristofersdottir's motion for partial summary judgment.

Respectfully submitted this 10th day of January, 2025.

*/s/ Jason Gonzalez*
Jason Gonzalez
Robert E. Minchin III
LAWSON HUCK GONZALEZ PLLC
215 South Monroe Street, Suite 320
Tallahassee, Florida 32301
(850) 825-4334
jason@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com

David J. Hacker*
Stephanie N. Taub*
Ryan N. Gardner*
Danielle A. Runyan*
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
(972) 941-4444
dhacker@firstliberty.org
staub@firstliberty.org
rgardner@firstliberty.org
drunyan@firstliberty.org

Tabitha M. Harrington*
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue NW, Suite 1410
Washington, DC 20004
(202) 921-4105
tharrington@firstliberty.org

*admitted *pro hac vice*

Douglas Peterson*
KEATING O'GARA NEDVED & PETER
200 S 21 Street, Suite 400
Lincoln, NE 68510
(402) 475-8230
dpeterson@firstliberty.org

Jonathan Berry*
Jared M. Kelson*
Andrew Smith*
BOYDEN GRAY PLLC
800 Connecticut Ave NW, Suite 900
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com
jkelson@boydengray.com
asmith@boydengray.com

*Counsel for Plaintiff*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jason Gonzalez*

## SERVICE LIST

Nancy A. Beyer
Fla. Bar No.: 0059688
Nancy A. Johnson
Florida Bar No. 0597562
LITTLER MENDELSON, P.C.
111 N. Orange Avenue, Suite 1750
Orlando, Florida 32801-2366
Telephone: 407.393.2900
Facsimile: 407.393.2929
nbeyer@littler.com
najohnson@littler.com

Heather A. Pierce *(pro hac vice)*
Rhode Island Bar No.: 7345
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2005
Providence, RI 02903
401.824.2506
401.223.6867 (Fax)
hpierce@littler.com

Kimberly R. Miers *(pro hac vice)*
TX Bar No. 24041482
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)
kmiers@littler.com

Allison Williams (pro hac vice)
TX Bar No. 24075108
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951.9400
acwilliams@littler.com

*Counsel for Defendants*