## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 24-CV-80057-RLR

GUDRUN KRISTOFERSDOTTIR,

    *Plaintiff,*

v.

CVS HEALTH CORPORATION;
MINUTECLINIC, LLC;
MINUTECLINIC DIAGNOSTIC OF
FLORIDA, LLC,

    *Defendants.*

_____/

## OMNIBUS ORDER ON THE PARTIES' MOTIONS FOR
## SUMMARY JUDGMENT AND DEFENDANTS' MOTION IN LIMINE

**THIS CAUSE** is before the Court on the Motion for Summary Judgment by Defendants CVS Health Corporation ("CVS Health"), MinuteClinic, LLC ("MinuteClinic"), and MinuteClinic Diagnostic of Florida, LLC ("MinuteClinic Diagnostic") (collectively, "Defendants"), DE 69; Plaintiff Gudrun Kristofersdottir's Motion for Partial Summary Judgment, DE 98-1; and Defendants' Motion in Limine, DE 71. The Court has carefully considered the motions, responses, and replies, and is otherwise fully advised in the premises.

For the reasons set forth below, the Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART** as more fully set forth in this Order. Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Defendants' Motion in Limine is **DENIED IN PART and RESERVED IN PART** as more fully set forth in this Order.

## I.      INTRODUCTION

This is a case about religious discrimination. More specifically, this is a case about Plaintiff's religious belief that hormonal contraceptives should not be used. Because Plaintiff holds this belief, and because Plaintiff is a nurse practitioner, her prior work for Defendant MinuteClinic was always

subject to the possibility that a patient would request hormonal contraceptives.  In order to work for MinuteClinic without violating her religious belief, Plaintiff asked for a religious accommodation under which she would not be required to provide contraceptives.

After working for many years in accordance with her requested accommodation, MinuteClinic decided to revoke all religious accommodations exempting nurse practitioners from providing contraceptives.  When Plaintiff refused to work subject to the mandate that she must dispense hormonal contraceptives, MinuteClinic fired her.  Later, after Plaintiff's termination, MinuteClinic decided it would once again grant the religious accommodation.  What this Court must decide is whether Plaintiff has sufficient evidence for a trial by jury to hold all of the Defendants liable for her termination.  For the reasons outlined below, she does.

## II.     FACTUAL BACKGROUND

The undisputed facts are as follows.  Defendant MinuteClinic, LLC ("MinuteClinic") is a subsidiary of CVS Pharmacy, Inc., which is a subsidiary of Defendant CVS Health Corporation ("CVS Health"). DE 116 ¶ 78; DE 132 ¶ 78.  Defendant MinuteClinic Diagnostic of Florida, LLC ("MinuteClinic Diagnostic"), is a wholly owned subsidiary of MinuteClinic. *Id.*

MinuteClinic operates medical clinics within certain CVS Health retail stores in various states, including Florida. DE 70 ¶ 1; DE 116 ¶ 1.  In 2021, MinuteClinic introduced its "Patient Care Transformation," or "PCT." DE 70 ¶ 4; DE 116 ¶ 4.  The goal of the PCT was to deliver comprehensive care that meets the needs of its patients, improve health outcomes, and reduce costs. DE 70 ¶ 5; DE 116 ¶ 5.  PCT expanded MinuteClinic's services to more closely align with those services that patients customarily receive from primary care practices. DE 70 ¶ 6; DE 116 ¶ 6.

As part of its PCT initiative, MinuteClinic required its nurse practitioners to provide care that "includes education and treatment for pregnancy prevention." DE 70 ¶ 12; DE 116 ¶ 12.  On August

26, 2021, MinuteClinic announced this update during a recorded Town Hall meeting. DE 70 ¶ 13; DE 116 ¶ 13.  MinuteClinic updated the job description for MinuteClinic nurse practitioners to require that they provide pregnancy prevention services. DE 70 ¶¶ 14–15; DE 116 ¶¶ 14–15.  Before changing the job descriptions for nurse practitioners, MinuteClinic was aware that certain providers were exempted from prescribing contraceptives. DE 70 ¶ 16; DE 116 ¶ 16.

On August 25, 2014, Plaintiff Gudrun Kristofersdottir began working as a nurse practitioner at the MinuteClinic location in Tequesta, Florida. DE 70 ¶ 26; DE 116 ¶ 26.  Plaintiff is Roman Catholic and has a religious objection to prescribing hormonal contraceptives as well as emergency contraceptives. DE 70 ¶ 33; DE 116 ¶ 33.

In January 2016, MinuteClinic providers began prescribing hormonal contraceptive medication. DE 70 ¶ 32; DE 116 ¶ 32.  After learning that MinuteClinic was going to start prescribing contraceptives, Plaintiff claims that she spoke with her supervisor about needing a religious accommodation. DE 70 ¶¶ 30, 34; DE 116 ¶¶ 30, 34.  Plaintiff filled out the MinuteClinic form to request a religious accommodation and wrote that she objected to contraceptive injections, contraceptive medications, and emergency contraceptives. DE 70 ¶ 35; DE 116 ¶ 35.  As possible accommodations, Plaintiff proposed referring patients seeking contraceptives to other MinuteClinic locations or appointment times. *Id.*  Plaintiff emailed a photograph of the form to her supervisor and to a Human Resources Business Partner. DE 70 ¶ 36; DE 116 ¶ 36.  Plaintiff believed her accommodation "worked quite well." DE 70 ¶ 41; DE 116 ¶ 41.

In February 2022, after MinuteClinic began requiring its nurse practitioners to provide pregnancy prevention services, Plaintiff saw a news report about another nurse practitioner in Texas who was terminated after she refused to prescribe contraceptives. DE 70 ¶ 45; DE 116 ¶ 45.  After hearing this, Plaintiff contacted her supervisor and asked if she needed to be concerned about her

3

accommodation. DE 70 ¶ 46; DE 116 ¶ 46.

On March 7, 2022, Plaintiff's supervisor called her and told her that all religious accommodations had been revoked and that all MinuteClinic providers had to prescribe hormonal contraceptives, including emergency contraceptives. DE 70 ¶ 49; DE 116 ¶ 49.  Plaintiff claims that she asked her supervisor if she could be transferred to a different position, such as a position in a COVID-19-services-only clinic or a double-staffed clinic. DE 70 ¶ 50; DE 116 ¶ 50.

In a subsequent email, Plaintiff's supervisor stated that Plaintiff had until March 31, 2022, to make a final decision or MinuteClinic would sever employment ties. DE 70 ¶ 52; DE 116 ¶ 52. Plaintiff's supervisor wrote that "[i]t will not be ok to call those patients and scheduled [sic] them to either a nearby clinic or on a different day that you are not scheduled to work." *Id.*

On March 31, 2022, Plaintiff emailed her supervisor and indicated that she would "continue to provide holistic pregnancy prevention care based on a natural family planning method." DE 70 ¶ 53; DE 116 ¶ 53.  In April 2022, MinuteClinic terminated Plaintiff's employment because she refused to prescribe or administer hormonal contraceptives. DE 70 ¶ 55; DE 116 ¶ 55.

### III.   PROCEDURAL HISTORY

On January 18, 2024, Plaintiff brought this lawsuit against Defendants based on four causes of action: (1) failure to accommodate under Title VII, (2) disparate treatment under Title VII, (3) disparate impact under Title VII, and (4) religious discrimination under the Florida Civil Rights Act ("FCRA"). DE 1.

Both parties have filed motions for summary judgment.  Defendants have moved for full summary judgment on all of Plaintiff's claims, as well as on the issue of punitive damages. DE 69. Plaintiff has moved for partial summary judgment in respect to Defendants' liability on all of her claims. DE 98-1.

Both parties have filed motions *in limine*. DE 71; DE 80.  Defendants' Motion in Limine seeks to exclude the testimony of Plaintiff's expert on economic damages. DE 71 at 1.  Defendants also seek to exclude evidence of religious accommodations granted to other employees not to prescribe contraceptives after Plaintiff's termination; accommodation requests that were granted based on employees' medical needs; and evidence relating to complaints of religious discrimination by other employees against Defendants. DE 71 at 13, 15.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).  "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).  When deciding a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016).  The court does not weigh conflicting evidence or make credibility determinations. *Id.*

## V.    ANALYSIS

Defendants'[1] Motion seeks full summary judgment against Plaintiff on all of her claims. DE 69.  Plaintiff's Motion seeks partial summary judgment, on the issue of liability, on all of her claims.

---

[1] The Court uses the term "Defendants" throughout this Order for purposes of readability.  The Court acknowledges that Defendants dispute whether Title VII and the FCRA are applicable to CVS Health Corporation and MinuteClinic Diagnostic of Florida, LLC. *See* Part V.A.

DE 98-1.  The Court will address the topics in Defendants' Motion in turn.  These are **(A)** the applicability of Title VII and the FCRA to Defendants CVS Health and MinuteClinic Diagnostic; **(B)** Plaintiff's Title VII failure to accommodate claim; **(C)** Plaintiff's Title VII disparate treatment claim; **(D)** Plaintiff's Title VII disparate impact claim; **(E)** Plaintiff's FCRA claim; and **(F)** punitive damages.  The Court will then address in part **(G)** Defendants' Motion in Limine.

### A.        Applicability of Title VII and the FCRA

The first issue is whether Defendants CVS Health and MinuteClinic Diagnostic are considered employers subject to Title VII and the FCRA.  Title VII prevents "employers" from engaging in unlawful employment practices. 42 U.S.C. § 2000e-2(a).  To be a covered "employer" subject to Title VII, an entity must have "fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).  The FCRA similarly limits its application to "employers" with fifteen or more employees over the same time frame. Fla. Stat. § 760.02(7).

Defendants do not dispute that MinuteClinic LLC is subject to Title VII and the FCRA. *See* DE 69 at 3.  But Defendants argue that because Defendants CVS Health and MinuteClinic Diagnostic did not have any employees during the relevant timeframe, they are not employers within the meaning of Title VII or the FCRA and thus are entitled to summary judgment on all of Plaintiff's claims. *Id.*

In response, Plaintiff argues that CVS Health and MinuteClinic Diagnostic are "equally subject to liability" because they operated with MinuteClinic as an "integrated enterprise." DE 117 at 3–4; *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 889 (11th Cir. 2016).  If Defendants did operate as an integrated enterprise, they would be treated as a single entity—meaning that the employees of MinuteClinic would be considered the employees of all the Defendants—and would thus be subject to liability under Title VII and the FCRA. *See McKenzie v. Davenport-Harris Funeral*

6

*Home*, 834 F.2d 930, 933 (11th Cir. 1987). "Four factors are relevant to the 'integrated enterprise' inquiry: (1) the degree of interrelatedness of operations, (2) the degree of centralized control of labor relations, (3) the presence of common management, and (4) common ownership or financial control." *Id.*

Plaintiff has produced evidence relevant to each factor of the integrated enterprise inquiry. DE 117 at 3–4. This includes evidence of common ownership: CVS Health wholly owns CVS Pharmacy, Inc., which wholly owns MinuteClinic, LLC, which wholly owns MinuteClinic Diagnostic of Florida, LLC. DE 116 ¶ 78; DE 99-6.

Plaintiff also provides evidence of the parties' interrelatedness of operations, which includes evidence to suggest the following: MinuteClinics are located inside CVS pharmacies, which are part of a wholly owned subsidiary of CVS Health. DE 116 ¶¶ 1, 78; DE 132 ¶ 78. CVS Health administers pay and benefits policies for MinuteClinic employees. DE 116 ¶ 80; DE 99-7 at 46–50, 57. A CVS Health enterprise team created accommodations policies applicable to MinuteClinic employees. DE 116 ¶ 82; DE 90-4 at 37:7-42:24. And a CVS Health employee decided that MinuteClinic would fire and not accommodate Plaintiff. DE 116 ¶ 83; DE 132 ¶ 83. *See Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981) (finding that two companies were not interrelated because their "payrolls, telephones and billings were separate, each corporation paid its proportionate share of common clerical help and neither corporation had control over the hiring and firing of the other's employees"). This evidence likewise supports Plaintiff's position on the degree of centralized control of labor relations and its "exten[sion] into the area of personnel." *Fike*, 514 F. Supp. at 727; *see also Wigfall v. Saint Leo Univ., Inc.*, No. 8:10-CV-02232-T-24, 2012 WL 717868, *7 (M.D. Fla. Mar. 6, 2012) *aff'd sub nom.* 517 F. App'x 910 (11th Cir. 2013) ("Of particular significance is the fact that [defendant] had no control over the employment decision that forms the

basis of this lawsuit . . . .").

Plaintiff has also provided evidence of common management, and "[c]ases treating two separate corporate entities as a single employer have placed heavy emphasis on the existence of common directors and officers." *Fike*, 517 F. Supp. at 727 (collecting cases).  Plaintiff provides evidence to suggest that Sharon Vitti, while serving as SVP of CVS Corporate House, was also President of MinuteClinic, responsible for "overseeing the team at Minute Clinic, the corporate team, and working with the team and the CVS leadership to prepare budgets, to oversee day-to-day operations for the team in the field." DE 116 ¶ 84; DE 116-8 at 6:4-24.  Plaintiff's evidence also suggests that Angela Patterson served as Chief Nurse Practitioner Officer of MinuteClinic before she became a Vice President of CVS Health, after Patterson was "laddered up under a new position that was added to the MinuteClinic senior leadership team." DE 116 ¶ 84; DE 116-1 at 13:5-21.

Plaintiff has thus satisfied her burden of presenting for the jury a genuine dispute of material fact on the issue of whether Defendants comprise an integrated enterprise and thus whether CVS and MinuteClinic Diagnostic can be held liable for claims arising under Title VII or the FCRA.

The Court next addresses Defendants' argument in its Reply. DE 131.  Defendants argue that Plaintiff's "integrated enterprise" theory is not properly before the Court because "[a] plaintiff cannot amend her complaint and raise employment theories for the first time in her response at the summary judgment stage." DE 131 at 1–2 (citing *Bouey v. Orange Cnty Serv. Unit*, 673 F. App'x 952, 954–55 (11th Cir. 2016) (explaining that because the plaintiff failed to allege that the defendants were joint employers until her response to the motion for summary judgment, the argument was not properly before the district court)).  Defendants argue that Plaintiff is limited by her Complaint, which pled that Defendants are subject to Title VII and the FCRA because "each Defendant had more than 500 employees," not because they were an integrated enterprise. DE 131 at 1; DE 1 ¶ 27.

The Court is not persuaded by Defendants' argument for two reasons.  First, Plaintiff did not raise the "integrated enterprise" theory for the first time in her response to Defendant's Motion, which was filed on January 2, 2025. DE 117.  Plaintiff raises the theory, albeit briefly, in her own Motion for Partial Summary Judgment, which was filed on December 12, 2024. DE 98-1.

Second, the Court is not convinced that Plaintiff's argument "improperly raised a new claim, rather than simply provided 'an alternative legal characterization of the factual relationship between' Defendant[s] . . . based on facts already alleged." *Stanbury v. AUC Consortium, Inc.*, No. 21-CV-1340, 2023 WL 2778769, at *5 (N.D. Ga. Jan. 20, 2023), *report and recommendation adopted*, No. 21-CV-01340, 2023 WL 2778768 (N.D. Ga. Mar. 20, 2023), *appeal dismissed*, No. 23-11390-C, 2023 WL 4635894 (11th Cir. June 5, 2023) (quoting *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 808–09 (7th Cir. 2014)).  Plaintiff is not attempting to bring new or different *claims* in her summary judgment response, nor is she relying improperly on facts outside of her Complaint for those claims. *See, e.g.*, *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 708 (11th Cir. 2020) (stating that the plaintiff improperly attempted to offer a new factual basis for his claims when the plaintiff added allegations, in his summary judgment response, about an incident that occurred two years after the incidents in his operative complaint); *Ibeh v. Wilson*, No. 23-13128, 2024 WL 2723253, at *2 (11th Cir. May 28, 2024) (stating that plaintiff improperly added new facts in his summary judgment response to support his hostile-work-environment claim).

Plaintiff here is asserting the same claims based on the same facts that she pled in her Complaint.  Plaintiff's Complaint contains allegations that frequently refer collectively to all Defendants, sufficiently putting Defendants on notice that she sought to hold all Defendants liable. *See* DE 1; *Whitaker*, 772 F.3d at 808–09 (considering the merits of the plaintiff's joint employer theory and finding that there was no "unfair surprise" where she did not introduce a new factual basis that

was not in her complaint, but rather proffered an alternative legal characterization of the factual relationship between two entities in support of her claim); *see also*, *cf.*, *Stamey Cattle Co., LLP v. Wright*, No. 5:17-CV-147, 2019 WL 722597, at *11 (S.D. Ga. Feb. 19, 2019) (finding at summary judgment that despite not using the term "piercing the veil," the plaintiff did raise the veil-piercing theory of liability in her pleadings such that defendants were on notice that plaintiff would attempt to hold an individual personally liable).

Defendant's Motion for Summary Judgment on this issue is thus denied.

**B.     First Cause of Action: Title VII – Failure to Accommodate**

Defendants next seek summary judgment on Plaintiff's failure to accommodate claim. DE 69 at 3.  After a plaintiff establishes her *prima facie* case for failure to accommodate, "the burden shifts to the employer to show that it either offered a reasonable accommodation or that it cannot reasonably accommodate the employee's religious practice without undue hardship on its business." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021); *see also Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012) (describing the requirements of a *prima facie* failure to accommodate claim).

Defendants do not dispute that Plaintiff has established her *prima facie* claim, but Defendants assert that MinuteClinic could not reasonably accommodate Plaintiff without undue hardship. DE 69 at 4.  Whether an accommodation would pose an undue hardship "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff v. DeJoy*, 600 U.S. 447, 470–71 (2023) (quotation marks omitted).  "An employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470.  Courts have recognized undue hardship based on noneconomic as well as

10

economic costs. *E.g.*, *Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 175–76 (E.D. Pa. 2023) (finding undue hardship based on "substantial social, if not economic, costs" because the employer's "mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated [employee] in its midst").

Defendants argue that MinuteClinic could not reasonably accommodate Plaintiff without undue hardship because doing so would negatively affect Defendants' essential mission; because exempting Plaintiff would inconvenience patients and threaten reputational damage; and because alternative accommodations were not feasible. DE 69 at 6–11.  The Court addresses each of Defendants' arguments in turn.

**First,** Defendants argue that exempting Plaintiff from providing hormonal contraceptives would have adversely affected Defendants' essential mission. *Id.* at 8.  Defendants produced evidence to show that "consistently providing Pregnancy Prevention Services at all clinic locations, at all times (including on a walk-in basis)," served as part of Defendants' "overall mission of becoming a primary care enabled destination and expanding women's health care, particularly to underserved communities lacking access to primary care providers." *Id.*; DE 70 ¶¶ 4–8; *see also, e.g.*, *Lindsey v. Bridge Rehab, Inc.*, 369 F. Supp. 3d 1204, 1214 (N.D. Ala. 2019) ("The [employer] would jeopardize its mission to provide substance abuse and behavioral treatment to vulnerable adolescents if it permitted [the employee] to *forcefully* express her religion and disrespect the clients." (emphasis in original)).

In response, Plaintiff argues that Defendants could have exempted Plaintiff from providing contraceptive care because her accommodations involved no substantial business costs to MinuteClinic. DE 117 at 6.  In support, Plaintiff provides evidence that only 0.4 percent of patient visits to the clinic where Plaintiff worked involved contraceptive care, and that Plaintiff herself

11

encountered "between five and 10 patients a year" seeking contraceptive services. *Id.* at 5; DE 116 ¶ 89.

**Second,** Defendants argue that Plaintiff's refusal to provide hormonal contraceptive services would threaten reputational damage, inconvenience patients, and cause a loss of business. DE 69 at 9.  In support, Defendants point to complaints from two patients who were denied care and referred to other clinics when they requested contraceptives from Plaintiff. DE 70 ¶¶ 57–62.  One of these complaints was posted publicly on Yelp, which Defendants assert damaged MinuteClinic's reputation and ability to compete. DE 69 at 9–10; DE 70 ¶ 58.

In response, Plaintiff argues that given the scale of Defendants' operations, the few complaints Defendants received about Plaintiff "are not conclusive evidence of 'excessive' or 'unjustifiable' costs." DE 117 at 6.  In support, Plaintiff produces evidence that MinuteClinic employs hundreds of nurse practitioners and had operational costs that exceeded $377 million annually in 2021 and 2022. DE 116 ¶ 85; DE 132 ¶ 85.

**Third,** Defendants argue that alternative accommodations—specifically, transferring Plaintiff to a different position—were not feasible and thus would also have constituted undue hardship. DE 69 at 10.  Before Plaintiff was terminated, she had suggested that Defendants transfer her to, among other alternatives, a COVID-19 clinic where contraceptives would never be requested. DE 1 ¶ 57. Regarding the last alternative, Defendants provide evidence that the COVID-19 clinics were primarily staffed by contingent workers and not employees. DE 70 ¶ 67; DE 70-3 at 121:13-122:18.  Only the "Swab and Send Superdelegate" positions were available, on a temporary basis, to MinuteClinic employees. *Id.*  Defendants produced evidence to show that starting from August 2021, when Defendants announced the new accommodations policy, there have been no vacant MinuteClinic Swab and Send Superdelegate positions in Florida. *Id.* ¶ 68; DE 70-6 at 129:8-15.

12

In response, Plaintiff argues that alternative accommodations *were* viable because there *were* COVID-19-only positions available. DE 117 at 8.  In support, Plaintiff produces evidence to suggest that Defendants discussed "states [Defendants] believe have room for transfers . . . for Swab and Send Superdelegate work." DE 116 ¶ 105; DE 82-13 at 1.  In Florida as of August 2021, these included four "potential" seats. *Id.*

Because the undue burden analysis of a failure to accommodate claim requires considering "all relevant factors in the case at hand," there are genuine disputes of material fact.  Plaintiff's position focuses on the economic costs of providing Plaintiff's accommodations in the context of Defendants' overall operations.  Plaintiff provides evidence that Defendants did not analyze "what the cost to the business would be if [Defendants] tried to accommodate" the employees with religious objections to prescribing contraceptives. DE 116 ¶ 90; ECF 83-17 at 148:1-19.  In contrast, Defendants' position emphasizes the non-economic costs, such as harm to Defendants' mission, patients' inconvenience, and the risk of reputational damage.  Defendants provide evidence that MinuteClinic determined that the "failure to execute the mission" of providing Pregnancy Prevention Services at all its locations "had the potential of sparking significant backlash against the Company." DE 70 ¶ 24; DE 70-1 ¶ 28.

Both parties have provided evidence to support their positions.  It is thus the jury's task to weigh the evidence to determine whether accommodating Plaintiff would have been an undue burden on Defendants.  For these reasons, Defendant's request for summary judgment on Plaintiff's Title VII failure to accommodate claim is denied, and Plaintiff's request for summary judgment as to Defendants' liability on this claim is also denied. DE 98-1 at 7.

**C.     Second Cause of Action: Title VII – Disparate Treatment**

Defendants next seek summary judgment on Plaintiff's disparate treatment claim, arguing that

Plaintiff has not established a *prima facie* case of disparate treatment discrimination. DE 69 at 13.  To establish a *prima facie* case of traditional disparate treatment discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside the plaintiff's protected class. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).  Once a plaintiff has established these elements, a defendant has the burden of producing "legitimate, nondiscriminatory reasons for its employment action." *Id.*  "If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

Defendants argue that Plaintiff cannot identify a similarly situated individual outside her protected class, and that Plaintiff cannot prove that Defendants' reason for its employment action was pretext for discrimination.  The Court addresses each argument in turn.

        1.  <u>Similarly Situated Comparator</u>

Defendants argue that Plaintiff has failed to establish a *prima facie* case of disparate treatment because Plaintiff "cannot identify a single similarly situated comparator." DE 69 at 13.  A proper comparator is an individual outside of Plaintiff's protected class who is "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019).  A similarly situated comparator ordinarily will (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; and (4) share the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

Here, Plaintiff has produced evidence of a non-Christian provider who was subject to Defendants' new accommodations policy and who, based on her faith, would not provide

contraceptive care. Plaintiff's evidence concerns another MinuteClinic employee, E.M., who is Muslim. *See* DE 116 ¶ 99; DE 132 ¶ 99. Before Defendants instituted their new policy on contraceptive care, E.M. had been transferred to a Swab & Send Superdelegate position as an accommodation for health—not religious—reasons. DE 116 ¶ 100, DE 132 ¶ 100. The duties in this role did not involve providing contraceptives. DE 116 ¶ 100; DE 132 ¶ 100; DE 70-3 at 121:13-23.

Defendants argue that E.M. is not a similarly situated comparator because E.M. did not engage in the same behavior as Plaintiff. DE 131 at 5; DE 69 at 13. Defendants define the behavior in question as "refusing to perform an essential job function." *Id.* Defendants emphasize the fact that E.M. was reassigned to the Superdelegate position "over ten months before the revision of the [nurse practitioner] job description" and thus did not engage in Plaintiff's behavior of refusing to provide contraceptive services. DE 131 at 5; DE 120 ¶ 107. Defendants assert that Plaintiff was not denied a similar reassignment due to religious discrimination, but due to the lack of vacant positions. DE 131 at 5; DE 120 ¶ 60.

Plaintiff has produced evidence to show, however, that E.M. was subject to the same policies as Plaintiff. Plaintiff has produced evidence to show that when E.M. worked as a Superdelegate, she was "considered to be a MinuteClinic provider," DE 87-1 at 80:21-82:16, and that "[a]ll MinuteClinic providers were required to provide contraceptives." *Id.* at 81:7-82:16.

Plaintiff has also produced evidence to show that Defendants sought "to ensure that [Defendants] have identified all Providers who believe they have a Reasonable Accommodation, handshake agreement, or 'under the radar' method to exempt themselves from providing contraceptives." DE 83-23 at 1. And although E.M. "did not have an approved accommodation on file" regarding contraceptives, DE 87-1 at 81:7-83:1, Plaintiff has produced evidence to suggest that Defendants were aware that E.M. would oppose providing contraceptive care based on her faith, *see*

*id.* at 82:17-83:1 (stating that because E.M. was in a Superdelegate role, she did not seem to have an issue with not having an approved accommodation regarding contraceptives).

Finally, Plaintiff has produced evidence to show that in August 2022, a few months after Plaintiff was terminated for refusing to provide contraceptives, Defendants granted E.M. an accommodation not to prescribe contraceptives (albeit due to a change in Florida law, and albeit while E.M. was still working in her Superdelegate role). *Id.* at 84:8-85:18, 91:1-7; *see Lewis*, 918 F.3d at 1230 (finding two comparators not similarly situated because, among other reasons, although the comparators were placed on administrative leave like the plaintiff, the comparators were placed on leave "years apart," "pursuant to altogether different personnel policies and, perhaps even more importantly, for altogether different conditions").

Viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in that party's favor, Plaintiff has produced some evidence to suggest a similarly situated comparator for the purposes of establishing a *prima facie* disparate treatment claim. *Furcron*, 843 F.3d at 1304. Plaintiff has produced evidence to infer that although E.M. was in a Superdelegate role, she was still considered a "MinuteClinic provider" and thus subject to the enterprise-wide policy of being "required to provide contraceptives." Plaintiff has produced evidence to infer that although Defendants were aware that E.M. would not provide contraceptives based on her non-Christian religious faith, E.M. was not terminated from her position.

For these reasons, Plaintiff's proposed comparator is not "simply too dissimilar to permit a valid inference that invidious discrimination is afoot." *Lewis*, 918 F.3d at 1229 (describing the summary-judgment standard for a proposed comparator to establish a *prima facie* disparate treatment claim). There is thus a genuine dispute of material fact regarding whether Plaintiff has identified a proper comparator for purposes of her disparate treatment claim.

16

2.  Burden-Shifting Framework

The Court turns next to Defendants' argument that Plaintiff cannot establish that Defendants' reason for terminating her was pretext for discrimination.  Once a plaintiff has *prima facie* established her disparate treatment claim, the defendant has the burden to produce legitimate, nondiscriminatory reasons for its employment action. *Joe's Stone Crab*, 220 F.3d at 1286.  "Once the defendant carries its minimal burden, the plaintiff must raise a genuine issue that the defendant's 'proffered reason really is a pretext for unlawful discrimination' to survive a motion for summary judgment." *Lindsey v. Bridge Rehab, Inc.*, 369 F. Supp. 3d 1204, 1210–11 (N.D. Ala. 2019) (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008)).

Defendants provide two explanations for the adverse employment action here.  First, Defendants assert that Plaintiff was not terminated because of her religion, but because she refused to perform an essential function of her position, the provision of Pregnancy Prevention Services. DE 69 at 14; DE 70 ¶ 55.  Second, Defendants assert that Plaintiff was not transferred to a position like E.M.'s, which provided only COVID-19 services, because there were no such open positions at the time in Florida. DE 131 at 5; DE 120 ¶ 60.  Defendants argue that Plaintiff can submit no evidence that creates a fact issue as to whether Defendants' stated reason for her termination was pretext for religious discrimination. DE 69 at 14–15.

In response, Plaintiff has provided evidence that raises genuine disputes as to whether Defendants' asserted justifications are false. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").  First, Plaintiff has disputed whether providing holistic contraceptive care was an essential function of her position, and thus a legitimate business reason for her

17

termination, based on the same facts with which she argues that Defendants would not have experienced undue hardship if they had accommodated her. *See* DE 117 at 5.  These include the fact that patients rarely requested contraceptives at Plaintiff's clinic. DE 116 ¶¶ 12, 55, 89.  Second, Plaintiff disputes Defendants' assertion that there were no vacant positions, and Plaintiff has produced some evidence to indicate that there may have been vacant positions at the time in question. DE 116 ¶ 105; DE 82-13 at 1, 14.

Plaintiff has produced evidence to create genuine disputes as to whether she has identified a proper comparator and as to whether Defendants' reasons for terminating Plaintiff's employment were legitimate.  Defendants' request for summary judgment on this issue, as well as Plaintiff's request for partial summary judgment on this issue, are thus denied.

**D.      Third Cause of Action: Title VII – Disparate Impact**

Defendants next seek summary judgment on Plaintiff's disparate impact claim. DE 69 at 15. Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  A *prima facie* case of disparate impact discrimination requires (1) identifying a specific and facially neutral employment practice that caused a disparate impact based on religion, and (2) demonstrating causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination. *Davis v. Infinity Ins. Co.*, No. 21-11446, 2022 WL 1152612, at *3 (11th Cir. Apr. 19, 2022).

Defendants argue that Plaintiff has failed to establish her *prima facie* case because she has not defined a legally protected group and because she has not provided statistical evidence. DE 69 at 15– 17.  Defendants first argue that Plaintiff does not define a legally protected group who was disparately

impacted because in her Complaint, Plaintiff alleges that the requirement disparately impacted employees "'who have religious beliefs inconsistent with providing hormonal contraceptives.'" *Id.* at 17 (quoting DE 1 ¶ 133).  Defendants argue that this is not a legally protected group. *Id.*; *see also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1305 n.36 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) ("If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach.").

The parties and the Court do not question that Plaintiff's religious beliefs are sincerely held, but it is true that for purposes of her disparate impact claim, Plaintiff has not clearly set forth the protected class in question.  In her Complaint, Plaintiff identifies herself as a Christian and as a member of the Roman Catholic Church. DE 1 ¶ 28.  Her disparate impact claim defines the protected class more broadly, basing the class on all religious beliefs that are inconsistent with providing hormonal contraceptives. *Id.* ¶ 133.  Then, in her Response to Defendants' Motion for Summary Judgment, Plaintiff explicitly premises her disparate impact claim on a "protected class of Christians." DE 117 at 18.  And as the bases for her religious beliefs on hormonal contraceptives, Plaintiff cites specifically—and only—to the Catechism of the Catholic Church. DE 1 ¶ 29.

Regardless of whether Plaintiff has properly premised her disparate impact claim on a protected class of Christians or a narrower protected class of Catholics, however, Plaintiff must "offer statistical evidence sufficient to show that the challenged practice resulted in prohibited discrimination." *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009) (describing "a prima facie case of disparate-impact liability" as "essentially, a threshold showing of a significant statistical disparity, and nothing more" (citation omitted)).  Defendants argue that Plaintiff "cannot offer any statistical evidence to show that MinuteClinic's Pregnancy Prevention Services essential job function had a

disparate impact on any legally protected group." DE 69 at 17.

In her Response, Plaintiff argues that "'statistics are not required where,' as here, 'a disparate impact is obvious.'" DE 117 at 18 (citing *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023)).   Plaintiff asserts that "[a]ll accommodations (100%) related to contraceptives were for Christian beliefs, and all employees (100%) subsequently fired for refusing to prescribe or administer hormonal contraceptives did so for those religious reasons." DE 117 at 17. Plaintiff asserts that Defendants' policy "led Defendants to fire at least seven employees with objections to prescribing or administering hormonal contraceptives, at least five of whom later sued for discrimination against their Christian beliefs and one of whom is a nun." *Id.*

Plaintiff further argues that statistical evidence should not be required here because the disparate impact is obvious. DE 117 at 18.  In support, Plaintiff cites to *Craig v. Alabama State Univ.*, in which the Eleventh Circuit quoted a Fourth Circuit case:

> Statistical proof of actual applications is not of course indispensable to proving the disparate impact *prima facie* case, particularly where, as here, the action is individual and not class. Circumstantial evidence, complemented by judicial notice to show that a facially neutral policy must in the ordinary course have a disparate impact on a protected group of which an individual plaintiff is a member is often utilized.

804 F.2d 682, 687 n.7 (11th Cir. 1986) (quoting *Mitchell v. Board of Trustees of Pickens County*, 599 F.2d 582, 585 n. 7 (4th Cir. 1979), *cert. denied*, 444 U.S. 965 (1979)).

The circumstances in *Craig*, however, are distinct from Plaintiff's case here.  *Craig* concerned "whether the plaintiff could prove the discriminatory impact of a separate, now defunct policy and use the argument the new policy would perpetuate the old policy's as-yet-unremedied impact as evidence of the disparate impact of the new policy." *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111-JHE, 2016 WL 4507122, at *7 (N.D. Ala. Aug. 29, 2016) (discussing *Craig*, 804 F.2d at 687 n.7). The *Craig* plaintiff sought to prove the disparate impact of a policy that favored hiring from current

members of the defendant's workforce. *Craig*, 804 F.2d at 687 n.7.  The plaintiff had provided evidence to show that in most of the relevant categories, seventy to ninety percent of the workforce was Black. *Id.*  Based on this evidence and context, the Eleventh Circuit did not require the plaintiff to provide direct "statistics of the actual racial composition produced through the operation" of the subsequent policy. *Id.*

Here, unlike in *Craig*, Plaintiff has not cited to sufficient evidence to permit the Court to infer that Plaintiff's alleged disparate impact is "obvious."  In addition to the issue of whether Plaintiff has clearly established the proper protected class for her claim, Plaintiff has misrepresented her cited evidence—or has cited incompletely to it—and Plaintiff does not cite to evidence to help contextualize the scope of her disparate impact claim.  Defendants do not dispute that all accommodations related to contraceptives were for religious reasons. DE 116 ¶ 125; DE 132 ¶ 125. But the evidence that Plaintiff cites for the Court does not support her proposition that "[a]ll accommodations (100%) related to contraceptives were for Christian beliefs." *See* DE 116 ¶ 125. Plaintiff's cited evidence indicates that after Defendants instated their new policy on contraceptive care, at least six employees (not including Plaintiff) who had religious objections to the policy "exit[ed] the company" or were "terminated" "due to the new essential functions update." DE 83-5; DE 86-1 at 187:24-191:2.  "[F]our or five" of these individuals sued CVS because of the essential function update, DE 86-1 at 188:21-189:8, and the Court infers from Plaintiff's cited evidence that one of these six employees is a nun, DE 86-1 at 190:10-17.

Based on the cited evidence, the Court can reasonably infer that—including Plaintiff—two of the seven impacted employees are Catholic.  But Plaintiff's cited evidence does not otherwise provide bases for the Court to infer the religious beliefs of the other impacted employees.  Plaintiff's cited evidence does not provide sufficient bases for the Court to understand the impacted employees based

on their shared membership in a protected class of Catholics or Christians.  And Plaintiff's cited evidence provides no basis for the court to compare those impacted employees—again, based on their membership in a protected class—to the makeup of the pool of employees subject to the policy in question.

Plaintiff's cited evidence thus does not "'on its face conspicuously demonstrate[ ] a job requirement's grossly discriminate impact.'" *Craig*, 804 F.2d at 687 n.7 (explaining when the Supreme Court has "cautioned [courts] in regard to reliance on statistics").  Because Plaintiff has not cited to evidence that demonstrates the *prima facie* causation element of her disparate impact claim, Defendant's request for summary judgment is granted, and Plaintiff's request for partial summary judgment is denied.

**E.     Fourth Cause of Action: FCRA – Religious Discrimination**

Defendants also seek summary judgment on Plaintiff's FCRA claim. *See* DE 69.  FCRA religious discrimination claims are governed by "the same requirements of proof and the same analytical framework" as Title VII religious discrimination claims. *Schmidt v. Disney Parks, Experiences & Prods., Inc.*, 721 F. Supp. 3d 1314, 1323 n.7 (M.D. Fla. 2024) (citing *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act.")).

For the same reason that the Court denies Defendants' and Plaintiff's requests for summary judgment on Plaintiff's Title VII failure to accommodate and disparate treatment claims, the Court denies the parties' requests for summary judgment on Plaintiff's FCRA claim. *See* Parts IV.B, C.

**F.     Punitive Damages**

Defendants' last grounds for seeking summary judgment concern Plaintiff's request for punitive damages in connection with her Title VII and FCRA disparate treatment claims. DE 69 at

19.  A plaintiff may recover punitive damages under Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).  "[M]ere negligence as to the civil rights of employees is not enough to justify punitive damages." *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000).

Defendants assert that Plaintiff cannot present evidence that Defendants acted with an intent to harm or a serious disregard as to whether Defendants' actions would violate Plaintiff's federally protected rights. DE 69 at 19; *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1281 (11th Cir. 2008) (defining the malice and recklessness standards).

In response, Plaintiff produces evidence that goes to the issue of whether Defendants had, and disregarded, knowledge that their actions would violate federal law.  These include an internal email by MinuteClinic HR Business Partner Virginia Grasso. DE 116 ¶ 126; DE 83-2.  Grasso forwarded an inquiry by a nurse practitioner regarding Defendants' new policy on contraceptive care. DE 83-2. The nurse practitioner stated that "I feel I'm being stripped of my religious freedom . . . ."  *Id.* at 2. In response, Grasso's colleague stated to Grasso, "The employees note below has strong underpinnings of Religious freedoms and potential legal action.  This case is now a people concern. There are 2 other similar cases in this same small market." *Id.* at 1.

 Plaintiff has thus produced some evidence that goes to the material fact of whether Defendants were aware that their actions could violate Plaintiff's federally protected rights.  This is a question for the jury that goes to the broader issue of whether—in light of Defendants' possible

knowledge, and in light of whether Defendants' actions did indeed constitute a violation of federal law—Defendants acted with a serious disregard of Plaintiff's rights.   Defendants' request for summary judgment on the punitive damages issue is thus denied.

**G.      Defendants' Motion in Limine**

Given the Court's decisions on the parties' summary judgment motions, the Court next addresses, in part, Defendants' Motion in Limine. DE 71.  A federal district court has the authority to make *in limine* rulings pursuant to its "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Under the Federal Rules of Evidence, evidence must be relevant to be admissible. Fed. R. Evid. 402.  Evidence is relevant if it tends to make more or less probable any fact that is of consequence to determining the action. Fed. R. Evid. 401.  And relevant evidence may be excluded when its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Defendants seek to exclude (1) evidence of religious accommodations granted to other employees not to prescribe contraceptives after Plaintiff's termination, (2) evidence of accommodations granted based on employees' medical needs, and (3) evidence relating to complaints of religious discrimination by other employees against Defendants. DE 71 at 13, 15.

The Court denies Defendants' requests to exclude these three types of evidence.  **First,** evidence of religious accommodations granted to other employees regarding contraceptives is highly relevant to Plaintiff's claims, and particularly to Plaintiff's Title VII failure to accommodate claim. *See* Part V.B.  Defendants argue that the other religious accommodations are irrelevant because they were granted to providers after Plaintiff was terminated, because the providers worked in different regions and reported to different supervisors, and because the accommodations requests were granted

24

by different decisionmakers. DE 71 at 14.  But Defendants' policy on contraceptive care had applied to all providers at all MinuteClinic locations, and the undue hardship analysis requires accounting for all relevant factors in the case at hand. *Groff*, 600 U.S. at 470–71.  Evidence on other employees' accommodations is relevant to understanding the practical impact of the accommodation on the employer. *Id.*

**Second,** Defendants seek to exclude evidence regarding medical accommodation requests that were granted starting on January 1, 2019. DE 71 at 15.  Defendants argue that this evidence is irrelevant because different standards apply for analyzing accommodation requests under Title VII and the Americans with Disabilities Act. *Id.*; *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (describing the legal standard for a medical accommodation).  This broad category of evidence, however, appears to include evidence regarding E.M., another nurse practitioner whom Plaintiff has identified as a possible comparator for purposes of Plaintiff's disparate treatment claim. *See* Part V.C.  The parties do not dispute that Defendants had transferred E.M. and others to Swab & Send Superdelegate positions as an accommodation for health reasons; because the Superdelegate positions provided COVID-19-specific services, the medical accommodation of transferring E.M. to that position would have been granted after January 1, 2019. DE 116 ¶ 100; DE 132 ¶ 100.  Because Defendants' broad request to exclude evidence on medical accommodations would exclude the highly probative evidence that Plaintiff has offered on a potential comparator for her disparate treatment claim, Defendants' request is denied.

**Third,** Defendants seek to "exclude any evidence relating to any other internal complaints, charges of discrimination and/or lawsuits alleging religious discrimination by other employees against Defendants." DE 71 at 15.  Defendants argue that this evidence has no relevance to Plaintiff's individual claims and would be unfairly prejudicial to Defendants.  Evidence *related* to other

employees' complaints of religious discrimination, however, would include evidence relevant to the question of whether Defendants are an integrated enterprise, *see* Part V.A; decision-making around Defendants' policy on contraceptive care, *see* DE 113 at 16; how Defendants implemented that policy, *see* Part V.B; and also the question of punitive damages, *see* Part V.F.

Defendants assert that allowing Plaintiff to bring this "me too" evidence "would result in side-litigation over the exact type of collateral issues that Rule 403 was designed to prevent." DE 71 at 16. But Defendants' Motion does not identify or describe with specificity any piece of evidence within this category, and so the Court is unable to assess the extent to which the challenged evidence would implicate Rule 403 and how effectively jury instructions would limit those concerns. The Court thus denies without prejudice Defendants' request to exclude evidence from those other lawsuits, and Defendants may re-raise their objections at trial, when the evidence will be presented in context.

## VI.   CONCLUSION

For the reasons above, it is therefore **ORDERED AND ADJUDGED**:

1.     Defendants' Motion for Summary Judgment, DE 69, is **GRANTED IN PART** as to Count III (Title VII disparate impact).  Defendants' Motion for Summary Judgment is **DENIED IN PART** as to Count I (Title VII failure to accommodate), Count II (Title VII disparate treatment), Count IV (religious discrimination under the FCRA), and the issue of punitive damages.

2.     For the same reasons the Court denies in part Defendants' Motion for Summary Judgment—there are disputes of material fact in the record—the Court similarly **DENIES** Plaintiff's Motion for Partial Summary Judgment, DE 98-1.

3.     Defendants' Omnibus Motion in Limine, DE 71 is **DENIED IN PART** as to Defendants' request to exclude religious accommodations granted to other employees not to prescribe contraceptives after Plaintiff's termination, and as to evidence of accommodations granted based on

employees' medical needs.  Defendants' Motion is **DENIED WITHOUT PREJUDICE IN PART**
as to Defendants' request to exclude evidence relating to complaints of religious discrimination by
other employees against Defendants.  The Court **RESERVES IN PART** its ruling on the remaining
issue as to whether the Court should exclude the testimony of Plaintiff's damages expert.

      **DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 24th day of January,
2025.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

27